ERIC S. WAXMAN (SBN 106649)
eric.waxman@skadden.com
PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
VIRGINIA F. MILSTEAD (SBN 234578)
virginia.milstead@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

Attorneys for Defendants
Michael E. Dougherty and
Kathleen Brown

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STATE TREASURER OF THE STATE OF MICHIGAN, AS CUSTODIAN OF THE MICHIGAN PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM, STATE EMPLOYEES' RETIREMENT SYSTEM, MICHIGAN STATE POLICE RETIREMENT SYSTEM AND MICHIGAN JUDGES' RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION; et al.,<br><br>Defendants. | CASE NO.: CV 11-00809 MRP (MANX)<br><br>(1) NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES; and<br><br>(2) [PROPOSED] ORDER [lodged under separate cover].<br><br>Date: August 8, 2011<br>Time: 11:00 a.m.<br>Judge: Hon. Mariana R. Pfaelzer<br>Ctrm.: 12 |

Former outside directors Michael Dougherty and Kathleen Brown respectfully submit their motion to dismiss (the "Motion" or "Mot.") the single count asserted against them in the Amended Complaint (the "Complaint" or "AC") filed by plaintiff State Treasurer of the State of Michigan ("Plaintiff").

# NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE THAT on August 8, 2011 at 11:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Mariana R. Pfaelzer, located at 312 North Spring Street, Los Angeles, California, Defendants Michael E. Dougherty and Kathleen Brown shall, and hereby do, move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiff's Amended Complaint ("Complaint").

The grounds for this motion are that the Complaint does not state a claim on which relief can be granted against Mr. Dougherty or Ms. Brown. This motion is based upon this Notice of Motion and Motion, the accompanying memorandum of points and authorities, the pleadings and papers filed in this action, and such oral argument as the Court may entertain. Further, Mr. Dougherty and Ms. Brown hereby join in the motions to dismiss of the Countrywide Defendants, the Outside Directors, and the Underwriter Defendants, filed contemporaneously with this motion.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 29, 2011.

DATED: May 6, 2011

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/Eric S. Waxman*
Eric S. Waxman
Attorneys for Defendants
Michael E. Dougherty and
Kathleen Brown

# TABLE OF CONTENTS

PAGE


TABLE OF AUTHORITIES ........ iii

I. PRELIMINARY STATEMENT ........ 1

II. FACTUAL BACKGROUND ........ 4

III. PLAINTIFF FAILS TO PLEAD ADEQUATELY THE FALSITY OF THE ALLEGED MISSTATEMENTS IN THE COMPLAINT ........ 5

A. For An Opinion Statement To Be Actionable Under The Securities Laws, Plaintiff Must Plead That It Was Both Subjectively And Objectively False ........ 5

B. The False Statements Identified In The Complaint Are Opinion Statements Requiring Plaintiff To Plead Subjective And Objective Falsity ........ 8

1. Statements Concerning "Quality Loans" Are Opinions ........ 8

2. Statements Concerning Prime Or Subprime Are Opinions ........ 9

3. The Accounting Statements Are Subjective Estimates And Thus Must Be Subject To The Same Pleading Requirements As All Other "Opinions." ........ 10

C. The Court Should Dismiss Plaintiff's Complaint With Prejudice Because Plaintiff Has Not, And Cannot, Plead That The Former Outside Directors Did Not Believe The Opinions Stated ........ 11

IV. THE COURT SHOULD DISMISS PLAINTIFF'S SINGLE COUNT AGAINST THE FORMER OUTSIDE DIRECTORS BECAUSE IT IS TIME BARRED BY THE THREE YEAR STATUTE OF REPOSE ........ 13

V. THE COURT SHOULD DISMISS PLAINTIFF'S ACCOUNTING-RELATED CLAIMS BECAUSE THE FORMER OUTSIDE DIRECTORS HAVE A DUE DILIGENCE DEFENSE ON THE FACE OF THE COMPLAINT ........ 17

VI. CONCLUSION ........ 20

# TABLE OF AUTHORITIES

## CASES


PAGES(S)

Albano v. Shea Homes Limited Partnership,
634 F.3d 524 (9th Cir. 2011) .....15

American Pipe & Construction Co. v. Utah,
414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) ..... 2, 13

Anderson v. Derrick,
Civil No. 1:06CV264,
2007 WL 1166041 (W.D.N.C. Apr. 12, 2007) ..... 6

Arivella v. Lucent Technologies, Inc.,
623 F. Supp. 2d 164 (D. Mass. 2009) ..... 15, 16

In re Bank of America Corp. Securities, Derivative, & ERISA Litigation,
No. 09 MD 2058(PKC),
2010 WL 3448194 (S.D.N.Y. Aug. 27, 2010) ..... 6, 7, 12

In re Barclay's Bank PLC Securities Litigation ("Barclay's"),
No. 09 Civ. 1989(PAC),
2011 WL 31548 (S.D.N.Y. Jan. 5, 2011) ..... 7, 10, 11

Bell Atlantic Corp. v. Twombly,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ..... 19

Belmont Holdings Corp. v. Sun Trust Banks, Inc.,
No. 1:09-cv-1185-WSD,
2010 WL 3545389 (N.D. Ga. Sept. 10, 2010) ..... 11, 12

Bond Opportunity Fund v. Unilab Corp.,
No. 99 Civ. 11074(JSM),
2003 WL 21058251 (S.D.N.Y. May 9, 2003) .....5-6, 7

In re Caremark International Inc. Derivative Litigation,
698 A.2d 959 (Del. Ch. 1996) ..... 18

In re CIT Group, Inc. Securities Litigation,
349 F. Supp. 2d 685 (S.D.N.Y. 2004) ..... 8

In re Citigroup Inc. Shareholders Litigation,
Consolidated Civil Action No. 19827,
2003 Del. Ch. LEXIS 61 (Del. Ch. June 5, 2003) ..... 19

Cook v. Horel,
No. 09-03642 FMC (RZ),
2009 U.S. Dist. LEXIS 79467 (C.D. Cal. July 15, 2009) ..... 16

Connecticut National Bank v. Germain,
503 U.S. 249, 112 S. Ct. 1146, 117 L. Ed. 2d 391 (1992) ..... 16

In re Countrywide Finance Corp. Derivative Litigation,
554 F. Supp. 2d 1044 (C.D. Cal. 2008) ..... 10

In re Countrywide Finance Corp. Securities Litigation ("Countrywide I"), 588 F. Supp. 2d 1132 (C.D. Cal. 2008) .................................................... *passim*

In re Countrywide Financial Corporation Securities Litigation ("Countrywide II"), No. CV-07-05295 MRP (MANx), 2009 WL 943271 (C.D. Cal. Apr. 6, 2009) ......................................... 13, 14, 19

Craft v. Grannis, No. CV 08-1179-VBF (JEM), 2010 WL 4796170 (C.D. Cal. Aug. 10, 2010)................................................ 12

In re Downey Securities Litigation, No. CV 08-3261-JFW (RZx) 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009).................................................. 9

Ellis v. City of San Diego, 176 F.3d 1183 (9th Cir. 1999)........................................................................ 15

Escott v. BarChris Construction Corp., 283 F. Supp. 643 (S.D.N.Y. 1968) .............................................................. 18

Fait v. Regions Financial Corp., 712 F. Supp. 2d 117 (S.D.N.Y. 2010) ....................................................... 7, 10

Feit v. Leasco Data Processing Equipment Corp., 332 F. Supp. 544 (E.D.N.Y. 1971)............................................................... 18

Footbridge Limited Trust v. Countrywide Financial Corp., __ F. Supp. __, No. 10 Civ. 367(PKC), 2011 WL 907121 (S.D.N.Y. Mar. 16, 2011)..............................3, 13, 14, 15, 16

In re Forest Laboratories, Inc. Derivative Litigation, 450 F. Supp. 2d 379 (S.D.N.Y. 2006) .......................................................... 18

In re GlenFed, Inc. Securities Litigation, 42 F.3d 1541 (9th Cir. 1994), rev'd on other grounds, 60 F.3d 591 (9th Cir. 1995) ....................................... 11

In re GlenFed, Inc. Securities Litigation, 60 F.3d 591 (9th Cir. 1995)......................................................................... 18

Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc., 631 F.3d 1133 (9th Cir. 2011), aff'd, No 09-16378, 2011 U.S. App. LEXIS 2438 (9th Cir. Feb. 7, 2011)......................................................................... 16

Irwin v. Department of Veterans Affairs, 498 U.S. 89, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990) ................................... 15

John Nuveen & Co. v. Sanders, 450 U.S. 1005, 101 S. Ct. 1719, 68 L. Ed. 2d 210 (1981) ............................... 17

Joseph v. Wiles, 223 F.3d 1155 (10th Cir. 2000)............................................................... 15, 16

Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991) ..... 14

Laven v. Flanagan, 695 F. Supp. 800 (D.N.J. 1988) ..... 18

In re Lehman Brothers Security & ERISA Litigation, No. 09-MD-02017 (LAK), slip op. at 8-9 (S.D.N.Y. Apr. 13, 2011) ..... 14

Maine State Retirement System v. Countrywide Finance Corp. ("Maine State I"), 722 F. Supp. 2d 1157 (C.D. Cal. 2010) ..... 3, 13, 16

Maine State Retirement System v. Countrywide Finance Corp. ("Maine State II"), No. 2:10-cv-0302 MRP (MANx), (C.D. Cal. May 5, 2011) ..... 3, 16

In re McKesson HBOC, Inc. Securities Litigation ("McKesson"), 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ..... 6, 7

Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Company, __, F. Supp. 2d __, No. 08 Civ. 1958 (JGK), 2010 WL 3860397 (S.D.N.Y. Oct. 4, 2010) ..... 8, 10

Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146 (S.D.N.Y. 2004) ..... 5, 7, 12

Reddy v. Litton Industries, 912 F.2d 291 (9th Cir. 1990) ..... 12

Rubke v. Capital Bancorp Ltd., 551 F.3d 1156 (9th Cir. 2009) ..... 2, 5, 7, 8

Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., ___ U.S. ___, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010), vacated by, No. 07-0141-cv, 2010 U.S. App. LEXIS 11695 (2d Cir. June 9, 2010) ..... 16

Shapiro v. UJB Financial Corp., 964 F.2d 272 (3d Cir. 1992) ..... 8

In re Software Toolworks Inc. Securities Litigation, 50 F.3d 615 (9th Cir. 1994) ..... 3, 17, 18

In re Tycom Ltd. Securities Litigation, Nos. 03-CV-1352-PB, 02-MDL-1335-PB, 2005 WL 2127674 (D.N.H. Sept. 2, 2005) ..... 7, 12

Virginia Bankshares, Inc. v. Sandberg ("VBI"), 501 U.S. 1083, 111 S. Ct. 2749, 115 L. Ed. 2d 929 (1991) ..... 5, 6, 8

In re WorldCom Inc. Securities Litigation ("Worldcom I"), 346 F. Supp. 2d 628 (S.D.N.Y. 2004) ..... 3, 17, 18

In re Worlds of Wonder Securities Litigation ("WOW"),
35 F.3d 1407 (9th Cir. 1994) .......... 17

Young v. United States,
535 U.S. 43, 122 S. Ct. 1036, 151 L. Ed. 2d 79 (2002) .......... 15

**STATUTES**

15 U.S.C. 77j(a)(3) .......... 13

15 U.S.C.
§ 77k(a) .......... 1, 5
§ 77k(b)(3)(C) .......... 3, 17
§ 77k(c) .......... 18

15 U.S.C. § 77m .......... 2, 13, 14

17 C.F.R.
§ 229.512(a)(5)(i)(B) .......... 13
§ 230.430B(f)(4)(ii) .......... 13
§ 229.512(a)(1)(ii) .......... 13

**MISCELLANEOUS**

SEC Staff Accounting Bulletin: No. 102-Selected Loan Loss Allowance
Methodology and Documentation Issues (July 6, 2001) .......... 10

## I. PRELIMINARY STATEMENT

The Court should dismiss defendants Michael Dougherty and Kathleen Brown (the "Former Outside Directors") because Plaintiff's single count against them (out of 11 total counts in the Complaint) fails to state a claim for violation of section 11 of the Securities Act of 1933 (the "Securities Act"). As detailed below, the Amended Complaint ("AC" or "Complaint") in this case is quite different from the complaint filed in the now-settled federal securities class action lawsuit.[1] Here, the Complaint asserts a single count against the Former Outside Directors for allegedly false and misleading statements in one registration statement pursuant to which Plaintiff allegedly purchased Series B Medium Term Notes ("Series B Notes") (CUSIP 22238HGR5 and 22238HGQ7) and 6.25% Subordinated Notes Due May 15, 2016 ("6.25% Notes") (CUSIP 222372AJ3). Countrywide offered the Notes pursuant to a February 9, 2006 registration statement ("2006 Registration Statement"). But Plaintiffs' single count against the Former outside Directors fails for several reasons.

To begin with, to state a claim under section 11, Plaintiff must allege an "untrue statement of a material fact" in a registration statement. 15 U.S.C. § 77k(a). Here, instead of pleading a statement of material *fact*, Plaintiff identifies a collection of *opinions* arising from (i) subjective characterizations of Countrywide's business practices, such as that the loans Countrywide originated were of "high quality" or classified as "prime" or subprime, or (ii) statements reflecting subjective accounting judgments. (AC ¶¶ 358-59.)

As the Ninth Circuit has made clear, for Plaintiff to overcome a section 11 claim on "actionable opinion," the Complaint must allege facts demonstrating "that the

---

[1] On March 4, 2011, this Court concluded that a settlement reached in a class action entitled In re Countrywide Financial Corporation Securities Litigation, No. CV-07-05295 ("Countrywide Class Action"), was fair and reasonable to the class of security-holders (the "Class") in Countrywide Financial Corporation ("Countrywide" or the "Company"). Plaintiff, the State Treasurer of the State of Michigan, was a member of that Class, but elected to opt out of the Class on October 18, 2010 in order to pursue this individual lawsuit. (AC ¶ 24.)

statements were both objectively **and** subjectively false or misleading." Rubke v. Capitol Bancorp Ltd., 551 F.3d 1156, 1162 (9th Cir. 2009) (emphasis added) (internal citations omitted) (emphasis added). In other words, Plaintiff must first allege that the loans objectively were not "high quality" or "prime" based on provable facts, and the accounting judgments were objectively unsupported. In addition, Plaintiff must also plead facts showing that the Former Outside Directors did not **actually believe** that the loans Countrywide originated were "high quality," that the loans it classified as "prime" were really prime, or that the accounting judgments were reasonable. See id. The Complaint, however, **expressly disavows** that the Former Outside Directors acted with any knowing or intentional conduct, and therefore, necessarily fails to meet this "subjective" falsity standard. (AC ¶ 796.) Accordingly, the Court should dismiss Plaintiff's Complaint as against the Former Outside Directors.[2]

Plaintiff's claim is also barred by the statute of repose. Section 13 of the Securities Act sets a three-year statute of repose for section 11 claims that runs from the time the securities are "bona fide offered to the public." 15 U.S.C. § 77m. Countrywide offered the Series B and 6.25% Notes to the public on February 15, 2006 and May 15, 2006, respectively. (AC ¶¶ 547, 552.) Thus, Plaintiff was required, but failed, to file its complaint by February 15, 2009 and May 15, 2009, respectively. While Plaintiff may argue that its claims should be tolled under American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), tolling under American Pipe is not available as a matter of law for claims brought under section 11. As demonstrated by the express terms of Section 13: "*[i]n no event*" may a plaintiff file a claim outside the repose period. 15 U.S.C. § 77m

---

[2] Mr. Dougherty and Ms. Brown acknowledge that this Court previously concluded that the statements at issue concerning "quality loans" are not *puffery*. See In re Countrywide Fin. Corp. Sec. Litig. ("Countrywide I"), 588 F. Supp. 2d 1132, 1144 (C.D. Cal. 2008). However, to say that a statement is not non-actionable *puffery* is not to say that the statement is not a statement of *opinion* subject to the pleading requirements set forth in Rubke, as discussed infra Part III. Here, the statements alleged in Plaintiffs' Complaint qualify as opinions that require Plaintiff to plead the subjective and objective falsity of those statements.

(emphasis added). Courts have concluded that this language forecloses all tolling, including tolling under American Pipe. See Footbridge Ltd. Trust v. Countrywide Fin. Corp., __ F. Supp. __, No. 10 Civ. 367 (PKC), 2011 WL 907121, at *5 (S.D.N.Y. Mar. 16, 2011).[3]

Finally, the face of the Complaint establishes a due diligence defense in favor of the Former Outside Directors as to the expertised portions of the 2006 Registration Statement. 15 U.S.C. § 77k(b)(3)(C).[4] As outside directors and non-accountants, both Mr. Dougherty and Ms. Brown can rely on KPMG's work as Countrywide's independent auditor without any further investigation, absent red flags making their reliance unreasonable. In re Software Toolworks Inc. Sec. Litig., 50 F.3d 615, 624 (9th Cir. 1994); In re WorldCom Inc. Sec. Litig. ("Worldcom I"), 346 F. Supp. 2d 628, 671, 673 (S.D.N.Y. 2004). KPMG audited and provided an unqualified opinion in 2004 regarding Countrywide's financial statements and management's assessments of internal controls over financial reporting. (AC ¶¶ 67, 360.) KPMG also consented to the incorporation of these opinions in the 2006 Registration Statement. (Id. ¶ 67.)

Given there are no allegations in the Complaint that the Former Outside Directors were on notice of any red flags to call into question their reliance on KPMG, their due

---

[3]Defendants acknowledge that in Maine State Retirement System v. Countrywide Financial Corp. ("Maine State I"), 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010) and Maine State Retirement System v. Countrywide Financial Corp. ("Maine State II"), No. 2:10-CV-0302 MRP (MANx) (C.D. Cal. May 5, 2011) this Court concluded that American Pipe tolling is legal, not equitable, and thus applies to the statute of repose. However, the Footbridge court held the opposite, reasoning, among other things: (1) the plain language of the section 13 does not permit tolling because the three-year repose period is "absolute"; (2) section 13 is meant to create certainty by extinguishing liability after the repose period has run; (3) section 13 is not subject to equitable tolling; (4) the Supreme Court and Ninth Circuit have characterized American Pipe tolling as equitable; and (5) Rule 23 of the Federal Rules of Civil Procedure cannot trump the plain language of section 13. Footbridge, 2011 WL 907121, at *1, 3, 5-7. Mr. Dougherty and Ms. Brown, neither of whom is a party in the Maine State case, respectfully submit that the Court should follow the reasoning in Footbridge here.

[4] For the reasons stated in the Outside Directors' motion to dismiss, the due diligence defense is also established with respect "non-expertised" accounting statements. For the sake of brevity, Mr. Dougherty and Ms. Brown join in those arguments, but do not repeat them here.

diligence defense is established as a matter of law with respect to Countrywide's audited financial statements. For this reason as well, this Court should dismiss Plaintiff's claims based on expertised portions of the registration statements.

## II. FACTUAL BACKGROUND[5]

Michael E. Dougherty served as an outside director on Countrywide's board of directors ("Board") from 1998 until spring 2007. Kathleen Brown served as an outside director from March 2005 until March 29, 2007. (AC ¶¶ 42, 46.) Out of the eleven counts asserted in the Complaint, only Count I, a claim arising under section 11, is asserted against Mr. Dougherty and Ms. Brown. Count I arises solely from the 2006 Registration Statement. (Id. ¶ 546.) Mr. Dougherty and Ms. Brown purportedly signed the 2006 Registration Statement. (Id. ¶¶ 42, 46.)

Plaintiff alleges that Countrywide offered the Series B and 6.25% Notes pursuant to the 2006 Registration Statement. (Id. ¶¶ 546, 547, 552.) The Company initially offered the Series B Notes on February 15, 2006, and the 6.25% Notes on May 15, 2006. (Id. ¶¶ 547, 552.) The only Series B Notes at issue here are those Plaintiff allegedly purchased on June 4, 2007 (CUSIPS 22238HGR5 and CUSIP 22238HGQ7). Plaintiff alleges that it purchased 6.25% Notes (CUSIP 222374AJ3) on May 11, 2006, September 15, 2006, December 13, 2006, and August 15, 2007. Plaintiff sold many, but not all, of the 6.25% Notes on May 12, 2006, June 25, 2007, and January 11, 2008. (AC Ex. A.)

The 2006 Registration Statement incorporated by reference Countrywide's 2004 Form 10-K and first, second, and third quarter 2005 Forms 10-Q. (AC ¶ 548.) Plaintiff alleges that the 2004 Form 10-K was misleading because it included statements about Countrywide's production of prime and subprime loans and statements about the

---

[5] While the Federal Rules of Civil Procedure require, for purposes of a Motion to Dismiss pursuant to Rule 12(b)(6), that all factual allegations be accepted as true, the Court need not accept unreasonable factual inferences and conclusions of law. See, e.g., Countrywide I, 588 F. Supp. 2d at 1145.

"quality" of Countrywide loans. (AC ¶¶ 355-59.) Plaintiff also contends that the 2004 Form 10-K included false or misleading accounting statements related to (i) the fair value of Countrywide's loans held for investment and mortgage servicing rights, (ii) allowance for loan and lease losses, (iii) liabilities for representations and warranties, (iv) net earnings, and (v) shareholders' equity. (Id. ¶ 362). Plaintiff also points to a statement from Countrywide's auditor, KPMG, related to the quality of Countrywide's internal controls. (Id. ¶ 360.) Like the 2004 Form 10-K, Plaintiff alleges that the Company's Forms 10-Q are misleading for including statements that fall within one or more of the same categories. (Id. ¶¶ 373-77, 397-402, 412-16.)

## III. PLAINTIFF FAILS TO PLEAD ADEQUATELY THE FALSITY OF THE ALLEGED MISSTATEMENTS IN THE COMPLAINT

### A. For An Opinion Statement To Be Actionable Under The Securities Laws, Plaintiff Must Plead That It Was Both Subjectively And Objectively False

Section 11 of the Securities Act authorizes suits based on an "untrue statement of a material fact" in registration statements. 15 U.S.C. § 77k(a). Typically, statements of opinion, as opposed to fact, are considered "puffery" and are not actionable. See Countrywide I, 588 F. Supp. 2d at 1144. However, when statements of opinion move beyond mere puffery and are instead anchored in "provable" facts, they may under certain circumstances be actionable. See Virginia Bankshares, Inc. v. Sandberg ("VBI"), 501 U.S. 1083, 1093-98 (1991). Consistent with the Supreme Court's ruling in Rubke, the Ninth Circuit dismissed plaintiff's **section 11 claim** holding that such opinions "can give rise to a claim . . . only if the complaint alleges with particularity that the statements were **both objectively and subjectively false or misleading**." Rubke, 551 F.3d at 1162 (internal citations omitted) (emphasis added); see also Podany v. Robertson Stephens, Inc., 318 F. Supp. 2d 146, 154 (S.D.N.Y. 2004) ("'Plaintiffs who charge that a statement of opinion … is materially misleading, must "allege with particularity" "provable facts" to demonstrate that the statement of opinion is both objectively and subjectively false'") (quoting Bond Opportunity Fund v. Unilab Corp.,

No. 99 Civ.11074(JSM), 2003 WL 21058251, at *5 (S.D.N.Y. May 9, 2003)).[6]

Courts applying these rules have observed "there is a difference between enthusiastic statements amounting to general puffery and opinion-based statements that are anchored in 'misrepresentations of existing facts.'" In re Bank of Am. Corp. Sec., Derivative, & ERISA Litig., No. 09 MD 2058(PKC), 2010 WL 3448194, at *37-39 (S.D.N.Y. Aug. 27, 2010) (citation omitted). For instance, in Bank of America, the court rejected the argument that statements regarding "extensive" due diligence, "quite an amount of due diligence," and "sent in a large team to review" were non-actionable puffery. However, consistent with actionable statements of opinion, the court required the plaintiff to plead subjective and objective falsity. Id. As the decision illustrates, just because a statement does not fall within the category of non-actionable puffery, does not mean that the statement is not an opinion, about which both subjective and objective falsity must be pleaded.

Similarly, in Countrywide I, this court concluded that statements about the "quality" of loans originated by Countrywide were not puffery, a conclusion that the Former Outside Directors do not contest for purposes of this Motion. See Countrywide I, 588 F. Supp. 2d at 1144.[7] However, as in Bank of America, to say that a statement is not non-actionable *puffery* is not to say that the statement is not a statement of *opinion* subject to the requirements set forth in VBI and Rubke that Plaintiffs plead both objective and subjective falsity. See, e.g., Bank of Am., 2010 WL 3448194, at *37-38

---

[6] See also VBI, 501 U.S. at 1096 (Court finds that section 14(a) plaintiff must prove both "disbelief or belief undisclosed" and "something false or misleading in what the statement expressly or impliedly declared about its subject"); In re McKesson HBOC, Inc. Sec. Litig. ("McKesson"), 126 F. Supp. 2d 1248, 1265 (N.D. Cal. 2000) (In § 14(a) context, court held that "plaintiff must plead with particularity why the statement of opinion was objectively *and* subjectively false"); Anderson v. Derrick, Civil No. 1:06CV264, 2007 WL 1166041, at * 8 (W.D.N.C. Apr. 12, 2007) (stating same rule).

[7] However, as explained in the motion of the Countrywide Defendants filed concurrently herewith, the allegations that led this Court to conclude that the statements were not puffery are substantially weaker in Plaintiff's Complaint here than in Countrywide I.

(recognizing two categories of opinions: puffery and those based on misrepresentations of fact).

The Ninth Circuit has held that an opinion is "subjectively" false or misleading only when the speaker did not actually believe the statement made. See Rubke, 551 F.3d at 1162. As one court explained: "The sine qua non of a securities fraud claim based on false opinion is that **defendants deliberately misrepresented a truly held opinion**." Podany, 318 F. Supp. 2d at 153-54 (emphasis added); see also McKesson, 126 F. Supp. 2d at 1265 ("The teaching of *Virginia Bankshares* is that an opinion is only false if the speaker does not in fact hold that opinion").[8] For example, in dismissing a **section 11 claim** based on actionable statements of opinion, the court in Barclay's specifically noted plaintiff's failure to allege that defendant did not truly believe the opinion expressed. See, e.g., Barclay's, 2011 WL 31548, at *8 ([I]n the absence of ample allegations that Barclays did not truly believe its subjective valuations, Lead Plaintiffs' claims must be dismissed"). "Objective falsity," on the other hand, focuses not on the speaker's own beliefs, but instead on whether the statement itself was "false or misleading in what [it] expressly or impliedly declared about its subject." VBI, 501 U.S. at 1096; Bond Opportunity Fund, 2003 WL 21058251, at *5 (finding that "objective falsity" requires plaintiff to show "that the opinion stated was in fact incorrect").

---

[8] See also In re Barclay's Bank PLC Sec. Litig. ("Barclay's"), No. 09 Civ. 1989(PAC), 2011 WL 31548, at *8 (S.D.N.Y. Jan. 5, 2011) ("'**An opinion is actionable under Section 11 or 12 only if the complaint alleges the speaker did not truly hold the opinion at the time it was issued**") (emphasis added) (quoting Fait v. Regions Fin. Corp., 712 F. Supp. 2d 117, 121 (S.D.N.Y. 2010)); In re Tycom Ltd. Sec. Litig., No. 03-CV-1352-PB, 02-MDL-1335-PB, 2005 WL 2127674, at *15, 17-18 (D.N.H. Sept. 2, 2005) (after discussing the need for "provable facts," court dismissed 10b-5 claim, and later **section 11 claim**, because plaintiffs "failed to plead facts showing that [defendants] did not believe the recommendations and other statements in the reports at the time they were made").

### B. The False Statements Identified In The Complaint Are Opinion Statements Requiring Plaintiff To Plead Subjective And Objective Falsity

#### 1. Statements Concerning "Quality Loans" Are Opinions

Plaintiff attempts to attribute to the Former Outside Directors various statements related to the quality of Countrywide's loans and risk management practices.[9] Courts have held that statements such as these fall within the "opinions" framework. See, e.g., Shapiro v. UJB Fin. Corp., 964 F.2d 272, 282 (3d Cir. 1992) (analyzing statements that loan management and underwriting practices are "conservative," among other things, under opinions framework articulated by VBI); Plumbers' Union Local No. 12 Pension Fund v. Swiss Reinsurance Co., __ F. Supp. 2d __ , No. 08 Civ. 1958 (JGK), 2010 WL 3860397 (S.D.N.Y. Oct. 4, 2010), at *14 (statements about "risk management strategies and aptitude," including statements that company took "'cautious stance'," could "'manage volatility'" and "engaged in 'active management of financial market risk,'" were puffery, but even if "could be interpreted as statements of opinion, plaintiffs have alleged no particularized facts to allow a finding that the defendants did not believe them"); In re CIT Group, Inc. Sec. Litig., 349 F. Supp. 2d 685, 689-90 (S.D.N.Y 2004) (statement that loan loss reserves were "adequate" analyzed for subjective falsity).[10]

---

[9] These statements, which all turn on the subjective characterizations of Countrywide's business activities and what one personally considers to be "quality," "major," "extensive" or "acceptable," include: (i) "[w]e . . . consistently produc[e] quality mortgages" (AC ¶ 358); (ii) "we have a major focus on ensuring the quality of our mortgage loan production" (id.); (iii) "Our loan origination standards and procedures are designed to produce high quality loans;" (id. ¶¶ 358-59); (iv) "we employ an extensive post funding quality control process" (id.); (v) "[w]e manage mortgage credit risk principally . . . by retaining high credit quality mortgages in our loan portfolio" (id. ¶ 375, 401, 415, 430).

[10] See also VBI, 501 U.S. at 1090-98 (finding directors' statement that offer was a "high value" was actionable, but required pleading subjective and objective falsity); Rubke, 551 F.3d at 1162 (finding statement that offer was "fair" required pleading objective and subjective falsity).

**2. Statements Concerning Prime Or Subprime Are Opinions**

Plaintiff also alleges that statements characterizing loans as "prime" or "subprime" were false or misleading. (AC ¶¶ 355-57, 374, 400, 413.) However, whether a loan is "prime" or "subprime" is a subjective characterization. As this Court has previously noted, "'subprime' has no universal definition.'" Countrywide I, 588 F. Supp. 2d at 1146. Moreover, whether a loan is "prime" or "subprime" depends on the evaluation of several soft factors, such as "the overall quality of a loan as well as a borrower's personal credit history." Id. at 1147 n.11; see also In re Downey Sec. Litig., No. CV 08-3261-JFW (RZx), 2009 WL 2767670 (C.D. Cal. Aug. 21, 2009) ("'the term "subprime" is not consistently defined in the marketplace or among individual institutions'") (citation omitted).

Importantly, the Complaint itself admits that defining "prime" or "subprime" requires a subjective evaluation of a number of factors that may or may not be relevant for any particular borrower. For example, the Complaint alleges that regulators have provided "guidance" on the issue by explaining that subprime borrowers "typically" have one or more of a variety of indeterminate characteristics, such as "weakened credit histories that include payment delinquencies," or "possibly" problems such as "charge-offs, judgments and bankruptcies." (AC ¶ 165.) Those borrowers "***may*** also display reduced repayment capacity as measured by credit scores, debt-to-income ratios, or ***other*** criteria that ***may*** encompass borrowers with incomplete credit histories." (Id. (emphasis added).)

While the Complaint alleges that the transmittal letter for the relevant "guidance" pointed to a FICO of 660 or below as an "example" of evidence of a "'[r]elatively high default probability," the guidance did not allegedly set the 660 FICO as a bright line cut-off or the sole determinative factor. (Id. ¶ 166.) Given the subjective weighing of factors that is inherent in classifying a loan as prime or subprime, Countrywide's statements about its prime and subprime production were necessarily opinions. That being the case, Plaintiff is required to plead both subjective and objective falsity. See

Swiss Reinsurance Co., 2010 WL 3860397, at *13 (statement about risk associated with subprime was a "statement of opinion, and as such is only actionable if 'defendants deliberately misrepresented a truly held opinion'").

**3. The Accounting Statements Are Subjective Estimates And Thus Must Be Subject To The Same Pleading Requirements As All Other "Opinions."**

The Complaint bases its accounting allegations on misstatements of five main categories: (1) Allowance for Loan Losses ("ALL") (AC ¶ 212); (2) Retained Interests ("RI") (id. ¶ 239); (3) Mortgage Servicing Rights (MSRs) (id. ¶ 253); (4) Liabilities for Representations & Warranties ("R&W") (id. ¶ 259); and (5) evaluations of internal controls (id. ¶ 279). As this Court has recognized, these types of accounting projections are subjective estimates that involve "**a great deal of discretion**." In re Countrywide Fin. Corp. Derivative Litig., 554 F. Supp. 2d 1044, 1070 (C.D. Cal. 2008) (emphasis added); Countrywide I, 588 F. Supp. 2d at 1176 n.56 ("The Court emphasizes that the balance sheet items addressed here are based on projections. These projections are subjective and give management and auditors a fair amount of leeway to make reasonable judgments"); id. at 1175 ("'Financial accounting is not a science. It addresses many questions as to which the answers are uncertain and is a process that involves continuous judgments and estimates'") (citation omitted); SEC Staff Accounting Bulletin: No. 102-Selected Loan Loss Allowance Methodology and Documentation Issues (July 6, 2001) ("A systematic methodology that is properly designed and implemented should result in a registrant's best estimate of its allowance for loan losses"); cf. Barclay's, 2011 WL 31548, at *8 (in discussing assets that do not trade over the NYSE or similarly efficient market, the court stated that "the value of such assets is a matter of judgment and opinion" and required plaintiff to plead subjective and objective falsity) (quoting Fait, 712 F. Supp. 2d at 122-23).

As this Court has previously noted, due to their subjective nature, accounting estimates such as those at issue in the Complaint are ordinarily not even actionable. Countrywide I, 588 F. Supp. 2d at 1176 n.56 (noting that such projections normally do

not create "materially false or misleading statements"). Moreover, the Complaint itself admits that these figures are nothing more than estimates. (AC ¶ 208 (noting that guidance was for "estimating ALL"); ¶ 231 ("estimating the fair value of the retained interests"); ¶ 252 (stating that fair value assumptions formed the basis of MSRs); ¶ 263 (stating that Countrywide was required to accrue contingencies for R&W losses that were "probable and estimable.").)

Because these accounting statements and projections are subjective by their very nature, they constitute opinions, and Plaintiff must plead the statement was both subjectively and objectively false at the time it was made. Barclay's, 2011 WL 31548, at *8 ("'[F]inancial valuation models depend so heavily on the discretionary choices of the modeler … that the resulting models and their predictions can only fairly be characterized as subjective opinions"); Belmont Holdings Corp. v. Sun Trust Banks, Inc., No. 1:09-cv-1185-WSD, 2010 WL 3545389, at *6 (N.D. Ga. Sept. 10, 2010) (applying opinion framework to allegations about adequacy of loan loss reserves); In re Glenfed, Inc. Sec. Litig., 42 F.3d 1541, 1549 (9th Cir. 1994) ("[B]oth the valuation of assets and the setting of loan loss reserves are based on flexible accounting concepts, which, when applied, do not always (or perhaps ever) yield a single correct figure") rev'd on other grounds, 60 F.3d 591 (9th Cir. 1995). Failure to do so requires dismissal.

### C. The Court Should Dismiss Plaintiff's Complaint With Prejudice Because Plaintiff Has Not, And Cannot, Plead That The Former Outside Directors Did Not Believe The Opinions Stated

The Former Outside Directors assume, for purposes of this motion only, that, in accordance with this Court's ruling in Countrywide I, Plaintiff has adequately pleaded "objective falsity" with regard to the statements pertaining to "quality loans," classifications of prime versus subprime loans, and accounting statements. See Countrywide I, 588 F. Supp. 2d at 1153; id. at 1146; id. at 1176 n.56. However, even making this assumption, Plaintiff's claims against the Former Outside Directors still fail because Plaintiff has failed to plead, as it must, that the Former Outside Directors did not *subjectively* believe that these opinions were not true.

More to the point, Plaintiff has completely disavowed any conscious wrongdoing on the part of the Former Outside Directors. Courts have concluded that the burden to plead "subjective falsity" is equivalent to the burden to plead scienter; if the pleading does not establish one, then the other is necessarily absent as well. See e.g., Podany, 318 F. Supp. 2d at 154 (noting that the scienter and subjective falsity requirements in a 10b-5 case are collapsed into one another); In re Bank of Am., 2010 WL 3448194, at *39 (agreeing with Podany that scienter and subjective falsity are collapsed into one another); Tycom, 2005 WL 2127674, at *16 ("'Where, as here, the facts alleged are insufficient to support an inference of subjective disbelief in the opinions expressed, they are likewise insufficient to support any inference of scienter, let alone a strong one'") (citation omitted).

Here, far from pleading scienter-like allegations, Plaintiff alleges that "[a]ny allegations or claims of fraud, fraudulent conduct, intentional misconduct and/or motive are specifically excluded from this Count. For purposes of asserting this claim under the Securities Act, Plaintiff does not allege that the Defendants acted with scienter or fraudulent intent. Plaintiff asserts only strict liability and negligence claims." (AC ¶ 796.) Plaintiff's allegation therefore completely undermines any claim of subjective falsity. See Belmont, 2010 WL 3545389, at *6 (dismissing section 11 claims based on opinions when plaintiff "specifically disavow[ed]" knowing conduct by defendants). Furthermore, having so plead, Plaintiff cannot now seek leave to contradict this allegation. Craft v. Grannis, No. CV 08-1179-VBF (JEM), 2010 WL 4796170, at *4 (C.D. Cal. Aug. 10, 2010) ("'Although leave to amend should be liberally granted, the amended complaint may only allege other facts consistent with the challenged pleading'") (quoting Reddy v. Litton Indus., 912 F.2d 291, 296-97 (9th Cir. 1990)).

Quite plainly, Plaintiff alleges facts that the Former Outside Directors were at worst negligent, and therefore completely forecloses itself from pursuing a claim against either of them based on the statements the Complaint identifies. For this reason, the Court should dismiss Plaintiff's section 11 claim against Mr. Dougherty and Ms. Brown

with prejudice.

## IV. THE COURT SHOULD DISMISS PLAINTIFF'S SINGLE COUNT AGAINST THE FORMER OUTSIDE DIRECTORS BECAUSE IT IS TIME BARRED BY THE THREE-YEAR STATUTE OF REPOSE

This Court should dismiss Plaintiff's claims against Mr. Dougherty and Ms. Brown with prejudice as time barred by the statute of repose. Section 13 of the Securities Act of 1933 specifically provides a statute of repose for section 11 claims. 15 U.S.C. § 77m. The statute bars any section 11 claim brought more than three years after a security was bona fide offered to the public. Id.; see also In re Countrywide Fin. Corp. Sec. Litig. ("Countrywide II"), No. CV-07-05295-MRP (MANx), 2009 WL 943271, at *4 (C.D. Cal. Apr. 6, 2009).

For outside directors, such as Mr. Dougherty and Ms. Brown, the effective date of the shelf registration statement is the date the security was "bona fide offered to the public," even if subsequent offerings take place. Maine State, 722 F. Supp. 2d at 1165-66 & n.8; Countrywide II, 2009 WL 943271, at *6-7; 17 C.F.R. §§ 229.512(a)(5)(i)(B), 230.430B(f)(4)(ii), 229.512(a)(1)(ii) (unless there is a fundamental change in information); 15 U.S.C. 77j(a)(3) (unless filed documents update the prospectus). Here, each of the notes Plaintiff purchased were "bona fide offered to the public" more than three years before Plaintiff brought suit.

The Series B Notes were initially offered on February 15, 2006, and the 6.25% Notes on May 15, 2006. (AC ¶¶ 547, 552.) Thus, given three years to file its claims from the date of the offering, Plaintiff needed to file its action **no later than** February 15, 2009 and May 15, 2009, respectively. However, Plaintiff did not file this action until much later, on January 26, 2011. Therefore, Plaintiff's claim is barred on its face. Plaintiff's claim survives only if the statute of repose may be tolled under American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974).

Under American Pipe, courts generally allow the claims of a class member or putative class member to be tolled during the pendency of a class action. See Maine State, 722 F. Supp. 2d at 1166. In Footbridge, 2011 WL 907121, at *5, a section 11

case involving Countrywide, a court in the Southern District of New York concluded that American Pipe cannot apply to toll the section 13 statute of repose. In so concluding, the court began with the premise that the aim of the statute of repose was to "'create certainty,'" and, if a plaintiff fails to bring a claim within the three-year time limit, "the defendant's liability is extinguished." Id. at *3 (citing Countrywide II, 2009 WL 943271, at *4 n.6).

The Footbridge court concluded that American Pipe could not be used to undermine these principles. For one thing, to apply American Pipe to section 11 claims would violate the plain language of section 13 itself. See Footbridge, 2011 WL 907121, at *5. Specifically, section 13 provides that "**[i]n no event** shall any . . . action be brought to enforce a liability created under [section 11] more than three years after the security was bona fide offered to the public . . . ." 15 U.S.C. § 77m (emphasis added)). The court in Footbridge reasoned that "the words '[i]n no event' mean what they say" and therefore preclude the application of tolling principles of any sort. Footbridge, 2011 WL 907121, at *5. Simply put, "the three-year statute of repose is absolute," and this absolute restriction must be enforced as written. Id. at *5, 7; see also In re Lehman Bros. Sec. & ERISA Litig., No. 09-MD-02017 (LAK), slip op. at 8-9 (S.D.N.Y. Apr. 13, 2011) ("That language is absolute. If Congress had intended that the three-year statue of repose apply differently to securities class actions—which are not uncommon occurrences—it certainly could have provided so . . . this Court must apply the statute as written").

Moreover, the United States Supreme Court has made clear that equitable tolling principles cannot apply to extend section 13. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 360 (1991) (concluding that equitable tolling doctrine of fraudulent concealment could not toll section 11 claims). Thus, if American Pipe tolling is a form of equitable (as opposed to legal) tolling, it cannot apply to extend section 13. The Footbridge court concluded that American Pipe tolling was a form of equitable tolling. In so concluding, it referenced the recent decision of the Ninth Circuit

Court of Appeals in Albano v. Shea Homes Limited Partnership, 634 F.3d 524, 537-38 (9th Cir. 2011), in which the court acknowledged that the Ninth Circuit had previously referred to American Pipe tolling as equitable in Ellis v. City of San Diego, 176 F.3d 1183, 1189 n.3 (9th Cir. 1999). Quoting the Albano decision, the Footbridge court explained that American Pipe tolling is "a judicially-created rule premised on 'traditional equitable considerations' of fairness, judicial economy and needless multiplicity of lawsuits." Footbridge, 2011 WL 907121, at *6 (quoting Albano, 634 F.3d at 537). The Footbridge court also referenced instances in which the Supreme Court itself had characterized American Pipe "as a form of equitable tolling." Id. at *7 (citing Young v. United States, 535 U.S. 43, 49 (2002); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 n.3 (1990)). Thus, because American Pipe is a form of equitable tolling, it cannot apply to extend section 13.

The Footbridge court acknowledged that some courts have concluded that American Pipe tolling is "legal" (as opposed to equitable) in nature, and therefore, permissible under section 13. These courts generally rely on the purpose of Federal Rule of Civil Procedure 23, reasoning that "[i]f all class members were required to file claims in order to insure the limitations period would be tolled, the point of Rule 23 would be defeated." Joseph v. Wiles, 223 F.3d 1155, 1167 (10th Cir. 2000). In addition, "the notice and opt-out provision of Rule 23(c)(2) would be irrelevant without tolling because the limitations period for absent class members would most likely expire." Id. (citing cases); see also Arivella v. Lucent Techs., Inc., 623 F. Supp. 2d 164, 174 (D. Mass. 2009) (referencing purpose of Rule 23). Moreover, some cases concluding that American Pipe tolling is "legal" in nature consider the purpose of a statute of repose or limitations is to "demarcate a period in which a plaintiff must place a defendant on notice of his or her injury." Arivella, 623 F. Supp. 2d at 177.

In rejecting this line of authority, the Footbridge court observed that American Pipe itself referenced "other judicially-created tolling doctrines," but did not "read the **text** of Rule 23 as having embedded within it language that creates a class action tolling

rule." Footbridge, 2011 WL 907121, at *6 (emphasis added). Indeed, even those cases that consider American Pipe to be legal tolling focus on equitable considerations, such as fulfilling the purposes behind Rule 23 or the statute of repose. See Arivella, 623 F. Supp. 2d at 177. More importantly, even if Rule 23 *did* purport to include a tolling requirement, "pursuant to the Rules Enabling Act, Rule 23 could not trump a statutory enactment," such as section 13. Footbridge, 2011 WL 907121, at *6; see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 130 S. Ct. 1431, 1439 n.4 (2010) ("But Congress has plenary power to override the Federal Rules, so its enactments, unlike those of the States, prevail even in case of a conflict"); Cook v. Horel, Case No. 09-03642 FMC (RZ), 2009 U.S. Dist. LEXIS 79467, at *5 (C.D. Cal. July 15, 2009) ("In any event, a Federal Rule cannot trump a federal statute . . . ").

The Former Outside Directors acknowledge that in Maine State, a section 11 case involving Countrywide, this Court held that American Pipe tolled the statute of repose for section 11 claims. Maine State I, 722 F. Supp. 2d at 1166; Maine State II, No. 2:10-cv-0302 MRP (MANx), slip op. at 38 (C.D. Cal. May 5, 2011). The Court noted that the Ninth Circuit had not yet addressed the issue, but that other courts had characterized American Pipe tolling as "'legal tolling.'" Maine State I, 722 F. Supp. 2d at 1166 (citing Joseph, 223 F.3d at 1167-68; Arivella, 623 F. Supp. 2d at 177-78). The Former Outside Directors respectfully submit that the Footbridge sets forth the better view.

Rather than focusing primarily on the purpose of Rule 23, as do the courts that conclude American Pipe tolling is "legal" in nature, the court in Footbridge placed proper emphasis on the plain language of section 13 itself. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there") (internal citations omitted); Infuturia Global Ltd. v. Sequus Pharms., Inc., 631 F.3d 1133, 1137-39 (9th Cir. 2011) (in refusing to add requirements "not expressed in the language of the statute," the Ninth Circuit recently stated that

"[w]hen interpreting the meaning of this statute, we 'look first to its plain language'") (internal citations and quotations omitted). This plain language forecloses American Pipe tolling regardless of whether it is legal or equitable, and a desire to effectuate the purposes of Rule 23 should not trump that. Consequently, the Court should dismiss Plaintiff's claim against the Former Outside Directors.

## V. THE COURT SHOULD DISMISS PLAINTIFF'S ACCOUNTING-RELATED CLAIMS BECAUSE THE FORMER OUTSIDE DIRECTORS HAVE A DUE DILIGENCE DEFENSE ON THE FACE OF THE COMPLAINT

Section 11(b)(3)(c) sets forth a "reasonable reliance" defense to section 11 liability.[11] It provides that for portions of a registration statement "made on the authority of an expert" – the so-called "expertised" portions – an outside director is entitled to rely reasonably on the expert without further investigation.[12] 15 U.S.C. § 77k(b)(3)(C); Software, 50 F.2d at 623, 624. To establish the defense, the directors need only show that they "'had no reasonable ground to believe, and did not believe . . . that the statements therein were untrue or that there was'" a material omission. Software, 50 F.3d at 623 (quoting 15 U.S.C. § 77k(b)(3)(C)). Consequently, an outside director may rely in good faith on audited financial statements without further investigation. WorldCom I, 346 F. Supp. 2d at 671 (quoting Justice Powell in his dissent from denial of certiorari in John Nuveen & Co. v. Sanders, 450 U.S. 1005 (1981), that section 11 "'explicitly absolve[s]'" a defendant "'of the duty to investigate'" expertised portions).

The reasonableness required to establish the due diligence defense is that of a

---

[11] As Dougherty and Ms. Brown explain, the due diligence defense is established on the face of the Complaint with respect to accounting statements in Countrywide's Form 10-K for 2004. For the reasons stated in the Outside Directors' motion to dismiss, the due diligence defense also appears on the face of the Complaint with respect to the accounting statements made in the first through third quarter Form 10-Qs. Mr. Dougherty and Ms. Brown join in and incorporate by reference Outside Directors' arguments but do not repeat them here.

[12] It is well-established that audited financial statements constitute expertised parts of a registration statement. Software, 50 F.3d at 623-24 (concluding that certified financial statements audited by Deloitte & Touche were expertised); In re Worlds of Wonder Sec. Litig. ("WOW"), 35 F.3d 1407, 1421 (9th Cir. 1994) (same).

"'prudent man in the management of his own property.'" Software, 50 F.3d at 621 (quoting 15 U.S.C. § 77k(c).). Essentially, "[t]he defense is calibrated to the objective reasonable person in each defendant's position." Countrywide I, 588 F. Supp. 2d at 1174-75 (citing Software, 50 F.3d at 621 and Escott v. BarChris Const. Corp., 283 F. Supp. 643 (S.D.N.Y. 1968)).

Less is required of outside directors than other participants in the registration statement process, such as inside directors or underwriters.[13] This stands to reason: by the very nature of their position, outside directors have less access to information than management. See In re Forest Labs., Inc. Derivative Litig., 450 F. Supp. 2d 379, 391 (S.D.N.Y. 2006) ("a top officer clearly has more direct access to information than an outside director"). Outside directors are charged with oversight responsibilities, not the day-to-day management of a company. See In re GlenFed, Inc. Sec. Litig., 60 F.3d 591, 593 (9th Cir. 1995); accord In re Caremark Int'l Inc. Derivative Litig., 698 A.2d 959, 968-69 (Del. Ch. 1996). As non-auditors, outside directors also are not in a position to identify purported errors in an auditor's work. Software, 50 F.3d at 624 (recognizing that non-accountants are not expected to identify auditors' mistakes involving complex accounting judgments).

Accordingly, outside directors' reliance on an auditor's statements is considered reasonable absent red flags. See Countrywide I, 588 F. Supp. 2d at 1175 (making this observation with respect to underwriters). Red flags include "information that strips a defendant of his confidence in the accuracy of those portions of a registration statement premised on audited financial statements." WorldCom I, 346 F. Supp. 2d at 673.

---

[13] See Laven v. Flanagan, 695 F. Supp. 800, 812 (D.N.J. 1988) (outside directors are "under a lesser obligation to conduct a painstaking investigation than an inside director with an intimate knowledge of the corporation"); Feit v. Leasco Data Processing Equip. Corp., 332 F. Supp. 544, 578 (E.D.N.Y. 1971) ("[i]nside directors with intimate knowledge of corporate affairs and of the particular transactions will be expected to make a more complete investigation and have more extensive knowledge of facts supporting or contradicting inclusions in the registration statements than outside directors") (emphasis added).

However, red flags cannot impair an outside director's defense if plaintiffs failed to allege notice or knowledge of such information. See In re Citigroup Inc. S'holders Litig., Consolidated Civil Action No. 19827, 2003 Del. Ch. LEXIS 61, at *8 (Del. Ch. June 5, 2003). Indeed, red flags "are only useful when they are either waived in one's face or displayed so that they are visible to the careful observer." Id.

This Court in Countrywide I granted the underwriters' motion to dismiss on due diligence grounds, concluding that, as to accounting-related claims, the due diligence defense was apparent on the face of the complaint. Countrywide II, 2009 WL 943271, at *3; Countrywide I, 588 F. Supp. 2d at 1175. For the same reason, the Court should dismiss Plaintiff's accounting-related claims against the Former Outside Directors in this action.

Plaintiff affirmatively alleges that KPMG, an independent registered public accounting firm, audited and issued unqualified opinions on Countrywide's year-end financial statements for 2004. (AC ¶¶ 67, 431.) KPMG separately consented to the incorporation of its unqualified opinions on both management's assessment of internal controls and the year-end financial statements for 2004 in the 2006 Registration Statement. (Id. ¶ 6y.) The incorporation also included reference to KPMG "under the heading of 'Experts.'" (Id. ¶¶ 550, 555.) Thus, the accounting statements Plaintiff attempts to attribute to the Former Outside Directors were expertised.

Not surprisingly, however, there are no allegations in the Complaint that the Former Outside Directors had any knowledge of red flags regarding Countrywide's financial statements. For instance, the Complaint does not assert that even one confidential witness placed the outside directors on notice of red flags. Although Plaintiff makes conclusory statements about all the defendants' lack of due diligence, Plaintiff fails to plead any facts in support of this bare legal conclusion. (Id. ¶¶ 799, 801); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 556 n.3 (2007) (a plaintiff's grounds for relief must be more than conclusions to survive a motion to dismiss; blanket assertions are not enough). Consequently, Mr. Dougherty and Ms. Brown are entitled to

dismissal of accounting-related claims based on their due diligence defense, which is apparent on the face of the Complaint.

## VI. CONCLUSION

As explained above, for several reasons, the Court should dismiss Plaintiff's single count under § 11 asserted against the Former Outside Directors. First, Plaintiff's claims against the Former Outside Directors are predicated entirely on statements of opinion about which Plaintiff has specifically disclaimed any subjective falsity. Second, Plaintiff's claim is barred by a statute of repose that forecloses tolling by its plain terms. Finally, The Former Outside Directors' due diligence defense appears on the face of the Complaint. Thus, this Court should grant Mr. Dougherty's and Ms. Brown's motion to dismiss with prejudice.

DATED: May 6, 2011

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: *\/s/Eric S. Waxman*
Eric S. Waxman
Attorneys for Defendants
Michael E. Dougherty & Kathleen Brown