JORDAN ETH (SBN 121617)
JEth@mofo.com
D. ANTHONY RODRIGUEZ (SBN 162587)
TRodriguez@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415-268-7000
Facsimile: 415-268-7522

Attorneys for Defendants
HENRY G. CISNEROS, JEFFREY M. CUNNINGHAM, ROBERT J. DONATO, BEN M. ENIS, EDWIN HELLER, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL and HARLEY W. SNYDER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STATE TREASURER OF THE STATE OF MICHIGAN, AS CUSTODIAN OF THE MICHIGAN PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM, STATE EMPLOYEES' RETIREMENT SYSTEM, MICHIGAN STATE POLICE RETIREMENT SYSTEM AND MICHIGAN JUDGES' RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, *et al.*,<br><br>Defendants. | Case No. CV 11-00809-MRP (MANx)<br><br>**OUTSIDE DIRECTORS' NOTICE OF MOTION AND MOTION TO DISMISS COUNT I OF AMENDED COMPLAINT; SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Hearing: August 8, 2011<br>Time: 11:00 a.m.<br>Court: Courtroom 12<br>Judge: Mariana R. Pfaelzer |

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on August 8, 2011, at 11:00 a.m. or as soon thereafter as the matter may be heard, before the Honorable Mariana R. Pfaelzer, United States District Court, Central District of California, Western Division, Courtroom 12, Defendants Henry G. Cisneros, Jeffrey M. Cunningham, Robert J. Donato, Ben M. Enis, Edwin Heller, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell and Harley W. Snyder (collectively, the "Outside Directors"), pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6), will, and hereby do, move the Court for an order dismissing Count I of the Amended Complaint filed by the State Treasurer of the State of Michigan, as Custodian of the Michigan Public School Employees Retirement System, State Employees' Retirement System, Michigan State Police Retirement System and Michigan Judges' Retirement System ("Michigan"). This motion is made following a conference of counsel pursuant to Civil Local Rule 7-3 that took place on April 29, 2011.

This motion is based on this Notice of Motion and Motion; its supporting Memorandum of Points and Authorities; the Outside Directors' May 6, 2011 Request for Judicial Notice; the May 6, 2011 Declaration of D. Anthony Rodriguez in Support of Outside Directors' Request for Judicial Notice; the pleadings and other records in the Court's file; the motions to dismiss and related materials filed by all other defendants; and such other written and oral argument as may be presented to the Court before this motion is taken under submission.

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ............ ii

INTRODUCTION ............ 1

ARGUMENT ............ 2

I. ACCOUNTING-RELATED STATEMENTS FOR FISCAL YEARS 2004 AND 2005 SHOULD BE DISMISSED AS TO THE OUTSIDE DIRECTORS. ............ 3

A. The "Due Diligence" Defense to Section 11 Claims Applies to Outside Directors. ............ 3

B. This Court Dismissed Accounting-Related Allegations, Virtually Identical to Michigan's, Against the Underwriter Defendants on Due Diligence Grounds in *New York Funds* ............ 4

C. The Outside Directors' Due Diligence Defense Is At Least As Strong As The Underwriter Defendants'. ............ 5

1. The Standard for Due Diligence is Higher for Underwriters than for Outside Directors. ............ 5

2. The Amended Complaint Demonstrates that the Outside Directors' Due Diligence Defense Bars the 2004 and 2005 Accounting-Related Allegations. ............ 6

CONCLUSION ............ 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ash v. McCall*,
No. 17132, 2000 Del. Ch. LEXIS 144 (Del. Ch. Sept. 15, 2000) .......... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 2

*Feit v. Leasco Data Processing Equip. Corp.*,
332 F. Supp. 544 (E.D.N.Y. 1971) .......... 5

*In re Citigroup Inc. S'holder Derivative Litig.*,
964 A.2d 106 (Del. Ch. 2009) .......... 9

*In re Countrywide Fin. Corp. Sec. Litig.*,
No. CV-07-05295-MRP (MANx), 2009 U.S. Dist. LEXIS 32951 (C.D. Cal. Apr. 6, 2009) .......... 2, 4, 5

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) .......... *passim*

*In re HealthSouth Corp. S'holders Litig.*,
845 A.2d 1096 (Del. Ch. 2003) .......... 9

*In re Software Toolworks, Inc. Sec. Litig.*,
50 F.3d 615 (9th Cir. 1994) .......... 9

*In re VeriFone Sec. Litig.*,
11 F.3d 865 (9th Cir. 1993) .......... 2

*In re Worlds of Wonder Sec. Litig.*,
35 F.3d 1407 (9th Cir. 1994) .......... 3

*Laven v. Flanagan*,
695 F. Supp. 800 (D.N.J. 1988) .......... 5, 6

**STATUTES AND OTHER AUTHORITIES**

15 U.S.C. § 77k .......... 3, 4, 5

17 C.F.R. § 230.176(c-g) .......... 6

Del. Code Ann. tit. 8, § 141(e) (2011) .......... 9

Circumstances Affecting the Determination of What Constitutes Reasonable Investigation and Reasonable Grounds for Belief Under Section 11 of the Securities Act, 46 Fed. Reg. 42015 (Aug. 6, 1981) ........................................ 6

## INTRODUCTION

In Count I of its Amended Complaint, the State Treasurer of Michigan ("Michigan") asserts a claim under Section 11 of the Securities Act of 1933 against all defendants. Count I is based on allegedly false or misleading "accounting-related"[1] and non-accounting statements that were incorporated into the February 9, 2006 registration statement for Countrywide's Series B Medium-Term Notes and 6.25% Subordinated Notes. Among the defendants to Count I are 10 former outside directors of Countrywide Financial Corporation (the "Outside Directors").[2] Michigan does not allege that the Outside Directors participated in or were aware of the conduct that allegedly caused any accounting-related statement to be false or misleading. The Outside Directors join in all other defendants' motions to dismiss, and move to dismiss the accounting-related statements that appeared in

---

[1] In the recently concluded consolidated class action that had been pending before this Court, *In re Countrywide Financial Corporation Securities Litigation* (the "*New York Funds*" action), this Court used the term "accounting-related" to describe the New York Funds' allegations regarding the valuation of mortgage-servicing rights, loans held for investment/allowance for loan losses, representations and warranties liabilities, and retained interests in Countrywide's audited and unaudited financial statements, and regarding statements about internal controls. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1176-78 (C.D. Cal. 2008). Michigan has copied or paraphrased those allegations in its Amended Complaint ("Am. Compl."). *Compare New York Funds* Second Amended Complaint ("*NYF* SAC") ¶¶ 325-45 to Am. Compl. ¶¶ 229-39 (retained interests); *NYF* SAC ¶¶ 346-66 to Am. Compl. ¶¶ 240-57 (mortgage servicing rights); *NYF* SAC ¶¶ 288-324 to Am. Compl. ¶¶ 202-28 (allowance for loan losses); *NYF* SAC ¶¶367-89 to Am. Compl. ¶¶ 258-68 (representations and warranties); *NYF* SAC¶¶ 390-403 to Am. Compl. ¶¶ 269-80 (internal controls). Excerpts from the *NYF* SAC that are cited in this memorandum are at Ex. C to the May 6, 2011 Declaration of D. Anthony Rodriguez.

[2] The Outside Directors are Henry G. Cisneros, Jeffrey M. Cunningham, Robert J. Donato, Ben M. Enis, Edwin Heller, Martin R. Melone, Robert T. Parry, Oscar P. Robertson, Keith P. Russell, and Harley W. Snyder.

Countrywide's 2004 Form 10-K and Forms 10-Q in 2005 on the additional ground that Section 11's "due diligence" defense bars the claim based on those statements.[3]

In *New York Funds*, this Court held that the Underwriter Defendants' due diligence defense was "apparent" on "the face" of the New York Funds' Consolidated Amended Complaint "as a matter of law." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1175 (C.D. Cal. 2008); *In re Countrywide Fin. Corp. Sec. Litig.*, No. CV-07-05295-MRP (MANx), 2009 U.S. Dist. LEXIS 32951, at *16 (C.D. Cal. Apr. 6, 2009). The Outside Directors did not move to dismiss the Consolidated Amended Complaint on due diligence, but moved on multiple other grounds. After this Court ruled on the motions to dismiss the Consolidated Amended Complaint, the Outside Directors moved to dismiss the New York Funds' Second Consolidated Amended Complaint on several grounds, including due diligence grounds. This Court's April 6, 2009 Omnibus Order on the motions to dismiss the New York Funds' Second Consolidated Amended Complaint denied the Outside Directors' motion. The Court's ruling discussed other arguments by the Outside Directors, but did not address their due diligence argument.

As shown below, the Outside Directors' due diligence defense is at least as "apparent" on the face of the Amended Complaint as the Underwriter Defendants' defense was in *New York Funds* and is in this case.

## **ARGUMENT**

A complaint must allege "facts," not "labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555; 127 S. Ct. 1955, 1965; 167 L. Ed. 2d 929, 940 (2007); *see also In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) ("Conclusory allegations of law and unwarranted inferences are insufficient to

---

[3] The Outside Directors are not liable under Section 11 for statements in Forms 10-Q and 10-K that were filed after the February 9, 2006 registration statement. Moreover, the Outside Directors' due diligence defense would bar claims based on accounting-related statements in those filings.

defeat a motion to dismiss for failure to state a claim.") (internal citations omitted). Michigan makes the conclusory assertion that the Outside Directors, and other defendants, "did not make a reasonable and diligent investigation of the statements contained or incorporated by reference in the Registration Statements for the Notes and did not possess reasonable grounds for believing that the Registration Statements for the Notes did not contain an untrue statement or omit to state a material fact." (Am. Compl. ¶ 799.) Missing, however, are any facts to fault the Outside Directors' diligence. Instead, the facts that Michigan alleges demonstrate that the accounting-related allegations should be dismissed as to the Outside Directors as a matter of law.

## I. ACCOUNTING-RELATED STATEMENTS FOR FISCAL YEARS 2004 AND 2005 SHOULD BE DISMISSED AS TO THE OUTSIDE DIRECTORS.

Count I of the Amended Complaint is based on the February 9, 2006 registration statement for Countrywide's Series B Medium-Term Notes and 6.25% Subordinated Notes. The registration statement incorporated by reference Countrywide's 2004 Form 10-K (which included audited financial statements) and its Forms 10-Q for the quarters ended March 31, 2005, June 30, 2005, and September 30, 2005 (all of which included unaudited financial statements). (Am. Compl. ¶¶ 546-48, 552-53, 556.) Michigan alleges that these SEC Forms included financial statements containing materially false or misleading amounts for Countrywide's valuation of retained interests, mortgage servicing rights, allowance for loan losses, and reserves for representation and warranty liabilities, and included false or misleading statements about internal controls.

### A. The "Due Diligence" Defense to Section 11 Claims Applies to Outside Directors.

Section 11 provides defendants other than the issuer the "due diligence defense" and the "reasonable reliance defense." *See* 15 U.S.C. § 77k(b)(3); *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994) (defense available

to directors, officers, and underwriters). The respective defenses apply when a defendant (1) believed the challenged statements were true and did not contain any material omissions, (2) had reasonable grounds for their belief, and (3) undertook a reasonable "investigation" into the truth of the challenged statements, *see* 15 U.S.C. § 77k(b)(3)(A); or when (1) the statements at issue were "purport[ed] to be made on the authority of an expert,"(2) the defendant did not in fact believe, and (3) had no reasonable ground to believe "that the statements therein were untrue or that there was an omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading," *see* 15 U.S.C. § 77k(b)(3)(C). Consistent with this Court's dismissals in *New York Funds* of allegations regarding both audited and unaudited financial statements on "due diligence" grounds, the Outside Directors refer to the defenses here as the "due diligence" defense. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1174-75, 1181-82; *In re Countrywide Fin. Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 32951, at *16.

### B. This Court Dismissed Accounting-Related Allegations, Virtually Identical to Michigan's, Against the Underwriter Defendants on Due Diligence Grounds in *New York Funds*.

As shown above, Michigan has repeated the New York Funds' allegations regarding accounting-related statements. *See supra* note 1. In *New York Funds*, this Court twice agreed with the Underwriter Defendants that their due diligence defense applied as a matter of law to those allegations, regarding both audited and unaudited financial statements. In its December 1, 2008 Omnibus Order on motions to dismiss the Consolidated Amended Complaint in *New York Funds*, the Court dismissed, as to all defendants, accounting-related allegations regarding the Form 10-K for 2003, with prejudice, and accounting-related allegations regarding SEC filings for fiscal years 2004 and 2005, with leave to amend. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1205-06. The Court dismissed the 2006 accounting-related allegations against the Underwriter Defendants, without prejudice, on the grounds that "the present [Complaint] does

not adequately allege that Underwriter Defendants' reliance on KPMG and Countrywide management's accounting-related statements during this period was unreasonable," and thus the Underwriter Defendants' "due diligence defense appears on the face of the [Complaint]." *Id.* at 1182.

In their Second Consolidated Amended Complaint, the New York Funds included allegations describing the Underwriter Defendants' purported failure to conduct adequate due diligence. The Underwriter Defendants again moved to dismiss. This Court granted the Underwriter Defendants' motion as to all 2004 and 2005 accounting-related statements, holding that the Underwriter Defendants' "due diligence defense for accounting-related statements for fiscal years 2005 and earlier is apparent from the face of the SAC, just as was the case with the [Consolidated Amended Complaint]." *See In re Countrywide Sec. Litig.*, 2009 U.S. Dist. LEXIS 32951, at *16.

### C. The Outside Directors' Due Diligence Defense Is At Least As Strong As The Underwriter Defendants'.

#### 1. The Standard for Due Diligence is Higher for Underwriters than for Outside Directors.

Section 11's due diligence defense protects all but the issuer. *See* 15 U.S.C. §§ 77k(b), 77k(b)(3) (defense available to all defendants "other than the issuer"). When applying the defense, "[t]he defense is calibrated to the objective reasonable person in each defendant's position." *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1174 (citations omitted).

The standard for due diligence for outside directors is lower than for underwriters or for inside directors. Outside directors do not have the obligations and resources of underwriters, or play the underwriters' role in an offering. And, unlike inside directors, outside directors do not play a role in the management of the company, with the attendant responsibilities and knowledge. *See Feit v. Leasco Data Processing Equip. Corp.*, 332 F. Supp. 544, 581 (E.D.N.Y. 1971) ("courts must be particularly scrupulous in examining the conduct of underwriters since they

are supposed to assume an opposing posture with respect to management"); *Laven v. Flanagan*, 695 F. Supp. 800, 812 (D.N.J. 1988) (outside directors under "lesser obligation" than "an inside director with an intimate knowledge of the corporation"). The SEC itself has stated that status as an underwriter or inside director, as compared to an outside director, raises the diligence standard for that person.[4]

**2. The Amended Complaint Demonstrates that the Outside Directors' Due Diligence Defense Bars the 2004 and 2005 Accounting-Related Allegations.**

Like the New York Funds, Michigan alleges that management and KPMG—but *not* the Outside Directors—created, reviewed, or audited false or misleading accounting-related statements.[5] *Compare NYF* SAC ¶¶ 288-403, 530-601 to Am. Compl. ¶¶ 202-280, 726-80, 803.) Michigan alleges that management prepared incorrect financial statements (Am. Compl. ¶¶ 362, 378, 404, 418), and that KPMG performed its audits negligently (Am. Compl. ¶¶726, 748, 749, 803). Michigan makes no allegation critical of the Outside Directors regarding the statements, or contradicting the Outside Directors' belief in the statements.

When it comes to due diligence, the *only* thing Michigan has done is copy or paraphrase some—but not all—of the New York Funds' allegations about *the*

[4] *See* 17 C.F.R. § 230.176(c-g) (listing factors relevant to determining due diligence, including "the presence or absence of another relationship to the issuer when the person is a director or proposed director," and specifically recommending, in the case of underwriters, consideration of the "underwriting arrangement [and] the role of the particular person as an underwriter"); Circumstances Affecting the Determination of What Constitutes Reasonable Investigation and Reasonable Grounds for Belief Under Section 11 of the Securities Act, 46 Fed. Reg. 42015, 42022, Securities Act Release No. 6335, (Aug. 6, 1981) ("Congress intended that there would be variation in the thoroughness of the investigation performed by the different persons subject to Section 11 liability based on '. . . the importance of their place in the scheme of distribution. . . .'").

[5] In alleging false and misleading accounting in its 2011-filed action, Michigan, like the New York Funds in their 2008 and 2009 amended complaints, challenges financial statements that have not been restated.

*Underwriter Defendants'* purported lack of due diligence. *Compare NYF* SAC ¶¶ 602-05 to Am. Compl. ¶¶ 781-84. Those allegations are directed exclusively at the Underwriter Defendants. Nothing in those allegations concerns, much less criticizes, the Outside Directors' due diligence. The rest of Michigan's allegations likewise take no issue with the Outside Directors' diligence, including Michigan's allegations based on "confidential witnesses," none of whom are alleged to have had any contact with the Outside Directors.

The Underwriter Defendants explain in their motion why Michigan's due diligence allegations regarding the Underwriters are fewer, and weaker, than the due diligence allegations in *New York Funds* that led to the dismissal of 2004 and 2005 accounting-related allegations—virtually identical to Michigan's—against them. The Outside Directors, as shown above, are subject to a lower due diligence standard than the Underwriter Defendants'—certainly not a higher one—and therefore have an even stronger ground for dismissal.

Michigan's own allegations show that the Outside Directors reasonably relied on management to accurately describe Countrywide's accounting. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1182 ("the present [Complaint] does not adequately allege that Underwriter Defendants' reliance on KPMG and Countrywide management's accounting-related statements during this period was unreasonable"). Michigan alleges that Countrywide's CEO and CFO – Countrywide's top executives – provided "Sarbanes-Oxley" certifications in the Forms 10-K and 10-Q that were incorporated into the February 9, 2006 registration statement. *See, e.g.,* Am. Compl. ¶¶ 361, 377, 403, 417. In their certifications, the CEO and CFO affirmed that the Forms 10-K and 10-Q did not "contain any untrue statement of a material fact," and that "the financial statements, and other financial information included in [the Forms 10-K], fairly present in all material respects the financial condition" of Countrywide. *Id.* The CEO and CFO further certified that they were responsible for "establishing and maintaining disclosure controls and

procedures . . . and internal control over financial reporting," and that those controls were designed "to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles[.]" (Rodriguez Decl., Ex. A [2004 10-K at Ex. 31.1-31.2]).)

Michigan does not allege that the Outside Directors did not believe the CEO's and CFO's certifications. Nor does Michigan allege facts showing the Outside Directors had cause, the means, or the obligation to re-do the CEO's and CFO's work, or the underlying work of other Countrywide executives and employees.

Michigan also acknowledges the key and expert role that KPMG played. Michigan alleges that KPMG provided "unqualified opinions on [Countrywide's annual] financial statements," and consented to the incorporation of its unqualified opinions in Countrywide's Forms 10-K. (Am. Compl. ¶ 67). Michigan's allegations quote KPMG's "Report of Independent Registered Public Accounting Firm," which was included in Countrywide's 2004 Form 10-K and stated:

> In our opinion, the consolidated financial statements referred to above present fairly, in all material respects, the financial position of Countrywide . . . and the results of their operations and their cash flows . . . . Also in our opinion, the related financial statement schedules, when considered in relation to the basic consolidated financial statements taken as a whole, present fairly, in all material respects, the information set forth therein.

(Rodriguez Decl., Ex. A [2004 Form 10-K at F-2]; (Am. Compl. ¶ 360)).

KPMG consented to Countrywide's incorporating its opinion regarding the 2004 Form 10-K into the February 9, 2006 registration statement. (Rodriguez Decl., Ex. B [2/9/2006 Form S-3ASR, Ex. 23.1]; (Am. Compl. ¶ 550, 555, 803).) KPMG also agreed to be listed as "experts in accounting and auditing" in the registration statement. (Rodriguez Decl., Ex. B [2/9/2006 Form S-3ASR, Ex. 23.1, 16, 22]. Michigan does not allege why or how the Outside Directors should have

doubted KPMG, much less why or how they should have audited the auditors and concluded that KPMG had conducted allegedly negligent audits. Indeed, Michigan admits that underwriters are "generally entitled to rely on KPMG's certifications." (Am. Compl. ¶ 783.) The same goes for outside directors. *See In re Software Toolworks, Inc. Sec. Litig.*, 50 F.3d 615, 623 (9th Cir. 1994) (due diligence defense imposes no obligation to "conduct due diligence into the 'expertised' parts of a prospectus").

In relying on officers, employees, and independent auditors, the Outside Directors performed their roles as contemplated by Delaware law, which governs Countrywide. Directors of Delaware corporations may rely upon "information, opinions, reports or statements presented to the corporation by any of the corporation's officers or employees. . . ." Del. Code Ann. tit. 8, § 141(e) (2011). *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 135 (Del. Ch. 2009) (holding that even board members who are experts may "rel[y] in good faith on the opinions and statements of the corporation's officers and employees" responsible for preparing the company's financial statements concerning the bank's exposure to the subprime lending market); *In re HealthSouth Corp. S'holders Litig.*, 845 A.2d 1096, 1106-07 (Del. Ch. 2003) (holding that the "board of directors was entitled to rely upon [the CEO] and his management team, particularly in the preparation of the company's financial statements, an area in which management has traditionally been preeminent"); *Ash v. McCall*, No. 17132, 2000 Del. Ch. LEXIS 144, at *30-32 (Del. Ch. Sept. 15, 2000) (holding that the board properly relied on representations of outside accounting firm).

For these reasons, the due diligence defense bars Michigan's claims against the Outside Directors that are based on accounting-related statements.

**CONCLUSION**

For the reasons stated by the other defendants' motions to dismiss, Count I should be dismissed. To the extent those motions are not granted regarding the accounting-related statements, those statements should be dismissed as to the Outside Directors for the reasons stated in this motion.

Dated: May 6, 2011

MORRISON & FOERSTER LLP

By: /s/ D. Anthony Rodriguez
D. Anthony Rodriguez

Attorneys for Defendants
HENRY G. CISNEROS, JEFFREY M. CUNNINGHAM, ROBERT J. DONATO, BEN M. ENIS, EDWIN HELLER, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL and HARLEY W. SNYDER