LINK: 73, 74, 76, 77, 83, 84, 86, 89, 90

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STATE TREASURER OF THE STATE OF MICHIGAN, AS CUSTODIAN OF THE MICHIGAN PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM, MICHIGAN STATE POLICE RETIREMENT SYSTEM AND MICHIGAN JUDGES RETIREMENT SYSTEM,

Plaintiff,

v.

COUNTRYWIDE FINANCIAL CORPORATION, et al.

Defendants.

Case No. CV-11-00809-MRP-MAN

**ORDER RE MOTIONS TO DISMISS THE COMPLAINT**

## I. INTRODUCTION & BACKGROUND

This case is one of several related securities actions before this Court involving Countrywide Financial Corporation ("Countrywide")[1] and its former officers, directors, underwriters, and auditors. This particular action is one of several opt-out suits filed by members of the class in *In re Countrywide Fin. Corp. Sec. Litig.*, CV-07-05295-MRP (MANx) (the "*Pappas*" suit or the "class action") who opted out of the settlement in that case. Familiarity with the long and complex procedural history of *Pappas* is assumed for purposes of this order. The Plaintiff in this case is the Treasurer of the State of Michigan, acting as custodian for a series of Michigan public employee retirement funds ("Plaintiff"). Plaintiff alleges that it purchased Countrywide common stock between March 12, 2004 and February 25, 2008. Plaintiff alleges that it purchased Series B Floating Rate Convertible Senior Debentures Due 2037 and 6.25% Subordinated Notes Due May 15, 2016 (collectively the "Notes") issued by Countrywide between March 12, 2004 and February 12, 2008. Plaintiff's complaint (the "Complaint") was filed on January 26, 2011. Plaintiff filed an Amended Complaint (the "AC") which is now the operative complaint in this matter on April 22, 2011. The AC includes the same causes of actions which were asserted in *Pappas*, as well as a newly asserted state law claim. All defendants ("Defendants") have moved to dismiss the Complaint on various grounds. The issues have been fully briefed and the Court

---

[1] On July 1, 2008, Countrywide completed a forward triangular merger into a subsidiary of Bank of America called Red Oak Merger Corporation ("Red Oak"). In the transaction, Countrywide shareholders received shares of BofA in exchange for their Countrywide shares. Red Oak was then renamed Countrywide Financial Corporation. Countrywide Fin. Corp., Form 10-Q (Aug. 11, 2008). The merger postdates the class period and the allegations in the complaint. Unless required by context, "Countrywide," as used in this Order, refers to the entity as constituted before the merger.

heard extensive oral argument on August 8, 2011. After careful consideration, the Court decides as follows:

Counts VI through X are time-barred under the relevant statutes of limitations. The Court therefore **GRANTS** Defendants' motions to dismiss Counts VI through X **WITH PREJUDICE**. Count XI does not state a claim. The Court therefore **GRANTS** Countrywide's motion to dismiss Count XI **WITH PREJUDICE**. Count II is inadequately pled. The Court therefore **GRANTS** Countrywide and the Underwriter Defendants' motions to dismiss **WITHOUT PREJUDICE**. The Court otherwise **DENIES** Defendants' motions to dismiss.

## II. MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss should be granted when, assuming the truth of the plaintiff's allegations, the complaint fails to state a claim for which relief can be granted. *See Epstein v. Washington Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996). In deciding whether the plaintiff has stated a claim, the Court must assume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). A court reads the complaint as a whole, together with matters appropriate for judicial notice, rather than isolating allegations and taking them out of context. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

## III. DISCUSSION

### A. STATUTE OF LIMITATIONS–STATE LAW CLAIMS

Plaintiffs' Complaint, filed on January 26, 2011, includes causes of action under Cal. Corp. Code §§ 25400 et seq., 25500 et seq., Cal. Civ. Code §§ 1709, 1710, common law fraud and deceit, and negligent misrepresentation. Complaint at ¶¶ 791–840. These same causes of action were included in the *Pappas* case.

Plaintiffs were therefore on notice of all of their claims at least by August 14, 2007, more than three years before January 26, 2011. The Court applies California's two- and three-year statutes of limitations for the various state law claims. *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011) ("A federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations."). The claims are therefore time-barred unless Plaintiff alleges some proper basis for tolling.

*1. American Pipe Tolling Does Not Apply*

Plaintiff argues that its state law claims were tolled during the pendency of the *Pappas* action. Plaintiff's Opposition to Defendants' Motions to Dismiss the Amended Complaint ("Opp") at 12, ECF No. 109. However, *Pappas* was a federal case filed in the federal court system. The rule of *American Pipe* allows tolling within the federal court system for federal question claims only. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025 (9th Cir. 2008). *American Pipe* does not toll state law claims, which are governed by state law statutes of limitation and state law tolling principles. *See id.*; *Wade v. Danek Med., Inc.*, 182 F.3d 281, 290 (4th Cir. 1999); *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 465 F. Supp. 2d 687, 719 (S.D. Tex. 2006). The issue of whether a state statute of limitations would be tolled by a federal class action is therefore a question of state law. *Chardon v. Fumero Soto*, 462 U.S. 650, 661 (1983). This Court, in the *Centaur* matter, performed an exhaustive analysis of California authority. It concluded, in accordance with binding Ninth Circuit precedent, that California does not recognize cross-jurisdictional tolling. *Centaur Classic Conv. Arb. Fund Ltd. v. Countrywide Fin. Corp.*, No. 10-CV-05699 MRP (MANx), ECF No. 57, slip op. at 10 (C.D. Cal. Jan. 20, 2011); *Hatfield v. Halifax PLC*, 564 F.3d 1177, 1187–88 (9th Cir. 2009); *Clemens*, 534 F.3d at 1025.

The Court hereby adopts both the reasoning and holding of *Centaur*. Because California does not recognize cross-jurisdictional tolling, this Court has

no authority to toll the state statutes of limitation.

*2. Equitable Tolling Does Not Apply*

Plaintiff makes a related argument that its state-law claims should be equitably tolled. Opp. at 23–30. However, equitable tolling is inappropriate when, as here, the original action was filed in the same forum as the later-filed action. *Martell v. Antelope Valley Hospital Medical Center*, 67 Cal. App. 4th 978, 985 (1998). *See also Naylor v. Flavan*, No. CV 08-03746 GAF (AJW), 2009 WL 1468708, at *6 (C.D. Cal. May 19, 2009) (equitable tolling impermissible when claims pursued in the same forum); *Barrier v. Benninger*, No. C-98-0650-CAL, 1998 WL 846599, at *9 (N.D. Cal. Dec. 1, 1998) (explaining that to apply equitable tolling where a plaintiff attempts to bring a subsequent action in the same forum, "would effectively allow plaintiff to prosecute his argument against these defendants in perpetuity"). Equitable tolling is therefore unavailable to Plaintiff.

Because Plaintiff's state law claims are time-barred, the Court **GRANTS** Defendants' motions to dismiss Counts VI through X as to **ALL DEFENDANTS**. Dismissal is **WITH PREJUDICE**.

**B. STATE UNFAIR COMPETITION CLAIM**

Count XI alleges that Countrywide engaged in unlawful and fraudulent business practices in violation of California's Unfair Competition Law (the "UCL"). AC at ¶¶ 891–894; Cal. Bus. & Prof. Code §§ 17200 *et seq*. This claim is based on the exact same allegations as the securities fraud claims in the rest of the AC, AC at ¶ 891, and relies on the theory that Countrywide misled investors, AC at ¶ 893. In *Bowen v. Ziasun Techs., Inc.*, 116 Cal. App. 4th 777 (2004), the California Court of Appeal held that the UCL "does not apply to securities transactions." The court reasoned that the UCL is a consumer protection statute and that "[a]ctions involving securities . . . are not typically on the agenda of consumer advocates." *Bowen*, 116 Cal. App. 4th at 788 (citation omitted). Several federal courts have adopted the reasoning of *Bowen*. *San Francisco Res. Club, Inc.*

*v. Amado*, C.A. No. 09-2054-RS, 2011 WL 767306, at *9 (N.D. Cal. Feb. 25, 2011) (When "plaintiffs' theory unavoidably focuses on the purchase of securities . . . Bowen is determinative."); *Charles O. Bradley Trust v. Zenith Capital, LLC*, C.A. No. 04-02239, 2008 WL 3400340, at *4 (N.D. Cal. Aug. 11, 2008) (UCL claim alleging securities fraud "barred by the holding in *Bowen*.").

Plaintiff attempts to distinguish *Bowen* by citing to *Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal. App. 4th 345, 356 n.8 (2000). In that case, as in others that have distinguished *Bowen*, the allegations touched fraudulent business practices that would normally be redressed under the UCL. *Roskind*, 80 Cal. App. 4th at 350–51 (trading ahead); *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 715–16 (2007) (defamation); *Benson v. JPMorgan Chase Bank, N.A.*, No. 09–5272, 2010 WL 1526394, at *7–8 (N.D. Cal. Apr. 15, 2010) (facilitating a Ponzi scheme). Those courts declined to dismiss these otherwise valid claims "merely because the case[s] involved securities in a general sense." *San Francisco Res. Club*, 773 F. Supp. 2d at 9.

The Court agrees with Judge Seeborg in *San Francisco Res. Club*. *Bowen* will not bar an otherwise valid UCL claim merely because the conduct involved a securities transaction. *Id.* at 9. *Bowen* will bar, however, UCL claims which allege securities fraud and focus on the purchase of securities. *San Francisco Res. Club*, 773 F. Supp. 2d at 9; c*f. Benson*, 2010 WL 1526394, at *9 ("Had this suit been brought . . . for fraud, *Bowen* would apply since the sale of fraudulent CDs would constitute a securities transaction.").

Plaintiff's claims are squarely aimed at a securities transaction. Securities fraud is not the type of harm that the UCL was meant to prevent. The Court accordingly **GRANTS** Countrywide's motion to dismiss Count XI **WITH PREJUDICE**.

### C. Section 10(b) and 20(a) Claims

This order is being issued contemporaneously with an order in *Children's Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*, No. CV-11-02056-MRP-MAN, ECF No. 60 ("*Children's Hospital*"). Many issues are identical between the two cases. To the extent that they discuss Countrywide, Mozilo, Sieracki, and Sambol, the Court hereby incorporates Sections III.C and III.D of the *Children's Hospital* order by reference.[2] For the reasons discussed therein, the Court **DENIES** the various motions to dismiss Counts IV and V.

### D. Section 11 Claims

The AC alleges that Defendants are liable under § 11 because the registration statements for the Series B Debentures and the 6.25% Notes incorporated by reference a number of false and misleading statements. FAC at ¶¶ 795–807.

To state a claim under § 11, a plaintiff "must demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403–04 (9th Cir. 1996) (quotations and citation omitted), *cert. denied sub. nom. Anderson v. Clow*, 520 U.S. 1103 (1997). Defendants can be held liable for innocent or negligent material misstatements or omissions, subject to several affirmative defenses. The most notable affirmative defense is due diligence. 15 U.S.C. § 77k(b)(3); *In re Stac*, 89 F.3d at 1404. Reliance is not an element.[3] Section 11 claims are subject to Rule 8(a)'s ordinary

---

[2] The Defendants in *Children's Hospital* raised several arguments on loss causation and reliance which are unique to that case. The Court does not incorporate those portions of the *Children's Hospital* ruling here.

[3] There are two possible exceptions. One arises where the issuer released an earnings statement that covers a twelve-month (or greater) period that began after the effective date. In that case, aftermarket purchasers who acquired the security

notice pleading requirements unless the allegations "sound in fraud." *In re Daou Sys., Inc.*, 411 F.3d 1006, 1027 (9th Cir. 2005), *cert. denied sub. nom. Daou Sys., Inc. v. Sparling*, 546 U.S. 1172, 126 S.Ct. 1335, 164 L.Ed.2d 51 (2006). As in *Pappas*, the AC does the work of "stripping" away the fraud allegations from the '33 Act claims. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F.Supp. at 1162. The Court therefore applies Rule 8(a)'s ordinary notice pleading standard.

The AC borrows its allegations liberally from the Consolidated Class Action Complaint in *Pappas*. In *Pappas* and elsewhere, the Court evaluated these allegations and found that they are sufficient to state a § 11 claim for both the Series B Debentures and the 6.25% Notes. *Id.* at 1162–82. Rather than repeat the analysis here, the Court adopts its holding in *Pappas* subject to the modification discussed in Section III.D.5, below. Defendants make a few arguments that the Court has not previously addressed. The Court will briefly discuss the most relevant.

*1. Standing*

Defendant Sambol argues that Plaintiff does not have standing to press its § 11 claim against him. Sambol Mtn. to Dismiss at 22–23, ECF No. 90. This problem arises because the February 9, 2006 registration statement (the "Registration Statement") was filed on behalf of four separate entities (Countrywide Financial Corporation ("CFC"), Countrywide Home Loans ("CHL"), Countrywide Capital V, and Countrywide Capital VI). The Registration Statement contemplated that each of the four entities would issue securities, and

---

after the earnings statement must also prove reliance on the registration statement. 15 U.S.C. § 77k(a). There is some authority for another exception in the unusual case where it appears from the face of the complaint that a plaintiff cannot have actually relied on the registration statement. *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1271 (11th Cir. 2007); *In re Levi Strauss Sec. Litig.*, 527 F. Supp. 2d 965, 974-78 (N.D. Cal. 2007) (locating *APA Excelsior*'s reliance analysis in the materiality element). Otherwise, reliance is presumed.

each of the four entities (and their directors/truestees) signed on its own behalf. Feb. 9, 2006 Form S-3, at II-8 to II-13. CFC issued the Series B Debentures and 6.25% Notes; Sambol signed the Registration Statement on behalf of CHL, not CFC. Sambol admits that he "signed the registration statement" within the technical meaning of § 11, but argues that Plaintiff nevertheless lacks standing to proceed against him on this claim. Sambol Mtn. to Dismiss at 22–23; 15 U.S.C. § 77k(a)(1) (liability attaches to "every person who signed the registration statement").

Standing is an independent jurisdictional requirement which must be met in every case. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). A party invoking federal jurisdiction must demonstrate (i) an injury in fact, (ii) a causal connection between the injury and the defendant's conduct, and (iii) a likelihood that a favorable decision would redress the injury. *Id.* Sambol argues that, because he signed on behalf of CHL instead of CFC, Plaintiff cannot demonstrate a causal connection between his act (signing the registration statement) and Plaintiff's injury. Not so. CFC was a holding company, with CHL its largest operating subsidiary. CFC's ability to repay its bonds was therefore dependent on CHL's performance. Perhaps in recognition of this fact, the Registration Statement disclosed that CHL would fully guarantee CFC-issued bonds. Feb. 9, 2006 Form S-3, at 2. CHL's financial statements were similarly incorporated by reference into CFC's SEC filings, and therefore into the Registration Statement. Opp. at 77. A registration statement consists of the form filed with the SEC, the prospectus, any supplement, and all documents incorporated by reference. *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1164. By signing both the February 9, 2006 Registration Statement and the CHL financial statements which were incorporated by reference, Sambol endorsed those statements. Statements related to CHL would be material to CFC's ability to repay its bonds, meaning that there is a causal

connection between Plaintiff's injury and Sambol's action. The Court is satisfied that Plaintiff has standing to pursue its § 11 claim against Sambol.

*2. Reliance*

Reliance is not normally a prerequisite for a § 11 claim. Several Defendants rely on the statutory exception which requires proof of reliance for after-market purchasers buying after the issuer has issued an earnings statement covering a twelve-month (or greater) period after the Registration Statement. 15 U.S.C. § 77k(a). This Court has already addressed that argument in the *Pappas* case: "Section 11(a) and the SEC rulemaking do not allow defendants to shift the reliance burden to plaintiffs where, as in this case, both the financial statements incorporated in the registration statements and subsequent earning statements are alleged to contain material accounting-related misstatements or omissions." *In re Countrywide Fin. Corp. Sec. Litig.*, 273 F.R.D. 586, 622 (C.D. Cal. 2009).

The Underwriter Defendants also argue that Plaintiff cannot recover for the 6.25% Notes it purchased on May 11, 2006. The Underwriter Defendants point out that, while reliance is not normally an element of a § 11 claim, a complaint should nevertheless be dismissed when the facts pled preclude reliance. Underwriters' Mtn. to Dismiss at 9. *APA Excelsior III L.P. v. Premiere Techs., Inc.*, 476 F.3d 1261, 1271 (11th Cir. 2007) (claim dismissed for lack of reliance when reliance a factual impossibility); *In re Levi Strauss Sec. Litig.*, 527 F. Supp. 2d 965, 974-78 (N.D. Cal. 2007) (noting that, "reliance is not an element of a § 11 claim" but finding that a misstatement cannot be material if Plaintiff did not rely on it for its purchase decision). The Underwriter Defendants argue that Plaintiff cannot possibly show reliance for its May 11, 2006 purchase of the 6.25% notes because the purchase occurred before the Prospectus Supplement was actually filed on May 15, 2006.

The facts of *APA Excelsior* present an extreme example of factual impossibility. There, a sophisticated plaintiff had agreed to a merger months

before the registration statement was ever drafted or circulated. The court held that Section 11 liability was not appropriate when it was factually and logically impossible that the plaintiff had seen or relied upon any statements in the faulty registration statement. *APA Excelsior III L.P.*, 476 F.3d at 1273. Here, by contrast, Plaintiff purchased the 6.25% notes on May 11, 2006. This was the day that the prospectus was dated and two business days prior to when it was filed with the SEC.

On these facts, reliance is not a factual impossibility for two separate reasons. First, Plaintiff correctly points out that SEC rules explicitly contemplate a prospectus being filed up to two days after it becomes effective. 17 C.F.R. § 230.424(b)(5). The use of the word "effective" in the SEC rules means that a prospectus supplement may be effective before it is filed. In light of this, the Court treats May 11, 2006 (the signing date), rather than May 15, 2006 (the filing date) as the "effective" date for purposes of § 11 liability.[4] Plaintiff made its first purchase on the effective date, and so the Court cannot rule out the possibility that Plaintiff based its purchase decision on the signed and effective Prospectus Supplement.

Second, the 6.25% Notes were issued pursuant to the February 9, 2006 Registration Statement as well as the Prospectus Supplement. The Registration Statement had been effective for three months by May of 2006, and contained a number of statements that Plaintiff alleges to be materially misleading. Section 11

[4] The cases cited by the Underwriter Defendants that refer to the filing date as the effective date arose in the statute of repose context. Those holdings are distinguishable. A statute of repose inquiry requires the Court to determine when a security was "bona fide offered to the public." 15 U.S.C. § 77m. The filing date is the first date that a prospectus is publicly available, and so it is logical to use the filing date for statute of repose purposes. By contrast it is entirely possible that a private party could have seen and relied upon the Prospectus Supplement before it was publicly filed.

liability could attach to the 6.25% Notes based on misrepresentations in the Registration Statement. *See* 15 U.S.C. § 77k(a) (liability based on whether a "part" of the registration statement contained false or misleading facts when that "part" became effective). For these reasons reliance is not a factual impossibility.

*3. Loss Causation*

Defendants argue that claims based on certain sales of the 6.25% Notes should be dismissed for lack of loss causation. Specifically, Defendants argue that Plaintiff cannot prove loss causation for sales which occurred before Plaintiff's first alleged corrective disclosure on July 16, 2007. Countrywide Def's Mtn. to Dismiss at 49. Loss causation is an affirmative defense, rather than a pleading requirement, for a § 11 claim. 15 U.S.C. § 77k(e); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1170. Dismissal is therefore only appropriate if the complaint makes clear that there is no conceivable basis for loss causation. *Id.* at 1171. In a case such as this, where a slow leakage of information into the market is possible, Defendants cannot establish a negative causation defense on the basis of the pleadings alone. *Id.* at 1172.

*4. Subjective Falsity*

Defendants Dougherty and Brown argue that the AC must be dismissed because Plaintiff identifies only "a collection of opinions" but has failed to plead the subjective falsity of those opinions. Dougherty & Brown Mtn. to Dismiss at 5, ECF No. 83. Dougherty and Brown are correct that when a complaint alleges a misleading opinion, the complaint must plead both objective and subjective falsity. *Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156, 1162 (9th Cir. 2009). *Rubke*, however, dealt with a situation where the allegedly misleading statements were clearly ones of opinion–fairness opinions by two investment banks. *Id.* On the contrary, whether Countrywide conformed to its underwriting guidelines, issued high-quality loans, improperly characterized loans as prime, etc. are questions of

fact. *Rubke* does not apply to questions of fact, and Plaintiff does not need to allege subjective falsity in order to proceed with its case.

*5. Reasonable Reliance and Due Diligence*

The Underwriter Defendants, Dougherty & Brown, and the Outside Director Defendants all argue that they are entitled to a reasonable reliance or due diligence defense on the face of the complaint. Underwriter Defs' Mtn. to Dismiss at 2, 4–9, ECF No. 77; Outside Director Defendants' Mtn. to Dismiss at 3–10, ECF No. 86; Dougherty & Brown Mtn. to Dismiss at 17–20, ECF No. 83. This Court previously held that the due diligence defense was available on the face of the complaint for the Underwriter Defendants with respect to Countrywide's audited financial statements for fiscal years 2005 and earlier. *See In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1174; *In re Countrywide Fin. Corp. Sec. Litig.*, No. CV–07–05295–MRP (MANx), 2009 WL 943271, at *3 (C.D. Cal. April 6, 2009). The Court adopts the logic of those rulings, but notes that the due diligence defense applies equally to Dougherty, Brown, and the Outside Director Defendants. *In re Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1421 (9th Cir. 1994) (defense available to directors, officers, and underwriters). Unless it amends to allege that they had actual knowledge of any red flags, Plaintiff may not proceed against the Underwriter Defendants, the Outside Director Defendants, Brown, or Dougherty based on Countrywide's FY '04 or FY '05 financial statements. Interim financial reports and other alleged misrepresentations in the Registration Statement are not expertised, and so Plaintiff may proceed based on those statements.

For the reasons discussed above, as well as the reasons discussed in *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d at 1162–81, the Court otherwise **DENIES** Defendants' motions to dismiss Count I.

**E. SECTION 12(A)(2) CLAIMS**

Plaintiff asserts claims against Countrywide, Deutsche Bank, J.P. Morgan, and Goldman Sachs under § 12(a)(2) of the '33 Act. Section 12(a)(2) provides that any person who "offers or sells a security . . . by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact" shall be liable to the person purchasing such security. 15 U.S.C. § 77 l(a)(2); *Miller v. Thane Intern., Inc.*, 519 F.3d 879, 885 (9th Cir. 2008). The "offers or sells" clause limits § 12(a)(2) liability to two narrow classes of defendants: (1) immediate sellers ("remote purchasers are precluded from bringing actions against remote sellers"); and (2) those who solicit purchases to serve their "own financial interests or those of the securities owner." *Pinter v. Dahl*, 486 U.S. 622, 644 n.21, 646 (1988). Both Countrywide and the Underwriter Defendants object that Plaintiff has failed to plead that they fit in either category. They are correct.

This Court has held that an issuer is not a "seller" within the meaning of § 12(a)(2) unless the plaintiff purchased the notes directly from the issuer. *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302-MRP (MANx), ECF No. 257, slip op. at 18 (C.D. Cal. May 5, 2011). The AC does not explain whether Plaintiff purchased directly from Countrywide, from the Underwriter Defendants, or from the secondary market. If Plaintiff purchased directly from Countrywide, Plaintiff must amend the AC to plead that fact with greater specificity. If it did not purchase directly from Countrywide, Countrywide is not a seller within the meaning of § 12(a)(2). Nor has Plaintiff alleged any behavior which would allow the Court to find that Countrywide was involved in the solicitation of the Notes. *Maine State*, slip op. at 18–19 (active solicitation required; drafting a prospectus or participating in a road show are insufficient to meet the solicitation prong of *Pinter*).

Though Plaintiff does not plead it directly, it is more plausible that it purchased some Notes directly from the Underwriter Defendants. However, the allegation that the Underwriter Defendants "offered, solicited, promoted and/or sold Notes to Plaintiff" is insufficient under *Pinter*. AC at ¶ 810. This is a bare recitation of the legal requirement. In a complex case such as this with multiple defendants, securities, and transactions at issue, Plaintiff must plead some facts which would allow the Court and the Underwriter Defendants to know which trades and which Defendants are the subject of the § 12(a)(2) claim.[5]

For the reasons discussed above, the Court **GRANTS** Countrywide and the Underwriter Defendants' motions to dismiss Count II. Plaintiff has leave to amend.

### F. Section 15 Claims

Count III alleges a § 15 claim against Mozilo, Sambol, and Sieracki. Section 15 extends liability created under §§ 11 and 12(a)(2) to "[e]very person who, by or through stock ownership, agency, or otherwise . . . controls any person liable under sections [11 or 12.]" 15 U.S.C. § 77 o. The section creates joint and several liability for control persons after a primary securities violation is found. *In re Daou*, 411 F.3d at 1029–30. Whether a defendant is a control person is a fact question rarely appropriate for motion practice. *In re Worlds of Wonder Sec. Litig.*, 694 F. Supp. 1427, 1435 (N.D. Cal. 1988). The Officer Defendants are

---

[5] Plaintiff relies on a number of cases from the class action context which held that a representative plaintiff need not identify which underwriter sold it the security. Opp at 98; Schoenhaut v. Am. Sensors, 986 F. Supp. 785, n.6 (S.D.N.Y. 1997); In re Wash. Mut., Inc. Sec. Derivative & ERISA Litig., 259 F.R.D. 490, 509 (W.D. Wash. 2009); In re DDi Corp. Sec. Litig., CV 03-7063 NM, 2005 WL 3090882, at *19–20 (C.D. Cal. July 21, 2005). Those holdings may have been appropriate in the class action context where a representative plaintiff may not have access to records which would allow it to trace sales to each underwriter. That is not the case here.

plausible control persons for purposes of § 15. The Court therefore DENIES the Officer Defendants' motions to dismiss Count III.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Counts VI through X are time barred. The Court therefore **GRANTS** Defendants' motions to dismiss Counts VI through X with respect to **ALL DEFENDANTS**. Dismissal is **WITH PREJUDICE**. Count XI fails to state a claim. The Court therefore **GRANTS** Countrywide's motion to dismiss Count XI. Dismissal is **WITH PREJUDICE**. Count II is inadequately pled. The Court therefore **GRANTS** Countrywide and the Underwriter Defendants' motions to dismiss Count II. Dismissal is **WITHOUT PREJUDICE**. The Court otherwise **DENIES** the Defendants' motions to dismiss.

The Court **GRANTS** Plaintiffs leave to file a Second Amended Complaint no later than 21 days from the date of this Order.

**IT IS SO ORDERED.**

DATED: August 22, 2011

Mariana R. Pfaelzer

Hon. Mariana R. Pfaelzer
United States District Judge