MICHAEL D. TORPEY (State Bar No. 79424)
*mtorpey@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, California 94105-2669
Telephone: 415-773-5700
Facsimile: 415-773-5759

MICHAEL C. TU (State Bar No. 186793)
*mtu@orrick.com*
ORRICK, HERRINGTON & SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, California 90017-5855
Telephone: 213-629-2020
Facsimile: 213-612-2499

Attorneys for Defendant David Sambol

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| STATE TREASURER OF THE STATE OF MICHIGAN, AS CUSTODIAN OF THE MICHIGAN PUBLIC SCHOOL EMPLOYEES RETIREMENT SYSTEM, STATE EMPLOYEES' RETIREMENT SYSTEM, MICHIGAN STATE POLICE RETIREMENT SYSTEM AND MICHIGAN JUDGES' RETIREMENT SYSTEM,<br><br>Plaintiff,<br><br>v.<br><br>COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, ANGELO R. MOZILO, DAVID SAMBOL, ERIC P. SIERACKI, KATHLEEN BROWN, HENRY G. CISNEROS, JEFFREY M. CUNNINGHAM, ROBERT J. DONATO, MICHAEL E. DOUGHERTY, BEN M. ENIS, EDWIN HELLER, MARTIN R. MELONE, ROBERT T. PARRY, OSCAR P. ROBERTSON, KEITH P. RUSSELL, HARLEY W. SNYDER, KPMG LLP, a Delaware LLP, BANC OF AMERICA | Case No. CV-11-809 MRP (MANx)<br><br>**DEFENDANT DAVID SAMBOL'S ANSWER TO AMENDED COMPLAINT** |

SECURITIES LLC, a Delaware LLC, J.P MORGAN SECURITIES INC., a Delaware corporation, COUNTRYWIDE SECURITIES CORPORATION, a California corporation, BARCLAYS CAPITAL INC., a Connecticut corporation, DEUTSCHE BANK SECURITIES INC., a Delaware corporation, HSBC SECURITIES (USA) INC., a Delaware corporation, WELLS FARGO SECURITIES, LLC, a Delaware LLC, RBS SECURITIES INC., a Delaware corporation, GOLDMAN, SACHS & CO., a Delaware corporation, ABN AMRO INCORPORATED, a New York corporation, and BNP PARIBAS SECURITIES CORP., a Delaware corporation,

Defendants.

Defendant David Sambol ("Mr. Sambol") hereby answers Plaintiff's Amended Complaint. To the extent not specifically admitted, Mr. Sambol denies each and every allegation of the Amended Complaint.

GENERAL RESPONSES

The numbered paragraphs of this answer correspond to the paragraphs as numbered in the Amended Complaint. To the extent the paragraphs in the Amended Complaint are grouped under headings, Mr. Sambol responds generally that such headings and groupings are conclusions of law or fact and deny each and every such allegation made or implied by such headings or groupings.

To the extent that the Amended Complaint attempts to characterize certain alleged facts in a conclusory manner such as "fraudulent," "manipulative," "material," "wrongful," "illegal," or "knowingly," Mr. Sambol responds generally that such allegations constitute pejoratives or conclusions of law and do not constitute allegations of fact requiring a response. To the extent such allegations may be construed as allegations of fact, Mr. Sambol objects to and denies each such allegation.

The Amended Complaint contains numerous allegations concerning all or some defendants as a group. Unless otherwise specifically indicated, Mr. Sambol lacks knowledge or information sufficient to form a belief as to the truth of any of the allegations concerning the knowledge of others.

This answer is submitted only on behalf of Mr. Sambol. Mr. Sambol occasionally responds to allegations relating to the status, conduct, or other affairs of other defendants, persons, or entities not answering herein. Such responses are not binding on, and are not intended to impact the rights of, any other defendants, persons, or entities. Similarly, to the extent other defendants answer the allegations in the Amended Complaint, such answers are not binding on Mr. Sambol.

Finally, in response to many of the allegations in the Amended Complaint, Mr. Sambol answers herein that he is without knowledge or information sufficient

to form a belief as to the truth of such allegations. In each and every instance where Mr. Sambol so answers, Mr. Sambol on that basis denies each and every such allegation, and incorporates by reference this response into each paragraph below as if fully set forth therein.

SPECIFIC RESPONSES

1. Mr. Sambol admits, on information and belief, that Countrywide Financial Corporation was a holding company that was founded in March 1969. Mr. Sambol further admits, on information and belief, that Countrywide, through its subsidiaries, engaged in mortgage lending and other real estate finance-related businesses, including mortgage banking, retail banking, mortgage warehouse lending, securities dealing, and insurance underwriting. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 1, and therefore denies them.

2. Mr. Sambol admits that Countrywide engaged in mortgage lending and other finance-related businesses and sold loans into the secondary market. Mr. Sambol denies the remaining allegations in paragraph 2.

3. Mr. Sambol denies the allegations in paragraph 3.

4. Mr. Sambol avers that the contents of the statements referenced in paragraph 4 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

5. Mr. Sambol avers that the allegations in paragraph 5 are vague and ambiguous, and that no response is therefore required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5, and therefore denies them.

6. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements during a March 2007 CNBC interview, which speak for

themselves. Mr. Sambol refers to those statements for their contents and denies any quotation or characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 6, and therefore denies them.

7. Mr. Sambol avers that information regarding the volume of Countrywide's origination of various loan products is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol denies the remaining allegations in paragraph 7.

8. Mr. Sambol avers that the contents of the *Interagency Guidance on Nontraditional Mortgage Product Risks* ("*Interagency Guidance*") referenced in paragraph 8 speak for themselves, refers to the *Interagency Guidance* for its contents, and denies any characterization inconsistent with its terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8, and therefore denies them.

9. Mr. Sambol denies the allegations in paragraph 9.

10. Mr. Sambol denies the allegations in paragraph 10.

11. Mr. Sambol denies the allegations in paragraph 11.

12. Mr. Sambol denies the allegations in paragraph 12.

13. Mr. Sambol denies the allegations in paragraph 13.

14. Mr. Sambol avers that the allegations in paragraph 14 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that information regarding Countrywide's accumulated negative amortization is contained, among other places, in its periodic SEC filings, which speak for themselves, refers to those filings for their contents, and denies any characterization inconsistent with their

terms. To the extent the allegations require a further response, they are denied.

15. Mr. Sambol avers that the allegations in paragraph 15 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

16. Mr. Sambol avers that the allegations in paragraph 16 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that information regarding Countrywide's ALL levels was contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

17. Mr. Sambol avers that the allegations in paragraph 17 are not directed to him and that no response is therefore required. To the extent a response is required, Mr. Sambol avers he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17, and therefore denies them.

18. Mr. Sambol avers that the allegations in paragraph 18 are not directed to him and contain legal conclusions, and that no response is therefore required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18, and therefore denies them.

19. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

20. Mr. Sambol avers, on information and belief, that the quarterly conference call statements and the July 27, 2007 Stifel Nicolas report referenced in paragraph 20 speak for themselves. Mr. Sambol refers to those statements and that document for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

21. Mr. Sambol avers that the allegations in paragraph 21 are vague and ambiguous and no response is required. Mr. Sambol further avers that information regarding Countrywide's financial statements is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol denies the allegations in the first and fourth sentences of paragraph 21 and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 21, and therefore denies them.

22. Mr. Sambol admits, on information and belief, that Bank of America and Countrywide issued an announcement on January 11, 2008, referenced in paragraph 22, which speaks for itself. Mr. Sambol further admits, on information and belief, that an article regarding Countrywide appeared in the March 8, 2008 edition of the *Wall Street Journal*, which speaks for itself. Mr. Sambol refers to these documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

23. Mr. Sambol admits, on information and belief, the first sentence in paragraph 23. Mr. Sambol avers that the FCIC Report referenced in paragraph 23 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

24. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

25. Mr. Sambol avers that the documents referenced in paragraph 25 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require

a further response, they are denied.

26. Mr. Sambol avers that paragraph 26 states a legal conclusion as to which no response is required. To the extent the allegations require a response, they are denied.

27. Mr. Sambol avers that paragraph 27 states a legal conclusion as to which no response is required. To the extent the allegations require a response, they are denied.

28. Mr. Sambol avers that paragraph 28 states a legal conclusion as to which no response is required. To the extent the allegations require a response, they are denied.

29. Mr. Sambol avers that paragraph 29 states a legal conclusion as to which no response is required. To the extent the allegations require a response, they are denied.

30. Mr. Sambol avers that paragraph 30 states a legal conclusion as to which no response is required. To the extent the allegations require a response, they are denied.

31. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31, and therefore denies them.

32. Mr. Sambol admits, on information and belief, the first, second, and third sentences of paragraph 32. Mr. Sambol further admits, on information and belief, that Countrywide common shares were traded on the New York Stock Exchange under the symbol "CFC" during the Relevant Time Period. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 32, and therefore denies them.

33. Mr. Sambol admits, on information and belief, that an 8-K issued by Countrywide on July 8, 2008 states that on July 1, 2008, Countrywide completed a

transaction with Red Oak Merger Corporation, a wholly owned subsidiary of Bank of America. Mr. Sambol avers that the contents of the Agreement and Plan of Merger referenced in paragraph 33 speaks for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 33, and therefore denies them.

34. Mr. Sambol avers that the allegations in paragraph 34 are not directed to him, and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 34 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a response is required, Mr. Sambol admits, on information and belief, that Mr. Mozilo was Countrywide's co-founder, Chairman of Countrywide's Board of Directors, and CEO during the Relevant Time Period. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 34, and therefore denies them.

35. Mr. Sambol admits the seventh sentence of paragraph 35. Mr. Sambol further admits that from approximately April 2006 to September 2006, he served as the Executive Managing Director of Business Segment Operations at Countrywide. Mr. Sambol served as President and Chief Operating Officer of Countrywide Home Loans ("CHL") from January 1, 2004 to October 9, 2006. Beginning in September 2006, Mr. Sambol served as the President and Chief Operating Officer of Countrywide Financial Corporation. Mr. Sambol served as Chairman of the Board and Chief Executive Officer of CHL throughout 2007. Mr. Sambol admits he was a member of Countrywide's credit risk committee during some portion of the Relevant Time Period. Mr. Sambol admits he signed the documents referenced in paragraph 35, avers that the contents of the documents speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent

with their terms. To the extent the allegations require a further response, they are denied.

36. Mr. Sambol avers that the allegations in paragraph 36 are not directed to him, and therefore no response from Mr. Sambol is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 36 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol admits, on information and belief, that Mr. Sieracki was, starting in 2005, Executive Managing Director and Chief Financial Officer of Countrywide Financial Corporation. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 36, and therefore denies them.

37. Mr. Sambol avers that paragraph 37 states a legal conclusion as to which no response is required. To the extent a response is required, Mr. Sambol denies the allegations in paragraph 37 as they relate to him, and avers that no response is required to the extent such allegations are directed to the other defendants. To the extent the allegations require a further response, they are denied.

38. Mr. Sambol avers that paragraph 38 constitutes legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

39. Mr. Sambol avers that the allegations in paragraph 39 are vague and ambiguous and contain legal conclusions as to which no response is required. To the extent a response is required, Mr. Sambol denies the allegations in paragraph 39 as they relate to him, and avers that no response is required to the extent such allegations are directed to the other defendants.

40. Mr. Sambol denies the allegations in paragraph 40.

41. Mr. Sambol denies the allegations in paragraph 41.

42. Mr. Sambol admits, on information and belief, the first sentence of paragraph 42. Mr. Sambol avers that the documents referenced in paragraph 42 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42, and therefore denies them.

43. Mr. Sambol admits, on information and belief, the first sentence of paragraph 43. Mr. Sambol avers that the documents referenced in paragraph 43 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 43, and therefore denies them.

44. Mr. Sambol admits, on information and belief, the first sentence of paragraph 44. Mr. Sambol avers that the documents referenced in paragraph 44 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44, and therefore denies them.

45. Mr. Sambol admits, on information and belief, the first sentence of paragraph 45. Mr. Sambol avers that the documents referenced in paragraph 45 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45, and therefore denies them.

46. Mr. Sambol admits, on information and belief, the first sentence of paragraph 46. Mr. Sambol avers that the documents referenced in paragraph 46 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46, and therefore denies them.

47. Mr. Sambol admits, on information and belief, the first sentence of paragraph 47. Mr. Sambol avers that the documents referenced in paragraph 47 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47, and therefore denies them.

48. Mr. Sambol admits, on information and belief, the first sentence of paragraph 48. Mr. Sambol avers that the documents referenced in paragraph 48 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48, and therefore denies them.

49. Mr. Sambol admits, on information and belief, the first sentence of paragraph 49. Mr. Sambol avers that the documents referenced in paragraph 49 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49, and therefore denies them.

50. Mr. Sambol admits, on information and belief, the first sentence of paragraph 50. Mr. Sambol avers that the documents referenced in paragraph 50 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50, and therefore denies them.

51. Mr. Sambol admits, on information and belief, the first sentence of paragraph 51. Mr. Sambol avers that the documents referenced in paragraph 51 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 51, and therefore denies them.

52. Mr. Sambol admits, on information and belief, the first sentence of paragraph 52. Mr. Sambol avers that the documents referenced in paragraph 52 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52, and therefore denies them.

53. Mr. Sambol admits, on information and belief, the first sentence of paragraph 53. Mr. Sambol avers that the documents referenced in paragraph 53 speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53, and therefore denies them.

54. Mr. Sambol admits that Plaintiff purports to define "Individual Defendants" in paragraph 54.

55. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 55 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55, and therefore denies them.

56. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 56 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56, and therefore denies them.

57. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 57 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57, and therefore denies them.

58. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 58 are listed in the offering documents for the securities, which speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 58, and therefore denies them.

59. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 59 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59, and therefore denies them.

60. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 60 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60, and therefore denies them.

61. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 61 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 61, and therefore denies them.

62. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 62 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information

sufficient to form a belief as to the truth of the allegations in paragraph 62, and therefore denies them.

63. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 63 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63, and therefore denies them.

64. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 64 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64, and therefore denies them.

65. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 65 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65, and therefore denies them.

66. Mr. Sambol admits that Plaintiff purports to define "Underwriter Defendants" in paragraph 66.

67. Mr. Sambol avers that the allegations in paragraph 67 are not directed to him and that no response is therefore required. To the extent the allegations require a response, Mr. Sambol admits, on information and belief, the third and

fourth sentences of paragraph 67. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 67, and therefore denies them.

68. Mr. Sambol avers that the allegations in paragraph 68 are vague and ambiguous, and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's loan originations is contained in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68, and therefore denies them.

69. Mr. Sambol avers that information regarding Countrywide's business segments is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

70. Mr. Sambol avers that information regarding Countrywide's business segments is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

71. Mr. Sambol avers that information regarding Countrywide's business segments and earnings is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

72. Mr. Sambol admits that Countrywide sold many of the loans it

originated into the secondary mortgage market through whole loans sales or securitizations. Mr. Sambol further avers that information regarding Countrywide's loan products and securitizations is contained in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

73. Mr. Sambol avers that the allegations in paragraph 73 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's revenues, sales of loan pools, and securitizations is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

74. Mr. Sambol avers that information regarding Countrywide's loan servicing rights and reported profits is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

75. Mr. Sambol avers that information regarding Countrywide's financing is contained in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the Form 10-K reports referenced in paragraph 75 speak for themselves, refers to the reports for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

76. Mr. Sambol admits that Countrywide's business model during the time period alleged in the Amended Complaint involved the sale of many of the loans it originated into the secondary mortgage market. Mr. Sambol avers that information regarding Countrywide's revenues and operations is contained in its periodic SEC

filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the article in the *Wall Street Journal* referenced in paragraph 76 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

77. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a July 22, 2003 earnings call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

78. Mr. Sambol avers that the contents of the periodic filings referenced in paragraph 78 speak for themselves, refers to the periodic filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

79. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79, and therefore denies them.

80. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80, and therefore denies them.

81. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81, and therefore denies them.

82. Mr. Sambol denies the allegations in the first sentence of paragraph 82. Mr. Sambol avers that the article referenced in paragraph 82 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient

to form a belief as to the truth of the remaining allegations in paragraph 82, and therefore denies them.

83. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83, and therefore denies them.

84. Mr. Sambol avers that the allegations in the first sentence in paragraph 84 are vague and ambiguous, and therefore no response is required. Mr. Sambol avers that the article and annual report referenced in paragraph 84 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that information regarding Countrywide's total loan originations and earnings figures is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

85. Mr. Sambol avers that information regarding Countrywide's loan products and product mix is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

86. Mr. Sambol avers that information regarding Countrywide's loan products and adjustable rate mortgages is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 86, and therefore denies them.

87. Mr. Sambol avers that the allegations in paragraph 87 are vague

and ambiguous and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's loan products and Pay Option ARMs is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

88. Mr. Sambol avers that the filings referenced in paragraph 88 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 88, and therefore denies them.

89. Mr. Sambol avers that the allegations in paragraph 89 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's loan programs is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 89, and therefore denies them.

90. Mr. Sambol avers that the allegations in paragraph 90 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's loan programs is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 90, and therefore denies them.

91. Mr. Sambol avers that the allegations in paragraph 91 are vague

and ambiguous and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's loan programs is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the article referenced in paragraph 91 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 91, and therefore denies them.

92. Mr. Sambol avers that information regarding Countrywide's loan programs and Pay Option ARMs is contained in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 92, and therefore denies them.

93. Mr. Sambol avers that information regarding Countrywide's loan programs is contained in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 93, and therefore denies them.

94. Mr. Sambol avers that information regarding Countrywide's loan programs and earnings figures is contained in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the periodic filings referenced in paragraph 94 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the

allegations require a further response, they are denied.

95. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a July 22, 2003 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

96. Mr. Sambol avers that the FCIC report referenced in paragraph 96 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

97. Mr. Sambol avers that the allegations in paragraph 97 are vague and ambiguous, and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 97, and therefore denies them.

98. Mr. Sambol avers that paragraph 98 is vague and ambiguous because it fails to identify the source of the alleged requirements of mortgage and banking industry regulators and therefore no response is required. Mr. Sambol avers that the mortgage and banking industry regulators' stated positions speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 98, and therefore denies them.

99. Mr. Sambol avers that the documents referenced in paragraph 99 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 99, and therefore denies them.

100. Mr. Sambol avers that the allegations in the first sentence in paragraph 100 are vague and ambiguous, and therefore no response is required. Mr. Sambol avers that the document referenced in paragraph 100 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 100, and therefore denies them.

101. Mr. Sambol avers that the allegations in the first sentence in paragraph 101 are vague and ambiguous, and therefore no response is required. Mr. Sambol avers that the article referenced in paragraph 101 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 101, and therefore denies them.

102. Mr. Sambol avers that the document referenced in paragraph 102 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 102, and therefore denies them.

103. Mr. Sambol avers that information regarding Countrywide's loan products and HELOCs is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the allegations in the second sentence in paragraph 103 are vague and ambiguous, and therefore no

response is required. Mr. Sambol avers that the document referenced in paragraph 103 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 103, and therefore denies them.

104. Mr. Sambol avers that the documents referenced in paragraph 104 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

105. Mr. Sambol avers that the allegations in the first sentence of paragraph 105 are vague and ambiguous, and therefore no response is required. Mr. Sambol denies the allegations of the last sentence of paragraph 105 as they relate to him and avers that no response is required for the allegations directed to others. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 105, and therefore denies them.

106. Mr. Sambol avers that the periodic filings referenced in paragraph 106 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

107. Mr. Sambol avers that the allegations in paragraph 107 are vague and ambiguous, and therefore no response is required. Mr. Sambol avers that the public filings referenced in paragraph 107 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

108. Mr. Sambol denies the allegations in paragraph 108.

109. Mr. Sambol avers that the allegations in the first sentence of paragraph 109 are vague and ambiguous, and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 109 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol denies the last sentence in paragraph 109, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 109, and therefore denies them.

110. Mr. Sambol denies the allegations in paragraph 110.

111. Mr. Sambol denies the allegations in paragraph 111.

112. Mr. Sambol avers that the allegations in paragraph 112 are vague and ambiguous, and therefore no response is required. Mr. Sambol avers that the documents referenced in paragraph 112 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies the allegations in the first sentence of paragraph 112, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112, and therefore denies them.

113. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113, and therefore denies them.

114. Mr. Sambol avers that the documents referenced in paragraph 114 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 114, and therefore denies them.

115. Mr. Sambol denies the allegations in the last sentence of paragraph

115. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 115, and therefore denies them.

116. Mr. Sambol avers that the document referenced in paragraph 116 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

117. Mr. Sambol avers that the allegations in paragraph 117 are vague and ambiguous and contain hypothetical facts, and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 117, and therefore denies them.

118. Mr. Sambol denies the allegations in paragraph 118.

119. Mr. Sambol denies the allegations in the first two sentences of paragraph 119. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 119, and therefore denies them.

120. Mr. Sambol avers that he is without sufficient knowledge or information to form a belief as to whether the purported confidential witnesses or Plaintiff's "investigation" referenced in paragraph 120 provided the allegations in that paragraph, and therefore denies them. As to the underlying allegations in paragraph 120, they are denied.

121. Mr. Sambol avers that he is without sufficient knowledge or information to form a belief as to whether the purported confidential witness referenced in paragraph 121 provided the allegations in that paragraph, and therefore denies them. As to the underlying allegations, Mr. Sambol denies the allegations in the first sentence of paragraph 121, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations in paragraph 121, and therefore denies them.

122. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122, and therefore denies them.

123. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123, and therefore denies them.

124. Mr. Sambol denies the allegations in the last sentence of paragraph 124. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 124, and therefore denies them.

125. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125, and therefore denies them.

126. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126, and therefore denies them.

127. Mr. Sambol avers that the complaint referenced in paragraph 127 speaks for itself, refers to the complaint for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127, and therefore denies them.

128. Mr. Sambol avers that the documents referenced in paragraph 128 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in

paragraph 128, and therefore denies them.

129. Mr. Sambol denies the allegations in paragraph 129.

130. Mr. Sambol avers that he is without sufficient knowledge or information to form a belief as to whether the purported confidential witnesses referenced in paragraph 130 provided the allegations in that paragraph, and therefore denies them. As to the underlying allegations in paragraph 130, they are denied.

131. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131, and therefore denies them.

132. Mr. Sambol avers that he is without sufficient knowledge or information to form a belief as to whether the purported confidential witnesses referenced in paragraph 132 provided the allegations in that paragraph, and therefore denies them. As to the underlying allegations in paragraph 132, they are denied.

133. Mr. Sambol avers that the documents referenced in paragraph 133 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 133, and therefore denies them.

134. Mr. Sambol avers that the *New York Times* article referenced in paragraph 134 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 134, and therefore denies them.

135. Mr. Sambol avers that the *New York Times* article referenced in

paragraph 135 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 135, and therefore denies them.

136. Mr. Sambol avers that the testimony referenced in paragraph 136 speaks for itself, refers to the testimony for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 136, and therefore denies them.

137. Mr. Sambol avers that the testimony referenced in paragraph 137 speaks for itself, refers to the testimony for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 137, and therefore denies them.

138. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 138, and therefore denies them.

139. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 139, and therefore denies them.

140. Mr. Sambol avers that the testimony referenced in paragraph 140 speaks for itself, refers to the testimony for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 140, and therefore denies them.

141. Mr. Sambol avers that the testimony referenced in paragraph 141 speaks for itself, refers to the testimony for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 141, and therefore denies them.

142. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 142, and therefore denies them.

143. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 143, and therefore denies them.

144. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 144, and therefore denies them.

145. Mr. Sambol avers that the *Businessweek* article referenced in paragraph 145 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 145, and therefore denies them.

146. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 146, and therefore denies them.

147. Mr. Sambol avers that the *Businessweek* article referenced in paragraph 147 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol denies that Countrywide did not focus on risk or compliance. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 147, and therefore denies them.

148. Mr. Sambol avers that the *Huffington Post* article referenced in

paragraph 148 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

149. Mr. Sambol avers that the FCIC Report referenced in paragraph 149 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 149, and therefore denies them.

150. Mr. Sambol denies the allegations in the first three sentences of paragraph 150. Mr. Sambol avers that the contents of the document referenced in paragraph 150 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that the remaining allegations in paragraph 150 contain interpretations of appraisal guidelines and legal conclusions as to which no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 150, and therefore denies them.

151. Mr. Sambol avers that the contents of the document referenced in paragraph 151 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 151, and therefore denies them.

152. Mr. Sambol avers that the contents of the complaint referenced in paragraph 152 speak for themselves, refers to the complaint for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 152, and therefore denies them.

153. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 153, and therefore denies them.

154. Mr. Sambol avers that the contents of the complaint referenced in paragraph 154 speak for themselves, refers to the complaint for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 154, and therefore denies them.

155. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 155, and therefore denies them.

156. Mr. Sambol avers that the documents referenced in paragraph 156 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

157. Mr. Sambol avers that the documents referenced in paragraph 157 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

158. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on July 24, 2007, and held an earnings conference call that day. Mr. Sambol further avers that the contents of the Form 8-K and the statements referenced in paragraph 158 speak for themselves, refers to the Form 8-K and the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are

denied.

159. Mr. Sambol avers that the *New York Times* article referenced in paragraph 159 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

160. Mr. Sambol avers that the article referenced in paragraph 160 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

161. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 161, and therefore denies them.

162. Mr. Sambol avers that the public disclosures referenced in paragraph 162 speak for themselves, refers to the disclosures for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

163. Mr. Sambol avers that the allegations in paragraph 163 are vague and ambiguous and therefore no response is required. To the extent the allegations require a response, they are denied.

164. Mr. Sambol avers that the allegations in paragraph 164 are vague and ambiguous and therefore no response is required. To the extent a response is required, Mr. Sambol avers that the document referenced in paragraph 164 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol further avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 164, and therefore denies them.

165. Mr. Sambol avers that the document referenced in paragraph 165 speaks for itself, refers to the document for its contents, and denies any

characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

166. Mr. Sambol avers that the document referenced in paragraph 166 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

167. Mr. Sambol avers that the document referenced in paragraph 167 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

168. Mr. Sambol avers that the allegations in paragraph 168 are vague and ambiguous, and therefore no response is required. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sambol made various statements at a September 13, 2006 investor conference, and that Mr. Mozilo made various statements at a September 13, 2005 analyst call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

169. Mr. Sambol avers that he is without sufficient knowledge or information to form a belief as to whether the purported confidential witnesses referenced in paragraph 169 provided the allegations in that paragraph, and therefore denies them. To the extent the allegations require a further response, they are denied.

170. Mr. Sambol avers that information regarding Countrywide's FSL division is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

paragraph 170, and therefore denies them.

171. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 171, and therefore denies them.

172. Mr. Sambol avers that the testimony referenced in paragraph 172 speaks for itself, refers to the testimony for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 172, and therefore denies them.

173. Mr. Sambol avers that the statements referenced in paragraph 173 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

174. Mr. Sambol avers that the statements referenced in paragraph 174 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

175. Mr. Sambol avers that the statements referenced in paragraph 175 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

176. Mr. Sambol avers that the document referenced in paragraph 176 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 176, and therefore denies them.

177. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 177, and therefore

denies them.

178. Mr. Sambol avers that the analyst report referenced in paragraph 178 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

179. Mr. Sambol avers that the analyst report referenced in paragraph 179 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

180. Mr. Sambol avers that the *New York Times* article referenced in paragraph 180 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

181. Mr. Sambol avers that the document referenced in paragraph 181 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

182. Mr. Sambol avers that the documents referenced in paragraph 182 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

183. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 183, and therefore denies them.

184. Mr. Sambol avers that the allegations in the first sentence of paragraph 184 are vague and ambiguous, and therefore no response is required. To the extent the allegations in the first sentence require a further response, they are denied. Mr. Sambol avers that he lacks knowledge or information

sufficient to form a belief as to the truth of the remaining allegations in paragraph 184, and therefore denies them.

185. Mr. Sambol denies the allegations in paragraph 185.

186. Mr. Sambol avers that the allegations in paragraph 186 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the contents of the regulations and accounting guidelines referenced in paragraph 186 speak for themselves, refers to the regulations and accounting guidelines for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 186, and therefore denies them.

187. Mr. Sambol denies the allegations in paragraph 187.

188. Mr. Sambol avers that the allegations in paragraph 188 are vague and ambiguous and contain interpretations of accounting principles and guidelines to which no response is required. To the extent a response is required, Mr. Sambol avers, on information and belief, that Countrywide's accounting for nonaccrual loans is contained, among other places, in its periodic SEC filings, which speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 188, and therefore denies them.

189. Mr. Sambol avers that the allegations in paragraph 189 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of documents referenced in paragraph 189 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or

information sufficient to form a belief as to the truth of the allegations in paragraph 189, and therefore denies them.

190. Mr. Sambol avers that the allegations in paragraph 190 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 190 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 190, and therefore denies them.

191. Mr. Sambol avers that the allegations in paragraph 191 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 191 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 191, and therefore denies them.

192. Mr. Sambol avers that the allegations in paragraph 192 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 192 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 192, and therefore denies them.

193. Mr. Sambol avers that the allegations in paragraph 193 contain interpretations of accounting guidelines and legal conclusions as to which no

response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 193, and therefore denies them.

194. Mr. Sambol avers that the allegations in paragraph 194 contain interpretations of accounting principles and guidelines as to which no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 194 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 194, and therefore denies them.

195. Mr. Sambol avers that the allegations in paragraph 195 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 195 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 195, and therefore denies them.

196. Mr. Sambol avers that the allegations in paragraph 196 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the accounting guidelines referenced in paragraph 196 speak for themselves, refers to the guidelines for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 196, and therefore denies them.

197. Mr. Sambol avers that the allegations in paragraph 197 contain

interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 197 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 197, and therefore denies them.

198. Mr. Sambol avers that the allegations in paragraph 198 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 198 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 198, and therefore denies them.

199. Mr. Sambol avers that the allegations in paragraph 199 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 199 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 199, and therefore denies them.

200. Mr. Sambol avers that the allegations in paragraph 200 contain

interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the accounting guidelines referenced in paragraph 200 speak for themselves, refers to the guidelines for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 200, and therefore denies them.

201. Mr. Sambol avers that the allegations in paragraph 201 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the document referenced in paragraph 201 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 201, and therefore denies them.

202. Mr. Sambol avers that the allegations in paragraph 202 are vague and ambiguous and contain interpretations of accounting principles and guidelines as to which no response is required. Mr. Sambol avers, on information and belief, that Countrywide's classification of LHI loans is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 202, and therefore denies them.

203. Mr. Sambol avers that the allegations in paragraph 203 are vague and ambiguous and contain interpretations of accounting principles and guidelines and legal conclusions as to which no response is required. To the extent a further

response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 203, and therefore denies them.

204. Mr. Sambol avers that the contents of the documents referenced in paragraph 204 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 204, and therefore denies them.

205. Mr. Sambol avers that the allegations in paragraph 205 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 205 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 205, and therefore denies them.

206. Mr. Sambol avers that the contents of the documents referenced in paragraph 206 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 206, and therefore denies them.

207. Mr. Sambol avers that the contents of the documents referenced in paragraph 207 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

208. Mr. Sambol avers that the allegations in paragraph 208 contain

interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 208 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 208, and therefore denies them.

209. Mr. Sambol avers that the allegations in paragraph 209 are vague and ambiguous and contain interpretation of accounting principles and guidelines as to which no response is required. Mr. Sambol avers, on information and belief, that Countrywide's methodology for calculating ALL is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

210. Mr. Sambol avers that the allegations in paragraph 210 contain interpretations of accounting guidelines as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 210 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 210, and therefore denies them.

211. Mr. Sambol avers that the allegations in paragraph 211 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 211 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers, on information and belief, that Countrywide's historical trends in

setting its ALL are contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

212. Mr. Sambol denies the allegations in paragraph 212.

213. Mr. Sambol avers that the allegations in paragraph 213 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that Countrywide's ALL and LHI figures are contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

214. Mr. Sambol avers that the allegations in paragraph 214 are vague and ambiguous and contain interpretations of accounting principles and guidelines as to which no response is required. Mr. Sambol avers, on information and belief, that Countrywide's ALL and LHI figures are contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

215. Mr. Sambol avers that the allegations in paragraph 215 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 215 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers, on information and belief, that information regarding Countrywide's loan originations and ALLL is contained, among other places, in its periodic SEC filings, which speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph

215 incorporates the allegations in Sections V.B, V.C, and V.D of the Amended Complaint, Mr. Sambol incorporates his responses to the paragraphs in those sections. To the extent the allegations require a further response, they are denied.

216. Mr. Sambol avers, on information and belief, that Countrywide's nonprime production figures are contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 216 incorporates the allegations in Sections V.B and V.C of the Amended Complaint, Mr. Sambol incorporates his responses to the paragraphs in those sections. To the extent the allegations require a further response, they are denied.

217. Mr. Sambol avers, on information and belief, that information regarding Countrywide's loan production is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

218. Mr. Sambol avers, on information and belief, that information regarding Countrywide's loan production is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

219. Mr. Sambol denies the allegations in paragraph 219.

220. Mr. Sambol avers, on information and belief, that information regarding Countrywide's loan production is contained, among other places, in its periodic SEC filings, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

221. Mr. Sambol avers, on information and belief, that information regarding Countrywide's loan production is contained, among other places, in its

periodic SEC filings, which speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

222. Mr. Sambol denies the allegations in paragraph 222.

223. Mr. Sambol denies the allegations in paragraph 223.

224. Mr. Sambol avers, on information and belief, that Countrywide's ALL and LHI figures are contained, among other places, in its periodic filings, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

225. Mr. Sambol avers that the allegations in paragraph 225 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 225 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers, on information and belief, that information on Countrywide's loan production is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

226. Mr. Sambol avers that the allegations in paragraph 226 are vague and ambiguous and contain interpretations of accounting guidelines and principles and legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

227. Mr. Sambol avers, on information and belief, that the negative amortization figures for Countrywide's PayOption ARMs are contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the

allegations require a further response, they are denied.

228. Mr. Sambol denies the allegations in paragraph 228.

229. Mr. Sambol denies the allegations in paragraph 229.

230. Mr. Sambol avers that the contents of the Forms 10-K referenced in paragraph 230 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

231. Mr. Sambol avers that the contents of the documents referenced in paragraph 231 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms.

232. Mr. Sambol avers that the contents of the documents referenced in paragraph 232 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms.

233. Mr. Sambol avers that the allegations in paragraph 233 are vague and ambiguous and contain interpretations of accounting guidelines and principles and legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

234. Mr. Sambol avers that the allegations in paragraph 234 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

235. Mr. Sambol avers that the allegations in paragraph 235 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 235 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

236. Mr. Sambol avers that the allegations in paragraph 236 are vague and

ambiguous and contain interpretations of accounting principles and guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the Forms 10-K referenced in paragraph 236 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

237. Mr. Sambol avers that the allegations in paragraph 237 are vague and ambiguous and contain interpretations of accounting principles and guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the Forms 10-K referenced in paragraph 237 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

238. Mr. Sambol avers that the allegations in paragraph 238 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

239. Mr. Sambol denies the allegations in paragraph 239.

240. Mr. Sambol avers, on information and belief, that information regarding Countrywide's mortgage servicing rights is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

241. Mr. Sambol denies the allegations in paragraph 241.

242. Mr. Sambol avers that the allegations in paragraph 242 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 242 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

243. Mr. Sambol avers that the contents of the documents referenced in paragraph 243 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

244. Mr. Sambol avers that the allegations in paragraph 244 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 244 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers, on information and belief, that information regarding Countrywide's accounting policies for MSRs is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

245. Mr. Sambol avers that the allegations in paragraph 245 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 245 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers, on information and belief, that information about Countrywide's accounting policies for valuing MSRs is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

246. Mr. Sambol avers that the contents of the documents referenced in paragraph 246 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers, on information and belief, that information about Countrywide's accounting

policies for valuing MSRs is contained, among other places, in its periodic SEC filings, refers to those document for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

247. Mr. Sambol avers that the contents of the documents referenced in paragraph 247 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

248. Mr. Sambol avers that the contents of the documents referenced in paragraph 248 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

249. Mr. Sambol avers that the allegations in paragraph 249 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the information contained in the chart in paragraph 249 and on that basis denies the allegations contained in the chart. To the extent the allegations require a further response, they are denied.

250. Mr. Sambol avers that the allegations in paragraph 250 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that the figures for the gross value of and impairment allowance for Countrywide's MSRs are contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

251. Mr. Sambol avers that the allegations in paragraph 251 are vague and

ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that the figures for the gross value of and impairment allowance for Countrywide's MSRs are contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

252. Mr. Sambol avers that the allegations in paragraph 252 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of Countrywide's periodic SEC filings speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

253. Mr. Sambol avers that the allegations in paragraph 253 are vague and ambiguous and contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 253 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 253 references the allegations in paragraph 252, Mr. Sambol incorporates by reference his responses to the allegations in paragraph 252. To the extent the allegations require a further response, they are denied.

254. Mr. Sambol denies the allegations in paragraph 254.

255. Mr. Sambol avers that the contents of the documents referenced in paragraph 255 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

256. Mr. Sambol avers that the allegations in paragraph 256 are vague and

ambiguous and no response is required. Mr. Sambol avers, on information and belief, that Countrywide's disclosures regarding prepayment speeds are contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 256 incorporates the allegations in Section V.H.4, Mr. Sambol incorporates his responses to the paragraphs in that section. To the extent the allegations require a further response, they are denied.

257. Mr. Sambol denies the allegations in paragraph 257.

258. Mr. Sambol avers that the contents of the documents referenced in paragraph 258 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

259. Mr. Sambol avers that the contents of the documents referenced in paragraph 259 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

260. Mr. Sambol avers, on information and belief, that information regarding Countrywide's accounting policies related to R&Ws is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

261. Mr. Sambol denies the allegations in paragraph 261.

262. Mr. Sambol avers that the allegations in paragraph 262 contain interpretations of accounting principles and guidelines and legal conclusions as to which no response is required. Mr. Sambol avers, on information and belief, that information regarding Countrywide's accounting policies for R&Ws is contained, among other places, in its periodic SEC filings, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the

extent the allegations require a further response, they are denied.

263. Mr. Sambol avers that the allegations in paragraph 263 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 263 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

264. Mr. Sambol avers that the contents of the documents referenced in paragraph 264 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms.

265. Mr. Sambol avers that the allegations in paragraph 265 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 265 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 265, and therefore denies them.

266. Mr. Sambol avers that the allegations in paragraph 266 are vague and ambiguous and therefore no response is required. Mr. Sambol further avers, on information and belief, that information regarding Countrywide's allowances for representations and warranties is contained, among other places, in its periodic SEC filings, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

267. Mr. Sambol denies the allegations in paragraph 267.

268. Mr. Sambol denies the allegations in paragraph 268.

269. Mr. Sambol denies the allegations in paragraph 269.

270. Mr. Sambol denies the allegations in paragraph 270.

271. Mr. Sambol denies the allegations in paragraph 271.

272. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 272 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms.

273. Mr. Sambol avers that the contents of the document referenced in paragraph 273 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 273, and therefore denies them.

274. Mr. Sambol avers that the contents of the document referenced in paragraph 274 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 274, and therefore denies them.

275. Mr. Sambol avers that the contents of the document referenced in paragraph 275 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 275, and therefore denies them.

276. Mr. Sambol avers that the contents of the document referenced in paragraph 276 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 276, and therefore denies them.

277. Mr. Sambol avers that the allegations in paragraph 277 contain legal conclusions as to which no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 277 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 277, and therefore denies them.

278. Mr. Sambol avers that the allegations in paragraph 278 contain legal conclusions as to which no response is required. Mr. Sambol further avers that the contents of the document referenced in paragraph 278 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 278, and therefore denies them.

279. Mr. Sambol avers that the allegations in paragraph 279 contain legal conclusions as to which no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 279 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

280. Mr. Sambol avers that the allegations in paragraph 280 are vague and ambiguous and contain legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

281. Mr. Sambol avers that the SEC filings referenced in paragraph 281 speak for themselves, refers to the filings for their contents, and denies any

characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

282. Mr. Sambol avers that the SEC filings referenced in paragraph 282 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

283. Mr. Sambol denies the allegations in paragraph 283.

284. Mr. Sambol avers that the allegations in paragraph 284 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

285. Mr. Sambol avers that the allegations in paragraph 285 are vague and ambiguous, and therefore no response is required. To the extent the allegations require a further response, they are denied.

286. Mr. Sambol avers that the announcement and analyst statements referenced in paragraph 286 speak for themselves, refers to the announcement and analyst statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

287. Mr. Sambol avers that the allegations in paragraph 287 contain interpretations of accounting guidelines and principles and legal conclusions as to which no response is required. Mr. Sambol avers that the SEC filings referenced in paragraph 287 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

288. Mr. Sambol avers that information regarding Countrywide's capitalization is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further

response, they are denied.

289. Mr. Sambol avers that the announcement referenced in paragraph 289 speaks for itself, refers to the announcement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

290. Mr. Sambol avers that the allegations in paragraph 290 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

291. Mr. Sambol denies the allegations in paragraph 291.

292. Mr. Sambol denies the allegations in paragraph 292.

293. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-K with the SEC on March 12, 2004, and that Mr. Mozilo signed that document. Mr. Sambol further avers that the contents of the Form 10-K referenced in paragraph 293 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

294. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 294 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

295. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 295 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

296. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 296 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

297. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 297 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

298. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 21, 2004 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

299. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 299 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

300. Mr. Sambol denies the allegations in paragraph 300.

301. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K on April 21, 2004, and that Mr. Kurland signed that document. Mr. Sambol avers that the contents of the Form 8-K referenced in paragraph 301 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

302. Mr. Sambol admits, on information and belief, that Countrywide hosted a conference call on April 21, 2004. Mr. Sambol denies the remaining allegations in paragraph 302.

303. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 21, 2004 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

304. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 21, 2004 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

305. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 21, 2004 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

306. Mr. Sambol admits, on information and belief, that Mr. Kurland made various statements at an April 21, 2004 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

307. Mr. Sambol denies the allegations in paragraph 307.

308. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on May 7, 2004, and that Mr. Kurland signed that document. Mr. Sambol further avers that the contents of the Form 10-Q referenced in paragraph 308 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

309. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 309 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

310. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 310 speak for themselves, refers to the Form 10-Q for its contents,

and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

311. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 311 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

312. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 312 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

313. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 313 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

314. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q/A with the SEC on April 25, 2005, and that Mr. Sieracki signed that document. Mr. Sambol further avers that the contents of the Form 10-Q/A referenced in paragraph 314 speak for themselves, refers to the Form 10-Q/A for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

315. Mr. Sambol denies the allegations in paragraph 315.

316. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on July 26, 2004, attaching a press release announcing Countrywide's financial results for the second quarter of 2004, and that it was signed by Mr. Kurland. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 316 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

317. Mr. Sambol admits, on information and belief, that Mr. Mozilo participated in a conference call on July 22, 2004 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

318. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements on a July 22, 2004 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

319. Mr. Sambol denies the allegations in paragraph 319.

320. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 6, 2004 and that it was signed by Mr. Kurland. Mr. Sambol avers that the contents of the 10-Q referenced in paragraph 320 speak for themselves, refers to the 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

321. Mr. Sambol avers that the contents of the 10-Q referenced in paragraph 321 speak for themselves, refers to the 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

322. Mr. Sambol avers that the contents of the 10-Q referenced in paragraph 322 speak for themselves, refers to the 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

323. Mr. Sambol avers that the contents of the 10-Q referenced in paragraph 323 speak for themselves, refers to the 10-Q for its contents, and denies

any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

324. Mr. Sambol avers that the contents of the 10-Q referenced in paragraph 324 speak for themselves, refers to the 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

325. Mr. Sambol avers that the contents of the 10-Q referenced in paragraph 325 speak for themselves, refers to the 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

326. Mr. Sambol avers that the contents of the 10-Q referenced in paragraph 326 speak for themselves, refers to the 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

327. Mr. Sambol avers that the contents of the 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 327 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

328. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q/A with the SEC on May 16, 2005 and that it was signed by Mr. Sieracki, among others. Mr. Sambol avers that the contents of the Form 10-Q/A referenced in paragraph 328 speak for themselves, refers to the Form 10-Q/A for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

329. Mr. Sambol avers that the contents of the press release referenced in paragraph 329 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

330. Mr. Sambol denies the allegations in paragraph 330.

331. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on October 20, 2004, attaching a press release announcing Countrywide's financial results for the third quarter of 2004, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 331 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

332. Mr. Sambol avers that the contents of the press release referenced in paragraph 332 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

333. Mr. Sambol denies the allegations in paragraph 333.

334. Mr. Sambol admits, on information and belief, that Mr. Mozilo participated in a conference call on October 20, 2004 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

335. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements on an October 20, 2004 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

336. Mr. Sambol denies the allegations in paragraph 336.

337. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on November 8, 2004 and that it was signed by Mr. Kurland. Mr. Sambol avers that the contents of the Form 10-Q referenced in

paragraph 337 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

338. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 338 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

339. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 339 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

340. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 340 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

341. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 341 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

342. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 342 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

343. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 343 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

344. Mr. Sambol avers that the contents of the Form 10-Q and Sarbanes-

Oxley Act Certifications referenced in paragraph 344 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

345. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q/A with the SEC on May 16, 2005 and that it was signed by Mr. Sieracki, among others. Mr. Sambol avers that the contents of the Form 10-Q/A referenced in paragraph 345 speak for themselves, refers to the Form 10-Q/A for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

346. Mr. Sambol denies the allegations in paragraph 346.

347. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on February 2, 2005, attaching a press release announcing Countrywide's financial results for the fourth quarter of 2004, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 347 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

348. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Kurland participated in a conference call on February 2, 2005 and that they made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

349. Mr. Sambol denies the allegations in paragraph 349.

350. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-K with the SEC on March 15, 2005 and that it was signed by Messrs. Mozilo, Cisneros, Cunningham, Donato, Dougherty, Enis, Heller, Melone, Parry,

Russell, Robertson, and Snyder. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 350 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

351. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 351 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

352. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 352 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

353. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 353 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

354. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 354 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

355. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 355 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

356. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 356 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

357. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 357 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

358. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 358 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

359. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 359 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

360. Mr. Sambol admits KPMG issued a report dated March 11, 2005. Mr. Sambol avers that the contents of the report referenced in paragraph 360 speak for themselves, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 360, and therefore denies them.

361. Mr. Sambol avers that the contents of the Form 10-K and Sarbanes-Oxley Act Certifications referenced in paragraph 361 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 361, and therefore denies them.

362. Mr. Sambol denies the allegations in paragraph 362.

363. Mr. Sambol admits, on information and belief, that Mr. Mozilo made

various statements at a March 15, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

364. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a March 15, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

365. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a March 15, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

366. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a March 15, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

367. Mr. Sambol denies the allegations in paragraph 367.

368. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on April 26, 2005, attaching a press release announcing Countrywide's financial results for the first quarter of 2005, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 368 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

369. Mr. Sambol admits, on information and belief, that Messrs. Kurland,

Mozilo, and Sieracki participated in a conference call on April 26, 2005 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

370. Mr. Sambol admits, on information and belief, that Mr. Kurland made various statements on an April 26, 2005 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

371. Mr. Sambol denies the allegations in paragraph 371.

372. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on May 9, 2005 and that it was signed by Mr. Sieracki, among others. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 372 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

373. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 373 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

374. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 374 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

375. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 375 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations

require a further response, they are denied.

376. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 376 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

377. Mr. Sambol avers that the contents of the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 377 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

378. Mr. Sambol denies the allegations in paragraph 378.

379. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, Kurland, and McMurray participated in a conference on May 24, 2005 and that Mr. McMurray made various statements at the May 24, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

380. Mr. Sambol avers that the allegations in paragraph 380 are vague and ambiguous because they fail to identify the speaker allegedly representing Countrywide, and therefore no response is required. To the extent a response is required, Mr. Sambol avers that the alleged statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

381. Mr. Sambol admits, on information and belief, that he made various statements at a May 24, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require

a further response, they are denied.

382. Mr. Sambol denies the allegations in paragraph 382.

383. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a June 2, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

384. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a June 2, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

385. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a June 2, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

386. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a June 2, 2005 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

387. Mr. Sambol denies the allegations in paragraph 387.

388. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on July 26, 2005, attaching a press release announcing Countrywide's financial results for the second quarter of 2005, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 388 speak for themselves, refers to the

documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

389. Mr. Sambol admits, on information and belief, that Messrs. Kurland, Mozilo, and Sieracki participated in a conference call on July 26, 2005 and that Mr. Kurland made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

390. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements on a July 26, 2005 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

391. Mr. Sambol admits, on information and belief, that Messrs. Kurland and Mozilo made various statements on a July 26, 2005 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

392. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements on a July 26, 2005 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

393. Mr. Sambol admits, on information and belief, that Mr. Kurland made various statements on a July 26, 2005 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

394. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sieracki made various statements on a July 26, 2005 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

395. Mr. Sambol denies the allegations in paragraph 395.

396. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 8, 2005 and that it was signed by Mr. Sieracki, among others. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 396 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

397. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 397 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

398. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 398 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

399. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 399 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

400. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 400 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

401. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 401 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

402. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 402 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

403. Mr. Sambol avers that the contents of the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 403 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 403, and therefore denies them.

404. Mr. Sambol denies the allegations in paragraph 404.

405. Mr. Sambol admits, on information and belief, that Mr. Mozilo participated in a conference call on September 13, 2005 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

406. Mr. Sambol admits, on information and belief, that Mr. Mozilo participated in a conference call on September 13, 2005 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

407. Mr. Sambol denies the allegations in paragraph 407.

408. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on October 27, 2005, attaching a press release announcing Countrywide's financial results for the third quarter of 2005, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 408 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

409. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sieracki participated in a conference call on October 27, 2005 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

410. Mr. Sambol denies the allegations in paragraph 410.

411. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on November 8, 2005 and that it was signed by Mr. Sieracki, among others. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 411 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

412. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 412 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

413. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 413 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations

require a further response, they are denied.

414. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 414 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

415. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 415 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

416. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 416 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

417. Mr. Sambol avers that the contents of the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 417 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 417, and therefore denies them.

418. Mr. Sambol denies the allegations in paragraph 418.

419. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on January 31, 2006, attaching a press release announcing Countrywide's financial results for the fourth quarter and year ended December 31, 2005, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 419 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require

a further response, they are denied.

420. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sieracki participated in a conference call on January 31, 2006 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

421. Mr. Sambol denies the allegations in paragraph 421.

422. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-K with the SEC on March 1, 2006 and that it was signed by Messrs. Mozilo, Sieracki, Cisneros, Cunningham, Donato, Dougherty, Enis, Heller, Melone, Parry, Robertson, Russell, and Snyder, and Ms. Brown. Mr. Sambol avers that the contents of the 2005 Form 10-K referenced in paragraph 422 speak for themselves, refers to the 2005 Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

423. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 423 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

424. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 424 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

425. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 425 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

426. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 426 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

427. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 427 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

428. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 428 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

429. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 429 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

430. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 430 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

431. Mr. Sambol admits, on information and belief, that KPMG issued a report dated February 27, 2006. Mr. Sambol avers that the contents of the report referenced in paragraph 431 speak for themselves, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

432. Mr. Sambol avers that the contents of the Form 10-K and Sarbanes-Oxley Act Certifications referenced in paragraph 432 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent

with their terms. To the extent the allegations require a further response, they are denied.

433. Mr. Sambol denies the allegations in paragraph 433.

434. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a March 21, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

435. Mr. Sambol denies the allegations in paragraph 435.

436. Mr. Sambol admits, on information and belief, that Countrywide hosted an investor forum on March 30, 2006 and that Mr. Sambol made various statements at the investor forum. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

437. Mr. Sambol admits, on information and belief, that Countrywide hosted an investor forum on March 30, 2006 and that Mr. Garcia made various statements at the investor forum. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

438. Mr. Sambol denies the allegations in paragraph 438.

439. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on April 27, 2006, attaching a press release announcing Countrywide's financial results for the first quarter of 2006, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 439 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To

the extent the allegations require a further response, they are denied.

440. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sieracki participated in a conference call on April 27, 2006 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

441. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a conference call on April 27, 2006. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

442. Mr. Sambol denies the allegations in paragraph 442.

443. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on May 10, 2006 and that it was signed by Mr. Sieracki, among others. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 443 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

444. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 444 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

445. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 445 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

446. Mr. Sambol avers that the contents of the Form 10-Q referenced in

paragraph 446 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

447. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 447 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

448. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 448 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

449. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 449 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

450. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 450 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

451. Mr. Sambol avers that the contents of the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 451 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 451, and therefore denies them.

452. Mr. Sambol denies the allegations in paragraph 452.

453. Mr. Sambol admits, on information and belief, that Mr. Breitenbach

made various statements at a May 17, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

454. Mr. Sambol admits, on information and belief, that Mr. Breitenbach made various statements at a May 17, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

455. Mr. Sambol admits, on information and belief, that Mr. Breitenbach made various statements at a May 17, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

456. Mr. Sambol denies the allegations in paragraph 456.

457. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a May 31, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

458. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a May 31, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

459. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a May 31, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and

denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

460. Mr. Sambol denies the allegations in paragraph 460.

461. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on July 25, 2006, attaching a press release announcing Countrywide's financial results for the second quarter of 2006, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 461 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

462. Mr. Sambol admits, on information and belief, that Messrs. Mozilo and Sieracki participated in a conference call on July 25, 2006 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

463. Mr. Sambol denies the allegations in paragraph 463.

464. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on August 7, 2006 and that it was signed by Mr. Sieracki, among others. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 464 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

465. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 465 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

466. Mr. Sambol avers that the contents of the Form 10-Q referenced in

paragraph 466 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

467. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 467 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

468. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 468 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

469. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 469 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

470. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 470 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

471. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 471 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

472. Mr. Sambol avers that the contents of the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 472 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as

to the truth of the remaining allegations in paragraph 472, and therefore denies them.

473. Mr. Sambol denies the allegations in paragraph 473.

474. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki participated in a conference on September 12, 2006 and that Mr. Furash made various statements at that conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

475. Mr. Sambol admits, on information and belief, that Mr. Furash made various statements at a September 12, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

476. Mr. Sambol denies the allegations in paragraph 476.

477. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki participated in a conference on September 13, 2006 and that Mr. Mozilo made various statements at that conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

478. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a September 13, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

479. Mr. Sambol admits, on information and belief, that he made various statements at a September 13, 2006 conference. Mr. Sambol avers that the

statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

480. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a September 13, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

481. Mr. Sambol admits, on information and belief, that Mr. Furash made various statements at a September 13, 2006 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

482. Mr. Sambol denies the allegations in paragraph 482.

483. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on October 24, 2006, attaching a press release announcing Countrywide's financial results for the third quarter of 2006, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 483 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

484. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki participated in a conference call on October 24, 2006 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

485. Mr. Sambol denies the allegations in paragraph 485.

486. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on November 7, 2006 and that it was signed by Messrs. Sambol and Sieracki. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 486 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

487. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 487 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

488. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 488 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

489. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 489 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

490. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 490 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

491. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 491 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

492. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 492 speak for themselves, refers to the Form 10-Q for its contents, and

denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

493. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 493 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

494. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 494 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

495. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 495 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

496. Mr. Sambol avers that the contents of the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 496 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 496, and therefore denies them.

497. Mr. Sambol denies the allegations in paragraph 497.

498. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on January 30, 2007, attaching a press release, and that it was signed by Ms. Milleman. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 498 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

499. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki participated in a conference call on January 30, 2007 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

500. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a conference call on January 30, 2007. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

501. Mr. Sambol denies the allegations in paragraph 501.

502. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 502 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

503. Mr. Sambol admits, on information and belief, that Countrywide filed its 2006 Form 10-K with the SEC on March 1, 2007 and that it was signed by Messrs. Mozilo, Sieracki, Cisneros, Cunningham, Donato, Dougherty, Melone, Parry, Russell, Robertson, and Snyder, and Ms. Brown. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 503 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

504. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 504 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

505. Mr. Sambol avers that the contents of the Form 10-K referenced in

paragraph 505 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

506. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 506 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

507. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 507 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

508. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 508 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

509. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 509 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

510. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 510 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

511. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 511 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

512. Mr. Sambol avers that the contents of the Form 10-K referenced in

paragraph 512 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

513. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 513 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

514. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 514 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

515. Mr. Sambol admits, on information and belief, that KPMG issued a report dated February 28, 2007. Mr. Sambol avers that the contents of the report referenced in paragraph 515 speak for themselves, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

516. Mr. Sambol avers that the contents of the Form 10-K and Sarbanes-Oxley Act Certifications referenced in paragraph 516 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 516, and therefore denies them.

517. Mr. Sambol denies the allegations in paragraph 517.

518. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a March 6, 2007 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in the second sentence of paragraph 518, and therefore denies them. To the extent the allegations require a further response, they are denied.

519. Mr. Sambol admits, on information and belief, that Mr. Sieracki made various statements at a March 6, 2007 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

520. Mr. Sambol denies the allegations in paragraph 520.

521. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements during a March 13, 2007 interview. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

522. Mr. Sambol denies the allegations in paragraph 522.

523. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 8-K with the SEC on April 26, 2007 attaching a press release announcing Countrywide's financial results for the first quarter of 2007. Mr. Sambol avers that the contents of the Form 8-K and press release referenced in paragraph 523 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

524. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki participated in a conference call on April 26, 2007 and that Mr. Mozilo made various statements on that conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

525. Mr. Sambol admits, on information and belief, that he made various

statements at an April 26, 2007 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

526. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at an April 26, 2007 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

527. Mr. Sambol denies the allegations in paragraph 527, except that Mr. Sambol admits, upon information and belief, that he made various statements during an April 26, 2007 conference call. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms.

528. Mr. Sambol denies the allegations in paragraph 528.

529. Mr. Sambol admits, on information and belief, that Ms. Sandefur made various statements at an April 26, 2007 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

530. Mr. Sambol admits, on information and belief, that Ms. Sandefur made various statements at an April 26, 2007 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

531. Mr. Sambol admits, on information and belief, that Ms. Sandefur made various statements at an April 26, 2007 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and

denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

532. Mr. Sambol admits, on information and belief, that Ms. Sandefur made various statements at an April 26, 2007 conference. Mr. Sambol avers that the statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

533. Mr. Sambol denies the allegations in paragraph 533.

534. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on May 9, 2007 and that it was signed by Messrs. Sambol and Sieracki. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 534 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

535. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 535 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

536. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 536 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

537. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 537 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

538. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 538 speak for themselves, refers to the Form 10-Q for its contents, and

denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

539. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 539 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

540. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 540 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

541. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 541 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

542. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 542 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

543. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 543 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

544. Mr. Sambol avers that the contents of the Form 10-Q and Sarbanes-Oxley Act Certifications referenced in paragraph 544 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

545. Mr. Sambol denies the allegations in paragraph 545.

546. Mr. Sambol admits, on information and belief, that Countrywide filed a registration statement with the SEC on February 9, 2006. Mr. Sambol further avers that the contents of the registration statement referenced in paragraph 546 speak for themselves, refers to the registration statement for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol admits that the last two sentences of paragraph 546 purport to define certain terms for the purposes of the complaint. To the extent the allegations require a further response, they are denied.

547. Mr. Sambol admits, on information and belief, that Countrywide filed a prospectus supplement on February 15, 2006. Mr. Sambol further admits, on information and belief, that Countrywide filed a registration statement with the SEC on February 9, 2006, and that Messrs. Mozilo, Sieracki, Cisneros, Cunningham, Donato, Dougherty, Enis, Heller, Melone, Parry, Robertson, Russell, and Snyder, and Ms. Brown, signed that document on behalf of CFC and that Messrs. Kurland, Sambol, Sieracki, Garcia, and Mozilo signed that document on behalf of CHL. Mr. Sambol avers that the SEC filings referenced in paragraph 547 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

548. Mr. Sambol avers that the registration statement referenced in paragraph 548 speaks for itself, refers to the statement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

549. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 549 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

550. Mr. Sambol avers that the registration statement referenced in paragraph 550 speaks for itself, refers to the statement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

551. Mr. Sambol denies the allegations in paragraph 551.

552. Mr. Sambol admits, on information and belief, that Countrywide filed a prospectus supplement on May 15, 2006. Mr. Sambol further admits, on information and belief, that Countrywide filed a registration statement with the SEC on February 9, 2006, and that Messrs. Mozilo, Sieracki, Cisneros, Cunningham, Donato, Dougherty, Enis, Heller, Melone, Parry, Robertson, Russell, and Snyder, and Ms. Brown, signed that document on behalf of CFC and that Messrs. Kurland, Sambol, Sieracki, Garcia, and Mozilo signed that document on behalf of CHL. Mr. Sambol avers that the SEC filings referenced in paragraph 552 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

553. Mr. Sambol avers that the registration statement referenced in paragraph 553 speaks for itself, refers to the statement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

554. Mr. Sambol avers, on information and belief, that the underwriters for the securities referenced in paragraph 554 are listed in the offering documents for the securities, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

555. Mr. Sambol avers that the registration statement referenced in paragraph 555 speaks for itself, refers to the statement for its contents, and denies any characterization inconsistent with its terms. To the extent the

allegations require a further response, they are denied.

556. Mr. Sambol denies the allegations in paragraph 556.

557. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 16, 2007. Mr. Sambol avers that the contents of the press release referenced in paragraph 557 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the remaining allegations require a further response, they are denied.

558. Mr. Sambol avers that the analyst statement referenced in paragraph 558 speaks for itself, refers to the statement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 558, and therefore denies them.

559. Mr. Sambol avers that the analyst statement referenced in paragraph 559 speaks for itself, refers to the statement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 559, and therefore denies them.

560. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. Mr. Sambol avers that the remaining allegations in paragraph 560 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

561. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on July 24, 2007, and that this press release quoted Mr. Mozilo. Mr. Sambol avers that the contents of the press release referenced in paragraph 561 speak for themselves, refers to the press release for its contents, and

denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

562. Mr. Sambol avers that the contents of the press release referenced in paragraph 562 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

563. Mr. Sambol denies the allegations in paragraph 563.

564. Mr. Sambol avers that the statements referenced in paragraph 564 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

565. Mr. Sambol avers that the statements referenced in paragraph 565 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

566. Mr. Sambol avers that the statements referenced in paragraph 566 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

567. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki made various statements at a July 24, 2007 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

568. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a July 24, 2007 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their

contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

569. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements at a July 24, 2007 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 569, and therefore denies them.

570. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

571. Mr. Sambol denies the allegations in paragraph 571.

572. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on August 2, 2007, and that this press release quoted Mr. Sieracki. Mr. Sambol avers that the contents of the press release referenced in paragraph 572 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

573. Mr. Sambol avers that the contents of the press release referenced in paragraph 573 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent paragraph 573 incorporates the allegations in Section V.H of the Amended Complaint, Mr. Sambol incorporates his responses to the paragraphs in that section. To the extent the allegations require a further response, they are denied.

574. Mr. Sambol denies the allegations in paragraph 574.

575. Mr. Sambol admits, on information and belief, that Countrywide filed

a Form 10-Q with the SEC on August 9, 2007. Mr. Sambol further avers that the contents of the Form 10-Q referenced in paragraph 575 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

576. Mr. Sambol avers that Countrywide's stock price is a matter of public record, and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

577. Mr. Sambol admits, on information and belief, that Messrs. Sambol and Sieracki signed Countrywide's Form 10-Q for the second quarter of 2007. Mr. Sambol avers that the Form 10-Q referenced in paragraph 577 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

578. Mr. Sambol avers that the Form 10-Q referenced in paragraph 578 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

579. Mr. Sambol avers that the Form 10-Q referenced in paragraph 579 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

580. Mr. Sambol avers that the Form 10-Q referenced in paragraph 580 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

581. Mr. Sambol avers that the Form 10-Q referenced in paragraph 581 speaks for itself, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations

require a further response, they are denied.

582. Mr. Sambol denies the allegations in paragraph 582.

583. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on August 14, 2007. Mr. Sambol avers that the contents of the press release referenced in paragraph 583 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

584. Mr. Sambol avers that the FCIC report referenced in paragraph 584 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

585. Mr. Sambol avers that the *Los Angeles Times* article referenced in paragraph 585 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

586. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

587. Mr. Sambol denies the allegations in paragraph 587.

588. Mr. Sambol avers that the FCIC report referenced in paragraph 588 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

589. Mr. Sambol avers that the FCIC report and *Wall Street Journal* article referenced in paragraph 589 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are

denied.

590. Mr. Sambol denies the allegations in paragraph 590.

591. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

592. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on August 16, 2007. Mr. Sambol avers that the contents of the press release referenced in paragraph 592 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

593. Mr. Sambol avers that the credit rating of Countrywide securities is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

594. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

595. Mr. Sambol denies the allegations in paragraph 595.

596. Mr. Sambol avers that the Bank of America announcement, news reports, and *Wall Street Journal* article referenced in paragraph 596 speak for themselves, refers to the documents for their contents, and denies any characterizations inconsistent with their terms. To the extent the allegations require a further response, they are denied.

597. Mr. Sambol admits, on information and belief, that Mr. Mozilo made various statements during an August 23, 2007 interview with CNBC reporter Maria Bartiromo. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations

require a further response, they are denied.

598. Mr. Sambol denies the allegations in paragraph 598.

599. Mr. Sambol avers that the press release referenced in paragraph 599 speaks for itself, refers to the release for its contents and denies any characterization inconsistent with its terms. Mr. Sambol avers that Countrywide's stock price is a matter of public record, and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 599, and therefore denies them.

600. Mr. Sambol denies the allegations in paragraph 600.

601. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on September 7, 2007. Mr. Sambol avers that the contents of the press release referenced in paragraph 601 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

602. Mr. Sambol denies the allegations in paragraph 602.

603. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

604. Mr. Sambol avers that the *New York Post* article referenced in paragraph 604 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

605. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

606. Mr. Sambol avers that the *Wall Street Journal* article referenced in

paragraph 606 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

607. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 607 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

608. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 608 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

609. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 609 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

610. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 610 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

611. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

612. Mr. Sambol denies the allegations in paragraph 612.

613. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on October 26, 2007. Mr. Sambol avers that the contents of the press release referenced in paragraph 613 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are

denied.

614. Mr. Sambol avers that the contents of the press release and statements referenced in paragraph 614 speak for themselves, refers to the press release and statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

615. Mr. Sambol admits, on information and belief, that Messrs. Mozilo, Sambol, and Sieracki made various statements at an October 26, 2007 conference call. Mr. Sambol avers that those statements speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

616. Mr. Sambol denies the allegations in paragraph 616.

617. Mr. Sambol denies the allegations in paragraph 617.

618. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 618 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

619. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 619 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

620. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

621. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 621 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a

further response, they are denied.

622. Mr. Sambol avers that the report referenced in paragraph 622 speaks for itself, refers to the report for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

623. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

624. Mr. Sambol admits, on information and belief, that Countrywide filed a Form 10-Q with the SEC on November 9, 2007, and that Messrs. Sambol and Sieracki signed that document. Mr. Sambol further avers that the contents of the Form 10-Q referenced in paragraph 624 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

625. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 625 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

626. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 626 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

627. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 627 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

628. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 628 speak for themselves, refers to the Form 10-Q for its contents, and

denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

629. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 629 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

630. Mr. Sambol avers that the contents of the Form 10-Q referenced in paragraph 630 speak for themselves, refers to the Form 10-Q for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

631. Mr. Sambol denies the allegations in paragraph 631.

632. Mr. Sambol avers that the Moody's announcement referenced in paragraph 632 speaks for itself, refers to the announcement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

633. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

634. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 634 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

635. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 635 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

636. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 636 speaks for itself, refers to the article for its contents, and denies

any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

637. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 637 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

638. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

639. Mr. Sambol denies the allegations in paragraph 639.

640. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on December 13, 2007. Mr. Sambol avers that the contents of the press release referenced in paragraph 640 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

641. Mr. Sambol avers that the *New York Times* article referenced in paragraph 641 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

642. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

643. Mr. Sambol avers that the *New York Times* article referenced in paragraph 643 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

644. Mr. Sambol denies the allegations in paragraph 644.

645. Mr. Sambol avers that Countrywide's stock price is a matter of public

record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

646. Mr. Sambol avers that the Reuters article referenced in paragraph 646 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

647. Mr. Sambol admits, on information and belief, that Countrywide issued a press release on January 9, 2008. Mr. Sambol avers that the contents of the press release referenced in paragraph 647 speak for themselves, refers to the press release for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

648. Mr. Sambol avers that the Reuters article referenced in paragraph 648 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

649. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

650. Mr. Sambol avers that the Bank of America announcement referenced in paragraph 650 speaks for itself, refers to the announcement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

651. Mr. Sambol avers that the Bank of America announcement referenced in paragraph 651 speaks for itself, refers to the announcement for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

652. Mr. Sambol denies the allegations in paragraph 652.

653. Mr. Sambol avers that Countrywide's stock price is a matter of public

record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

654. Mr. Sambol avers that the Bloomberg article referenced in paragraph 654 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent paragraph 654 incorporates the allegations in Section V.D of the Amended Complaint, Mr. Sambol incorporates his responses to the paragraphs in that section. To the extent the allegations require a further response, they are denied.

655. Mr. Sambol avers that the *Chicago Sun-Times* article referenced in paragraph 655 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

656. Mr. Sambol denies the allegations in paragraph 656.

657. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

658. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 658 speaks for itself, refers to the article for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

659. Mr. Sambol denies the allegations in paragraph 659.

660. Mr. Sambol avers that Countrywide's stock price is a matter of public record and denies any characterization inconsistent with the public record. To the extent the allegations require a further response, they are denied.

661. Mr. Sambol denies the allegations in paragraph 661.

662. Mr. Sambol avers that information regarding Countrywide's business and earnings figures is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent

with their terms. To the extent the allegations require a further response, they are denied.

663. Mr. Sambol avers that the allegations in paragraph 663 are vague and ambiguous, and therefore no response is required. To the extent the allegations require a further response, Mr. Sambol denies the allegations in paragraph 663 as they relate to him, and avers that no response is required for the allegations directed to the other defendants.

664. Mr. Sambol admits, on information and belief, that he and Mr. Sieracki were members of the Countrywide Credit Risk Committee at various points in time. Mr. Sambol avers that the complaint referenced in paragraph 664 speaks for itself, refers to the complaint for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 664, and therefore denies them.

665. Mr. Sambol avers that the Form 10-K reports referenced in paragraph 665 speak for themselves, refers to the reports for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

666. Mr. Sambol avers that the Form 10-K reports referenced in paragraph 666 speak for themselves, refers to the reports for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

667. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 667 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

668. Mr. Sambol avers that paragraph 668 is vague and ambiguous because it fails to identify the source of the alleged statements, and therefore no

response is required. To the extent the allegations in paragraph 668 require a further response, Mr. Sambol denies the allegations as they relate to him and avers that no response is required for the allegations directed to the other defendants.

669. Mr. Sambol avers that the statements referenced in paragraph 669 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

670. Mr. Sambol avers that the statements referenced in paragraph 670 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

671. Mr. Sambol avers that the statements referenced in paragraph 671 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

672. Mr. Sambol denies the allegations in the first sentence of paragraph 672, and avers that he is without sufficient knowledge or information to form a belief as to whether the purported confidential witnesses referenced in paragraph 672 provided the allegations in that paragraph, and therefore denies them. As to the underlying allegations in paragraph 672, they are denied.

673. Mr. Sambol avers that the e-mail referenced in paragraph 673 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 673, and therefore denies them.

674. Mr. Sambol avers that the documents referenced in paragraph 674 speak for themselves, refers to the documents for their contents, and denies any

characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

675. Mr. Sambol avers that the e-mail referenced in paragraph 675 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

676. Mr. Sambol denies the allegations in paragraph 676.

677. Mr. Sambol avers that the contents of the minutes referenced in paragraph 677 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

678. Mr. Sambol avers that the e-mails referenced in paragraph 678 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

679. Mr. Sambol avers that the allegations in paragraph 679 are vague and ambiguous and therefore no response is required. Mr. Sambol further avers that the e-mails referenced in paragraph 679 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 679 incorporates the allegations in Section VI of the Amended Complaint, Mr. Sambol incorporates his responses to the paragraphs in that section. To the extent the allegations require a further response, they are denied.

680. Mr. Sambol avers that the statements and e-mails referenced in paragraph 680 speak for themselves, refers to the statements and e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

681. Mr. Sambol avers that the e-mails referenced in paragraph 681

speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

682. Mr. Sambol avers that the complaint and e-mail referenced in paragraph 682 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

683. Mr. Sambol avers that the complaint and report referenced in paragraph 683 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

684. Mr. Sambol avers that the complaint and e-mail referenced in paragraph 684 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

685. Mr. Sambol avers that the report and e-mail referenced in paragraph 685 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

686. Mr. Sambol avers that the e-mails referenced in paragraph 686 speak for themselves, refers to the e-mails for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

687. Mr. Sambol avers that information regarding Countrywide's Pay Option ARM originations and LHI is contained, among other places, in its periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol avers that the e-mail referenced in paragraph 687 speaks for itself, refers to the e-mail for its contents,

and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

688. Mr. Sambol avers that the allegations in paragraph 688 are vague and ambiguous and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 688 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

689. Mr. Sambol avers that the allegations in paragraph 689 are vague and ambiguous and therefore no response is required. Mr. Sambol further avers that the documents referenced in paragraph 689 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

690. Mr. Sambol avers that the e-mail referenced in paragraph 690 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

691. Mr. Sambol avers that the contents of the e-mail referenced in paragraph 691 speak for themselves, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

692. Mr. Sambol avers that the complaint and memorandum referenced in paragraph 692 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

693. Mr. Sambol denies the allegations in paragraph 693.

694. Mr. Sambol avers that the testimony referenced in paragraph 694

speaks for itself, refers to the testimony for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, they are denied.

695. Mr. Sambol avers that the e-mail and report referenced in paragraph 695 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

696. Mr. Sambol avers that the allegations in paragraph 696 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that the complaint and committee materials referenced in paragraph 696 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

697. Mr. Sambol avers that the allegations in paragraph 697 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that the complaint and e-mail referenced in paragraph 697 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

698. Mr. Sambol avers that the report and e-mails referenced in paragraph 698 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

699. Mr. Sambol avers that the report and e-mail referenced in paragraph 699 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

700. Mr. Sambol avers that the complaint and e-mail referenced in

paragraph 700 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

701. Mr. Sambol avers that the documents referenced in paragraph 701 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

702. Mr. Sambol avers that the e-mail referenced in paragraph 702 speaks for itself, refers to the e-mail for its contents, and denies any characterization inconsistent with its terms. Mr. Sambol avers that he is without sufficient knowledge or information to form a belief as to whether the purported confidential witnesses referenced in paragraph 702 provided the remaining allegations in that paragraph, and therefore denies them. As to the remaining underlying allegations in paragraph 702, they are denied.

703. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 703, and therefore denies them.

704. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 704, and therefore denies them.

705. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 705, and therefore denies them.

706. Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 706, and therefore denies them.

707. Mr. Sambol avers that the *Wall Street Journal* article referenced in paragraph 707 speaks for itself, refers to the article for its contents, and denies

any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol denies the third and last sentences in paragraph 707 and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 707, and therefore denies them.

708. Mr. Sambol avers that the statements referenced in paragraph 708 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

709. Mr. Sambol avers that the allegations in paragraph 709 are vague and ambiguous and therefore no response is required. Mr. Sambol avers that the contents of the SEC filings referenced in paragraph 709 speak for themselves, refers to the SEC filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

710. Mr. Sambol avers that the contents of the SEC filings referenced in paragraph 710 speak for themselves, refers to the filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

711. Mr. Sambol avers that the allegations in paragraph 711 contain interpretations of accounting guidelines and legal conclusions and are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

712. Mr. Sambol avers that the allegations in paragraph 712 are vague and ambiguous and therefore no response is required. Mr. Sambol further avers that information regarding delinquencies and negative amortization is contained, among other places, in Countrywide's periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the

extent the allegations require a further response, they are denied.

713. Mr. Sambol avers that the statements referenced in paragraph 713 speak for themselves, refers to the statements for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 713, and therefore denies them.

714. Mr. Sambol avers that the contents of the SEC filings referenced in paragraph 714 speak for themselves, refers to the SEC filings for their contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers that the allegations in paragraph 714 contain interpretations of accounting guidelines and legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

715. Mr. Sambol avers that the document referenced in paragraph 715 speaks for itself, refers to the document for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 715, and therefore denies them.

716. Mr. Sambol avers that the allegations in paragraph 716 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

717. Mr. Sambol avers that the allegations in paragraph 717 are vague and ambiguous and therefore no response is required. To the extent the allegations require a further response, they are denied.

718. Mr. Sambol avers that the contents of the Form 10-K referenced in paragraph 718 speak for themselves, refers to the Form 10-K for its contents, and denies any characterization inconsistent with its terms. To the extent the allegations

require a further response, they are denied.

719. Mr. Sambol avers that the contents of the Sarbanes-Oxley Act certifications referenced in paragraph 719 speak for themselves, refers to the certifications for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

720. Mr. Sambol avers that the allegations in paragraph 720 are not directed to him, and therefore no response from Mr. Sambol is required. To the extent the allegations require a further response, they are denied.

721. Mr. Sambol avers, on information and belief, that information regarding his trading of Countrywide stock is contained, among other places, in periodic SEC filings, refers to those filings for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol denies the allegations as they relate to him and avers that no response is required to the allegations that relate to other defendants.

722. Mr. Sambol denies the allegations in paragraph 722 as they relate to him and avers that no response from Mr. Sambol is required to the allegations that are directed to the other defendants.

723. Mr. Sambol avers that the allegations in paragraph 723 are not directed to him and therefore no response from Mr. Sambol is required. To the extent a response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 723, and therefore denies them.

724. Mr. Sambol avers that the allegations in paragraph 724 are not directed to him and therefore no response from Mr. Sambol is required. To the extent a response is required, Mr. Sambol avers that the contents of the article referenced in paragraph 724 speak for themselves, refers to the article for its contents, and denies any characterization inconsistent with their terms. Mr. Sambol further avers that he

lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 724, and therefore denies them.

725. Mr. Sambol avers, on information and belief, that information regarding disgorgement and penalty payments to the SEC related to its case against Messrs. Mozilo and Sambol is contained, among other places, in their publicly filed settlement papers in that action, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

726. Mr. Sambol avers that the allegations in paragraph 726 are not directed to him and therefore no response from Mr. Sambol is required. To the extent paragraph 726 incorporates the allegations in Section V.H, Mr. Sambol incorporates his responses to the paragraphs in that section. To the extent the allegations require a further response, they are denied.

727. Mr. Sambol avers that the allegations in paragraph 727 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent a response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 727, and therefore denies them.

728. Mr. Sambol avers that the allegations in paragraph 728 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent a response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 728, and therefore denies them.

729. Mr. Sambol avers that the allegations in paragraph 729 contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the

documents referenced in paragraph 729 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 729, and therefore denies them.

730. Mr. Sambol avers that the allegations in paragraph 730 contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 730 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 730, and therefore denies them.

731. Mr. Sambol avers that the allegations in paragraph 731 contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 731 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 731, and therefore denies them.

732. Mr. Sambol avers that the allegations in paragraph 732 contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 732 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the

allegations in paragraph 732, and therefore denies them.

733. Mr. Sambol avers that the allegations in paragraph 733 contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 733 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 733, and therefore denies them.

734. Mr. Sambol avers that the allegations in paragraph 734 contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 734 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 734, and therefore denies them.

735. Mr. Sambol avers that the allegations in paragraph 735 are not directed to him and therefore no response from Mr. Sambol is required. To the extent the allegations require a response, they are denied.

736. Mr. Sambol avers that the allegations in paragraph 736 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 736 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

737. Mr. Sambol avers that the allegations in paragraph 737 are not directed

to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 737 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 737, and therefore denies them.

738. Mr. Sambol avers that the allegations in paragraph 738 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 738 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

739. Mr. Sambol avers that the allegations in paragraph 739 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 739 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

740. Mr. Sambol avers that the allegations in paragraph 740 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 740 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as

to the truth of the allegations in paragraph 740, and therefore denies them.

741. Mr. Sambol avers that the allegations in paragraph 741 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions, and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 741 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 741, and therefore denies them.

742. Mr. Sambol avers that the allegations in paragraph 742 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 742 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 742, and therefore denies them.

743. Mr. Sambol avers that the allegations in paragraph 743 are not directed to him and contain interpretations of accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the referenced documents speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations in paragraph 743 require a further response, they are denied.

744. Mr. Sambol avers that the allegations in paragraph 744 are not directed to him and contain interpretations of accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 744 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their

terms. To the extent the allegations require a further response, they are denied.

745. Mr. Sambol avers that the allegations in paragraph 745 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

746. Mr. Sambol avers that the allegations in paragraph 746 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the referenced documents speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidance or that Countrywide's models were unreliable and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 746, and therefore denies them.

747. Mr. Sambol avers that the allegations in paragraph 747 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the referenced documents speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 747 incorporates the allegations in Section V.H.4, Mr. Sambol incorporates his responses to the paragraphs in that section. To the extent the allegations require a further response, they are denied.

748. Mr. Sambol avers that the allegations in paragraph 748 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

749. Mr. Sambol avers that the allegations in paragraph 749 are not directed

to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 749 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidelines or that its origination practices were improper or reckless, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 749, and therefore denies them.

750. Mr. Sambol avers that the allegations in paragraph 750 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol denies any allegation that Countrywide's financial statements were inconsistent with applicable accounting guidance or that its origination practices were improper or reckless, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 750, and therefore denies them.

751. Mr. Sambol avers that the allegations in paragraph 751 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 751 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 751, and therefore denies them.

752. Mr. Sambol avers that the allegations in paragraph 752 are not directed to him and contain interpretations of audit and accounting guidelines and legal

conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 752 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

753. Mr. Sambol avers that the allegations in paragraph 753 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 753 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

754. Mr. Sambol avers that the allegations in paragraph 754 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 754 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

755. Mr. Sambol avers that the allegations in paragraph 755 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 755 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

756. Mr. Sambol avers that the allegations in paragraph 756 are not directed to him and contain interpretations of audit and accounting guidelines and legal

conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

757. Mr. Sambol avers that the allegations in paragraph 757 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 757 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

758. Mr. Sambol avers that the allegations in paragraph 758 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent paragraph 758 incorporates the allegations in Section V.H.3.b, Mr. Sambol incorporates his responses to the paragraphs in that section. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's origination practices were improper or reckless, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 758, and therefore denies them.

759. Mr. Sambol avers that the allegations in paragraph 759 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 759 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol denies the allegations that Countrywide misclassified its loan production, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 759, and therefore denies them.

760. Mr. Sambol avers that the allegations in paragraph 760 are not directed

to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the referenced documents speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 760, and therefore denies them.

761. Mr. Sambol avers that the allegations in paragraph 761 are not directed to him and contain interpretations of accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

762. Mr. Sambol avers that the allegations in paragraph 762 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

763. Mr. Sambol avers that the allegations in paragraph 763 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 763 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

764. Mr. Sambol avers that the allegations in paragraph 764 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

765. Mr. Sambol avers that the allegations in paragraph 765 are not directed to him and contain interpretations of accounting guidelines and legal conclusions

and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 765 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

766. Mr. Sambol avers that the allegations in paragraph 766 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 766 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

767. Mr. Sambol avers that the allegations in paragraph 767 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

768. Mr. Sambol avers that the allegations in paragraph 768 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 768 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 768, and therefore denies them.

769. Mr. Sambol avers that the allegations in paragraph 769 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 769 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent

with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 769, and therefore denies them.

770. Mr. Sambol avers that the allegations in paragraph 770 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent a response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 770, and therefore denies them.

771. Mr. Sambol avers that the allegations in paragraph 771 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 771 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

772. Mr. Sambol avers that the allegations in paragraph 772 are not directed to him and contain interpretations of accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol avers that the contents of the documents referenced in paragraph 772 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 772, and therefore denies them.

773. Mr. Sambol avers that the allegations in paragraph 773 are not directed to him and contain interpretations of accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 773 speak for themselves, refers to the

documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 773, and therefore denies them.

774. Mr. Sambol avers that the allegations in paragraph 774 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 774 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 774, and therefore denies them.

775. Mr. Sambol avers that the allegations in paragraph 775 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 775 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent paragraph 775 incorporates the allegations in previous paragraphs of the Amended Complaint or Section V.H.3.a, Mr. Sambol incorporates his responses to those paragraphs. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 775, and therefore denies them.

776. Mr. Sambol avers that the allegations in paragraph 776 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 776 speak for themselves, refers to the documents for their contents, and denies any characterization

inconsistent with their terms. To the extent the allegations require a further response, they are denied.

777. Mr. Sambol avers that the allegations in paragraph 777 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

778. Mr. Sambol avers that the allegations in paragraph 778 are not directed to him and contain interpretations of audit and accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 778 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

779. Mr. Sambol avers that the allegations in paragraph 779 are not directed to him and contain interpretations of accounting guidelines and legal conclusions and therefore no response is required. Mr. Sambol further avers that the contents of the documents referenced in paragraph 779 speak for themselves, refers to the documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

780. Mr. Sambol avers that the allegations in paragraph 780 are not directed to him and contain interpretations of accounting guidelines and legal conclusions and therefore no response is required. To the extent the allegations require a further response, they are denied.

781. Mr. Sambol avers that the allegations in paragraph 781 are not directed to him and contain legal conclusions and therefore no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 781, and therefore denies them.

782. Mr. Sambol avers that the allegations in paragraph 782 are not directed to him and contain legal conclusion, and therefore no response is required. To the extent the allegations require a further response, they are denied.

783. Mr. Sambol avers that the allegations in paragraph 783 are not directed to him and contain legal conclusions and therefore no response is required. To the extent a further response is required, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 783 , and therefore denies them.

784. Mr. Sambol avers that the allegations in paragraph 784 are not directed to him and contain legal conclusions, and therefore no response is required. Mr. Sambol avers that information regarding Countrywide's financial statements and loan production and performance is disclosed, among other places, in its periodic SEC filings, which speak for themselves, refers to those documents for their contents, and denies any characterization inconsistent with their terms. To the extent a further response is required, Mr. Sambol denies any allegation that Countrywide's financial statements did not conform with applicable accounting guidance, and avers that he lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 784, and therefore denies them.

785. Mr. Sambol denies the allegations in paragraph 785.

786. Mr. Sambol denies the allegations in paragraph 786.

787. Mr. Sambol denies the allegations in paragraph 787. To the extent paragraph 787 incorporates the allegations in Section VIII of the Amended Complaint, Mr. Sambol incorporates his responses to the paragraphs in that section.

788. Mr. Sambol denies the allegations in paragraph 788.

789. Mr. Sambol avers that the allegations in paragraph 789 are vague and ambiguous and contain legal conclusions as to which no response is required. Mr. Sambol further avers that the Countrywide public disclosures and

other documents referenced in paragraph 789 speak for themselves, refers to the disclosures and other documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, they are denied.

790. Mr. Sambol denies the third sentence of paragraph 790. Mr. Sambol avers that the contents of Countrywide's disclosures and other documents referenced in paragraph 790 speak for themselves, refers to the disclosures and other documents for their contents, and denies any characterization inconsistent with their terms. To the extent the allegations require a further response, Mr. Sambol avers that he lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 790, and therefore denies them.

791. Mr. Sambol avers that the allegations in paragraph 791 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

792. Mr. Sambol avers that the allegations in paragraph 792 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

793. Mr. Sambol denies the allegations in paragraph 793.

794. Mr. Sambol avers that the allegations in paragraph 794 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

795. Mr. Sambol incorporates by reference his responses to each and every allegation above as if fully set forth herein. Mr. Sambol avers that the allegations in paragraph 795 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

796. Mr. Sambol avers that the allegations in paragraph 796 contain legal conclusions and characterizations of the Amended Complaint, as to which

no response is required. To the extent the allegations require a further response, they are denied.

797. Mr. Sambol denies the allegations in paragraph 797.

798. Mr. Sambol avers that the allegations in paragraph 798 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

799. Mr. Sambol avers that the allegations in paragraph 799 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

800. Mr. Sambol avers that the allegations in paragraph 800 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

801. Mr. Sambol avers that the allegations in paragraph 801 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

802. Mr. Sambol avers that the allegations in paragraph 802 are not directed to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

803. Mr. Sambol avers that the allegations in paragraph 803 are not directed to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

804. Mr. Sambol avers that the allegations in paragraph 804 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

805. Mr. Sambol avers that the allegations in paragraph 805 contain legal conclusions as to which no response is required. To the extent the

allegations require a further response, they are denied.

806. Mr. Sambol avers that the allegations in paragraph 806 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

807. Mr. Sambol avers that the allegations in paragraph 807 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

808. Mr. Sambol does not answer paragraph 808 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

809. Mr. Sambol does not answer paragraph 809 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

810. Mr. Sambol does not answer paragraph 810 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

811. Mr. Sambol does not answer paragraph 811 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

812. Mr. Sambol does not answer paragraph 812 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

813. Mr. Sambol does not answer paragraph 813 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

814. Mr. Sambol does not answer paragraph 814 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

815. Mr. Sambol does not answer paragraph 815 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

816. Mr. Sambol does not answer paragraph 816 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

817. Mr. Sambol does not answer paragraph 817 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

818. Mr. Sambol incorporates by reference his responses to each and every allegation above as if fully set forth herein. Mr. Sambol avers that paragraph 818 contains characterizations of the Amended Complaint, as to which no response is required. To the extent the allegations require a further response, they are denied.

819. Mr. Sambol avers that the allegations in paragraph 819 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

820. Mr. Sambol avers that the allegations in paragraph 820 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

821. Mr. Sambol avers that the allegations in paragraph 821 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

822. Mr. Sambol avers that the allegations in paragraph 822 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

823. Mr. Sambol avers that the allegations in paragraph 823 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

824. Mr. Sambol avers that the allegations in paragraph 824 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

825. Mr. Sambol avers that the allegations in paragraph 825 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

826. Mr. Sambol incorporates by reference his responses to each and every allegation above as if fully set forth herein. To the extent the allegations require a further response, they are denied.

827. Mr. Sambol avers that paragraph 827 contains characterizations of the Amended Complaint, as to which no response is required. To the extent the allegations require a further response, they are denied.

828. Mr. Sambol avers that the allegations in paragraph 828 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

829. Mr. Sambol avers that the allegations in paragraph 829 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

830. Mr. Sambol avers that the allegations in paragraph 830 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

831. Mr. Sambol avers that the allegations in paragraph 831 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

832. Mr. Sambol avers that the allegations in paragraph 832 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

833. Mr. Sambol avers that the allegations in paragraph 833 contain legal

conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

834. Mr. Sambol avers that the allegations in paragraph 834 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

835. Mr. Sambol avers that the allegations in paragraph 835 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

836. Mr. Sambol avers that the allegations in paragraph 836 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

837. Mr. Sambol avers that the allegations in paragraph 837 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

838. Mr. Sambol incorporates by reference his responses to each and every allegation above as if fully set forth herein. To the extent the allegations require a further response, they are denied.

839. Mr. Sambol avers that paragraph 839 contains characterizations of the Amended Complaint, as to which no response is required. To the extent the allegations require a further response, they are denied.

840. Mr. Sambol avers that the allegations in paragraph 840 are not directed to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

841. Mr. Sambol avers that the allegations in paragraph 841 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

842. Mr. Sambol avers that the allegations in paragraph 842 are not directed

to him and contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

843. Mr. Sambol avers that the allegations in paragraph 843 contain legal conclusions as to which no response is required. To the extent the allegations require a further response, they are denied.

844. Mr. Sambol does not answer paragraph 844 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

845. Mr. Sambol does not answer paragraph 845 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

846. Mr. Sambol does not answer paragraph 846 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

847. Mr. Sambol does not answer paragraph 847 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

848. Mr. Sambol does not answer paragraph 848 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

849. Mr. Sambol does not answer paragraph 849 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

850. Mr. Sambol does not answer paragraph 850 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

851. Mr. Sambol does not answer paragraph 851 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing

this cause of action.

852. Mr. Sambol does not answer paragraph 852 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

853. Mr. Sambol does not answer paragraph 853 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

854. Mr. Sambol does not answer paragraph 854 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

855. Mr. Sambol does not answer paragraph 855 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

856. Mr. Sambol does not answer paragraph 856 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

857. Mr. Sambol does not answer paragraph 857 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

858. Mr. Sambol does not answer paragraph 858 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

859. Mr. Sambol does not answer paragraph 859 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

860. Mr. Sambol does not answer paragraph 860 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

861. Mr. Sambol does not answer paragraph 861 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

862. Mr. Sambol does not answer paragraph 862 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

863. Mr. Sambol does not answer paragraph 863 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

864. Mr. Sambol does not answer paragraph 864 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

865. Mr. Sambol does not answer paragraph 865 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

866. Mr. Sambol does not answer paragraph 866 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

867. Mr. Sambol does not answer paragraph 867 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

868. Mr. Sambol does not answer paragraph 868 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

869. Mr. Sambol does not answer paragraph 869 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

870. Mr. Sambol does not answer paragraph 870 because an answer is not

required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

871. Mr. Sambol does not answer paragraph 871 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

872. Mr. Sambol does not answer paragraph 872 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

873. Mr. Sambol does not answer paragraph 873 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

874. Mr. Sambol does not answer paragraph 874 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

875. Mr. Sambol does not answer paragraph 875 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

876. Mr. Sambol does not answer paragraph 876 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

877. Mr. Sambol does not answer paragraph 877 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

878. Mr. Sambol does not answer paragraph 878 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

879. Mr. Sambol does not answer paragraph 879 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing

this cause of action.

880. Mr. Sambol does not answer paragraph 880 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

881. Mr. Sambol does not answer paragraph 881 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

882. Mr. Sambol does not answer paragraph 882 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

883. Mr. Sambol does not answer paragraph 883 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

884. Mr. Sambol does not answer paragraph 884 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

885. Mr. Sambol does not answer paragraph 885 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

886. Mr. Sambol does not answer paragraph 886 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

887. Mr. Sambol does not answer paragraph 887 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

888. Mr. Sambol does not answer paragraph 888 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

889. Mr. Sambol does not answer paragraph 889 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

890. Mr. Sambol does not answer paragraph 890 because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

891. Mr. Sambol does not answer paragraph 891 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

892. Mr. Sambol does not answer paragraph 892 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

893. Mr. Sambol does not answer paragraph 893 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

894. Mr. Sambol does not answer paragraph 894 because this Count is not directed to him and because an answer is not required in light of this Court's August 22, 2011 order in this matter, dismissing this cause of action.

* * *

AFFIRMATIVE DEFENSES

As separate and distinct affirmative defenses to the Amended Complaint, Mr. Sambol alleges the following affirmative defenses. In setting forth these affirmative defenses, Mr. Sambol does not assume any burden of proof not otherwise imposed upon him by law.

FIRST AFFIRMATIVE DEFENSE

(Lack of Standing)

This action is barred, in whole or in part, because Plaintiff lacks standing to assert the claims set forth in the Amended Complaint.

SECOND AFFIRMATIVE DEFENSE

(Failure to State a Claim)

The Amended Complaint, and each cause of action alleged therein against Mr. Sambol, fails to state a claim upon which relief can be granted.

THIRD AFFIRMATIVE DEFENSE

(Failure to Plead Fraud with Particularity)

This action is barred, in whole or in part, because Plaintiff has failed to plead fraud with the specificity required by the Private Securities Litigation Reform Act, Rule 9(b) of the Federal Rules of Civil Procedure, and any other applicable rules governing the specificity of pleading.

FOURTH AFFIRMATIVE DEFENSE

(Lack of Actionable Misstatement or Omission)

This action is barred, in whole or in part, because none of the misstatements or omissions alleged in the Amended Complaint were, in fact, false or misleading in any way.

FIFTH AFFIRMATIVE DEFENSE

(Lack of Scienter and/or Intent)

This action is barred, in whole or in part, because Mr. Sambol did not act with the requisite scienter. Mr. Sambol did not make any of the alleged misstatements or omissions in the Amended Complaint with the intent to deceive and/or for the purpose of inducing the purchase or sale of Countrywide securities by the named Plaintiff. Mr. Sambol is not liable for Plaintiff's claims because he did not know, and could not have known with the exercise of reasonable care, the untruth of any alleged misrepresentations or the fact of any material omission.

SIXTH AFFIRMATIVE DEFENSE

(No Awareness of Facts Indicating Falsity)

Plaintiff's claims are barred, in whole or in part, because Mr. Sambol at no time was aware of facts indicating a probability that statements being made by

Mr. Sambol to the investing public were materially incorrect, incomplete or otherwise misleading.

SEVENTH AFFIRMATIVE DEFENSE

(No Negligence)

At all relevant times, Mr. Sambol did not act with negligence.

EIGHTH AFFIRMATIVE DEFENSE

(Due Diligence and Reasonable Investigation)

This action is barred, in whole or in part, because each and every act and omission by Mr. Sambol in connection with the offering of the subject securities was made after reasonable investigation, and Mr. Sambol had reasonable grounds to believe, and did believe, that such acts or omissions were true and that there was no omission to state a material fact required to be stated therein or necessary to make the statements therein not misleading.

NINTH AFFIRMATIVE DEFENSE

(Good Faith)

This action is barred, in whole or in part, because the acts, statements, and omissions alleged in the Amended Complaint were made in good faith, honestly, and without any recklessness or intent to deceive. Mr. Sambol acted at all times innocently and without knowledge of purported falsity. Facts contemporaneous with the allegedly fraudulent acts, statements, and omissions indicate that such acts, statements, and omissions were the product of reasonable business judgment.

Every act or omission alleged against Mr. Sambol in the Amended Complaint was done or omitted in good faith conformity with the rules and regulations of the Securities and Exchange Commission, and therefore, pursuant to Section 23(a) of the Securities Exchange Act of 1934, there is no liability for any act or omission so alleged.

TENTH AFFIRMATIVE DEFENSE

(Lack of Injury to Plaintiff)

This action is barred, in whole or in part, because Plaintiff has not suffered any legally cognizable injury or damage.

ELEVENTH AFFIRMATIVE DEFENSE

(Lack of Materiality)

This action is barred, in whole or in part, because the allegedly untrue statements of fact and omissions of fact were immaterial as a matter of law.

TWELFTH AFFIRMATIVE DEFENSE

(Material Information Was Disclosed)

Plaintiff's claims, including all statements or business decisions that are construed by the Amended Complaint as being false, misleading and/or omissions of material information, are barred, in whole or in part, because Plaintiff and the market were informed of the material information and risks associated with their investments in SEC filings and their amendments, press releases, proxy statements, Registration Statements, advertisements and other materials available to Plaintiff and/or the market.

This action is further barred, in whole or in part, because to the extent Mr. Sambol allegedly had a duty to disclose, this information was in fact disclosed.

THIRTEENTH AFFIRMATIVE DEFENSE

(No Duty to Disclose)

This action is barred, in whole or in part, because at all relevant times Mr. Sambol had no duty to disclose the allegedly omitted information.

FOURTEENTH AFFIRMATIVE DEFENSE

(No Duty to Revise/Update/Correct)

This action is barred, in whole or in part, because Mr. Sambol was under no duty to revise, update, and/or correct any previously made statements that Plaintiff alleges were not subsequently revised, updated and/or corrected.

FIFTEENTH AFFIRMATIVE DEFENSE

(Failure to Mitigate)

This action is barred, in whole or in part, because Plaintiff failed to make reasonable efforts to mitigate any injury or damages they may have suffered and could have prevented such injury or damages.

SIXTEENTH AFFIRMATIVE DEFENSE

(Contributory Negligence, Comparative Negligence, and Assumption of Risk)

This action is barred, in whole or in part, by the doctrines of comparative negligence, contributory negligence, and/or assumption of risk. Plaintiff knew, or in the exercise of reasonable care should have known, the risks in investing in Countrywide securities and thus assumed the risk of a decline in the value of their securities. Plaintiff's claims are barred, in whole or in part, because Plaintiff had actual or constructive knowledge of the alleged misstatements or omissions set forth in the Amended Complaint at the time they purchased their securities and thus assumed the risk of a decline in their value.

SEVENTEENTH AFFIRMATIVE DEFENSE

(Safe Harbor Protection)

This action is barred, in whole or in part, to the extent any misrepresentations or omissions alleged in the Amended Complaint are forward-looking statements falling within the statutory "safe-harbor" provisions set forth in the Private Securities Litigation Reform Act of 1995, including 15 U.S.C. §78u-5(c) and 15 U.S.C. §77z-2.

EIGHTEENTH AFFIRMATIVE DEFENSE

(Bespeaks Caution)

This action is barred, in whole or in part, based on the express disclosures in Countrywide's public statements regarding material facts and risks concerning Countrywide's securities. Such statements contained sufficient cautionary language

and risk disclosures to bespeak caution and warn Plaintiff, prior to investing, of the risks of investing in Countrywide securities.

NINETEENTH AFFIRMATIVE DEFENSE

(Disclosure of Risk)

This action is barred, in whole or in part, because Plaintiff and the market were informed of the risks associated with their investments in Form 10-Qs and their amendments, Form 10-Ks and their amendments, other SEC filings, press releases, proxy statements, Registration Statements, advertisements, and material incorporated therein or was otherwise publicly disclosed or available to Plaintiff and the market through credible sources.

TWENTIETH AFFIRMATIVE DEFENSE

(Knowledge)

This action is barred, in whole or in part, because at the time of the securities transactions alleged in the Amended Complaint, Plaintiff knew the true facts concerning the matters alleged in the Amended Complaint. Plaintiff would have purchased Countrywide securities even with full knowledge of the facts that they allege were misrepresented or omitted.

TWENTY-FIRST AFFIRMATIVE DEFENSE

(Lack of Reasonable Reliance)

This action is barred, in whole or in part, because Plaintiff did not reasonably rely on any of the statements, acts, or omissions alleged in the Amended Complaint in deciding to purchase Countrywide securities.

This action is barred, in whole or in part, because Plaintiff did not reasonably rely on the market price or the integrity of the market price of Countrywide securities in deciding to purchase Countrywide securities.

TWENTY-SECOND AFFIRMATIVE DEFENSE

(Lack of Actual Reliance)

This action is barred, in whole or in part, because Plaintiff did not actually rely on any of the statements, acts, or omissions alleged in the Amended Complaint in deciding to purchase Countrywide securities.

This action is barred, in whole or in part, because Plaintiff did not rely on the integrity of the market price of Countrywide securities in deciding to purchase Countrywide securities.

TWENTY-THIRD AFFIRMATIVE DEFENSE

(No Fraud on the Market)

The fraud on the market theory is not applicable and/or is not a basis of liability with respect to one or more of the claims alleged in this action.

TWENTY-FOURTH AFFIRMATIVE DEFENSE

(Lack of Loss Causation)

This action is barred, in whole or in part, because of the absence of loss causation. Plaintiff's injuries or damages, to the extent they exist, were caused by intervening and/or supervening events unconnected to Mr. Sambol and the allegations in this Amended Complaint, including macroeconomic and mortgage-industry events that constrained Countrywide's access to the credit and capital markets and affected its liquidity.

TWENTY-FIFTH AFFIRMATIVE DEFENSE

(No Causation)

Plaintiff is not entitled to any recovery from Mr. Sambol because no act or omission of Mr. Sambol was the cause in fact or the proximate cause of any damage to Plaintiff.

TWENTY-SIXTH AFFIRMATIVE DEFENSE

(Intervening or Superseding Cause)

This action is barred, in whole or in part, because Plaintiff's alleged damages, if any, were the result of one or more intervening or superseding causes or caused by the acts and/or failures to act of persons and/or entities other than Mr. Sambol, and were not the result of any act or omission on the part of Mr. Sambol.

TWENTY-SEVENTH AFFIRMATIVE DEFENSE

(Conduct of Others)

This action is barred, in whole or in part, to the extent Plaintiff purports to hold Mr. Sambol responsible for alleged material misrepresentations made, or conduct engaged in, by third parties or other defendants.

TWENTY-EIGHTH AFFIRMATIVE DEFENSE

(Vague, Ambiguous and Uncertain)

This action is barred, in whole or in part, because Plaintiff's alleged claims against Mr. Sambol are vague, ambiguous and uncertain.

TWENTY-NINTH AFFIRMATIVE DEFENSE

(Laches, Waiver, *In Pari Delicto*, Unclean Hands)

This action is barred, in whole or in part, by the doctrines of laches, waiver, *in pari delicto* and/or unclean hands.

THIRTIETH AFFIRMATIVE DEFENSE

(Estoppel)

By their words, actions and failures to act, Plaintiff is equitably estopped from asserting each of the purported causes of action alleged in the Amended Complaint and/or from obtaining any of the relief sought thereby.

THIRTY-FIRST AFFIRMATIVE DEFENSE

(Consent, Approval, Acquiescence, Participation, Ratification)

This action is barred, in whole or in part, because of Plaintiff's own consent, approval, acquiescence, participation and/or ratification at any time in any activity that Plaintiff challenge as improper.

THIRTY-SECOND AFFIRMATIVE DEFENSE

(Statute of Limitations)

This action is barred, in whole or in part, because of the applicable statute(s) of limitations and/or period(s) of repose.

THIRTY-THIRD AFFIRMATIVE DEFENSE

(Reliance on Others)

This action is barred, in whole or in part, because every statement, act, or omission by Mr. Sambol alleged in the Amended Complaint, if it occurred at all, was made or occurred in reasonable good faith reliance on the statements and representations of others upon which Mr. Sambol was entitled to rely.

THIRTY-FOURTH AFFIRMATIVE DEFENSE

(Indemnification, Contribution and Proportionate Liability)

Without in any way admitting that Plaintiff has suffered any loss as alleged in the Amended Complaint, to the extent any loss has been sustained, Mr. Sambol is entitled to indemnification and/or contribution from others, named or unnamed in this action, relating to such alleged losses. Further, under the Private Securities Litigation Reform Act of 1995, any judgment against Mr. Sambol must be in strict proportion to the percentage of fault, if any, assigned to Mr. Sambol, and any alleged liability of Mr. Sambol should be reduced accordingly.

THIRTY-FIFTH AFFIRMATIVE DEFENSE

(Apportionment)

Without admitting that Plaintiff suffered damages in any amount, or that Mr. Sambol or any defendant is or should be liable for any such damages, Mr. Sambol asserts that his liability and the liability of any other responsible persons, named or unnamed, should be apportioned according to their relative degrees of fault, and any alleged liability of Mr. Sambol should be reduced accordingly.

THIRTY-SIXTH AFFIRMATIVE DEFENSE

(Unjust Enrichment)

This action is barred, in whole or in part, because Plaintiff would be unjustly enriched if it were allowed to recover in this action.

Furthermore, without admitting that Plaintiff has suffered any loss as a result of an act or omission alleged in the Amended Complaint, any damages awarded in connection with the claims asserted in this action are offset and/or must be reduced by the amount of the tax benefits accruing to Plaintiff by virtue of its deduction of capital loss or other amounts received in connection with the securities, in order to prevent unjust enrichment of those individuals.

THIRTY-SEVENTH AFFIRMATIVE DEFENSE

(Control Person Defenses)

This action is barred, in whole or in part, because Defendants did not directly or indirectly induce the act or acts constituting the alleged violations and claims under Section 20(a) of the Securities Exchange Act of 1934. Each and every one of the Defendants alleged to be a control person under Section 20(a) of the Securities Exchange Act acted in good faith under 15 U.S.C. §78t(a).

Each and every one of the Defendants had no knowledge of or reasonable grounds to believe in the existence of facts by reason of which the liability of the

control persons is alleged to exist under Section 15 of the Securities Act of 1933, 15 U.S.C. §77o.

Plaintiff's claims are also barred because Plaintiff cannot establish the primary liability necessary to assert a control person liability claim.

<u>THIRTY-EIGHTH AFFIRMATIVE DEFENSE</u>

(Speculative Damages)

This action is barred, in whole or in part, because the alleged damages, if any, are speculative.

<u>THIRTY-NINTH AFFIRMATIVE DEFENSE</u>

(SEC Rule 10b5-1)

This action is barred, in whole or in part, by SEC Rule 10b5-l.

<u>FORTIETH AFFIRMATIVE DEFENSE</u>

(No Entitlement to Compensatory Damages)

Plaintiff is not entitled to recover the compensatory damages requested in the Amended Complaint.

<u>FORTY-FIRST AFFIRMATIVE DEFENSE</u>

(No Entitlement to Exemplary or Punitive Damages)

Plaintiff is precluded from recovering exemplary or punitive damages, either in whole or in part, from Mr. Sambol under the applicable provisions of the law, including, without limitation, California Civil Code section 3294, the United States Constitution and/or the California Constitution.

<u>FORTY-SECOND AFFIRMATIVE DEFENSE</u>

(No Entitlement to Costs of Litigation)

Plaintiff is not entitled to recover their costs and expenses incurred in this action, including without limitation, attorneys' fees, from Mr. Sambol.

FORTY-THIRD AFFIRMATIVE DEFENSE

(No Entitlement to Prejudgment Interest)

Plaintiff is precluded from recovering prejudgment interest from Mr. Sambol because such a recovery is not liquidated nor ascertainable and is not otherwise statutorily prescribed.

FORTY-FOURTH AFFIRMATIVE DEFENSE

(Statutory Defenses)

This action is barred, in whole or in part, by virtue of statutory defenses, including, but not limited to, 15 U.S.C. §78u-4(b)(1)-(2), 15 U.S.C. §78t(a), 15 U.S.C. §77m, and 15 U.S.C. §77k(a)-(b), or the governing local laws of this jurisdiction.

FORTY-FIFTH AFFIRMATIVE DEFENSE

(15 U.S.C. §77k(e))

This action is barred, in whole or in part, by the provisions of Section 11(e) of the Securities Act of 1933, 15 U.S.C. §77k(e).

FORTY-SIXTH AFFIRMATIVE DEFENSE

(Reservation of Rights)

Answers to each paragraph of the Amended Complaint are made by Mr. Sambol without waiving, but expressly reserving, all rights Mr. Sambol may have to seek relief by appropriate motions directed to the allegations in the Amended Complaint.

FORTY-SEVENTH AFFIRMATIVE DEFENSE

(Incorporation of Other Defendants' Defenses)

The action is barred, in whole or in part, by each of the affirmative defenses asserted by each of the other Defendants to the extent such defense is available to Mr. Sambol, and each such defense is incorporated herein by reference.

FORTY-EIGHTH AFFIRMATIVE DEFENSE

(Claim and Issue Preclusion)

Plaintiff's claims are barred, in whole or in part, by claim and/or issue preclusion.

FORTY-NINTH AFFIRMATIVE DEFENSE

(No Ultimate Authority)

Plaintiff's claims are barred, in whole or in part, because Mr. Sambol did not have ultimate authority over the content of statements alleged in the Amended Complaint and whether and how to communicate those statements.

FIFTIETH AFFIRMATIVE DEFENSE

(Reliance on Professionals)

Mr. Sambol is not liable for Plaintiff's claims because he relied in good faith upon the professional judgments of Countrywide's professionals, as well as its inside and outside auditors, at the time of the alleged acts concerning matters which he reasonably believed to be within such persons' professional or expert competence.

FIFTY-FIRST AFFIRMATIVE DEFENSE

(Reliance on Expertised Statements)

Plaintiff's claims are barred, in whole or in part, as to those portions of the registration statement(s), prospectus(es), and/or any statement(s) issued in connection therewith which were made on the authority of expert(s) upon whom Mr. Sambol reasonably relied.

* * *

WHEREFORE, Mr. Sambol prays for judgment as follows:

1. That Plaintiff take nothing by its Amended Complaint and that the Amended Complaint be dismissed with prejudice;

2. That judgment be entered in favor of Mr. Sambol and against Plaintiff with respect to all causes of action in the Amended Complaint directed to him.

3. Mr. Sambol be awarded his costs of suit and expenses incurred in defending this action; and

4. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Defendant David Sambol hereby demands a jury trial.

Dated: October 14, 2011

Respectfully submitted,

ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Michael C. Tu*
Michael C. Tu

Attorneys for Defendant David Sambol